1 | Robert V. Prongay (SBN 270796)
   *rprongay@glancylaw.com*
2 | Charles Linehan (SBN 307439)
   *clinehan@glancylaw.com*
3 | Pavithra Rajesh (SBN 323055)
   *prajesh@glancylaw.com*
4 | GLANCY PRONGAY & MURRAY LLP
   1925 Century Park East, Suite 2100
5 | Los Angeles, California 90067
   Telephone: (310) 201-9150
6 | Facsimile: (310) 201-9160

7 | *Counsel for Plaintiff Abduladhim A. Alghazwi*

8 | [Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| ABDULADHIM A. ALGHAZWI, Individually and On Behalf of All Others Similarly Situated, | Case No. |
|---|---|
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK, LIYUAN WOO, and MICHAEL MONAHAN, | |
| Defendants. | |

Plaintiff Abduladhim A. Alghazwi ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by The Beauty Health Company ("Beauty Health" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Beauty Health; and (c) review of other publicly available information concerning Beauty Health.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Beauty Health securities between May 10, 2022 and November 13, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Beauty Health is a health and beauty company which provides "skin health experiences." Its flagship brand is Hydrafacial™ through which the Company provides goods and services related to hydradermabrasion, a dermatological procedure involving a mechanical exfoliation and infusion of facial serums. Hydrafacial's leading product is Syndeo, a data-connected hydradermabrasion machine, which launched in the United States in March 2022.

3. On August 9, 2023, before the market opened, Beauty Health announced that second quarter 2023 gross margin was "unfavorably impacted" by a mix shift "toward lower-margin refurbished devices . . . as U.S. providers awaited Syndeo enhancements in the third quarter 2023 to improve user experience." The Company also announced the "involuntary separation without cause" of Chief Financial Officer ("CFO") Defendant Liyuan Woo ("Woo").

4.     On this news, the Company's shares fell $0.41, or 5.4%, to close at $7.12 per share on August 9, 2023, on unusually heavy trading volume.

5.     Then, on November 13, 2023, after the market closed, Beauty Health announced its financial results for the third quarter of 2023. The Company disclosed that "[t]he quarter was overshadowed by lower-than-expected U.S. revenue and $63.1 million in restructuring charges related to device upgrades of early generation Syndeo devices." As a result, "the Company is revising its fiscal year 2023 net sales guidance to a range of $385 to $400 million, its fiscal year adjusted EBITDA margin guidance to a range of 5% to 6% and is suspending its long-term 2025 financial outlook." The Company further disclosed that Andrew Stanleick ("Stanleick") would depart the Company as President & Chief Executive Officer ("CEO") and relinquish his Board seat, effective November 19, 2023.

6.     On this news, the Company's share price fell $2.51, or 64.36%, to close at $1.39 per share on November 14, 2023, on unusually heavy trading volume.

7.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Syndeo 1.0 and 2.0 devices had issues leading to "frequent treatment interruptions;" (2) that, as a result, the Company incurred significant costs to develop enhancements; (3) that, despite the enhancements, providers continued to experience issues with the Syndeo devices; (4) that, as a result, the Company would no longer market Syndeo 1.0 and 2.0 devices and incur significant inventory writedowns; (5) that, as a result, the Company's profitability would be adversely impacted; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Abduladhim A. Alghazwi, as set forth in the accompanying certification, incorporated by reference herein, purchased Beauty Health securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.    Defendant Beauty Health is incorporated under the laws of Delaware with its principal executive offices located in Long Beach, California. Beauty Health's Class A common stock trades on the NASDAQ exchange under the symbol "SKIN."

15.    Defendant Stanleick was the Company's President and CEO at all relevant times.

16.    Defendant Woo was the Company's CFO from September 2020 until August 10, 2023.

17.    Defendant Michael Monahan ("Monahan") has been the Company's CFO since August 10, 2023.

18.    Defendants Stanleick, Woo and Monahan (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.    Beauty Health is a health and beauty company which provides "skin health experiences." Its flagship brand is Hydrafacial™ through which the Company provides goods and services related to hydradermabrasion, a dermatological procedure involving a mechanical exfoliation and infusion of facial serums.

Hydrafacial's leading product is Syndeo, a data-connected hydradermabrasion machine, which launched in the United States in March 2022.

### Materially False and Misleading
### <u>Statements Issued During the Class Period</u>

20.     The Class Period begins on May 10, 2022. On that day, the Company announced its first quarter 2022 financial results in a press release. This was the first earnings results published following the release of Syndeo.  The press release quoted Defendant Stanleick: [1]

> "I am proud to report that Beauty Health delivered another outstanding quarter of growth as we continued to execute on our Master Plan. ***We achieved record delivery system sales, supported by the highly successful launch of Syndeo,*** our next generation digitally connected HydraFacial delivery system," said Andrew Stanleick, Beauty Health's President and Chief Executive Officer. "We are driving continued strong demand as consumers seek the confidence boosting glow we're famous for. ***As a result of the momentum we're seeing across the business and the strong rollout of Syndeo, I am pleased to announce that we are raising our full-year guidance for net sales.*** We remain confident in the long-term outlook for the beauty health category, and we look forward to carrying this momentum into the rest of the year as we continue to build upon our impressive platform."

21.     On August 9, 2022, the Company announced its second quarter 2022 financial results in a press release, stating in relevant part:

> ***All-time high quarterly net sales of $103.5 million, up +55.7% YoY***
>
> Company raises net sales guidance and reaffirms adjusted EBITDA outlook for the year
>
> ***Exceptional results driven by acceleration of Hydrafacial delivery system placements globally,*** with segment revenue up +85.4% YoY; healthy consumer interest
>
> \*     \*     \*
>
> **Second Quarter 2022 Summary**
>
> - Net sales of $103.5 million increased +55.7% in Q2 2022 compared to $66.5 million in Q2 2021, ***driven by record Delivery Systems net sales.***

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

- o Delivery Systems net sales increased to $64.8 million in Q2 2022, compared to $34.9 million in Q2 2021. The Company sold 2,738 Delivery Systems during the quarter, including 1,203 trade-ups.

- o Consumables net sales increased to $38.8 million in Q2 2022, compared to $31.6 million in Q2 2021.

- o Net sales in the Americas region increased to $75.4 million in Q2 2022 compared to $42.7 million in Q2 2021, ***driven by strong demand for Syndeo.***

- o Net sales in the APAC region decreased to $10.4 million in Q2 2022 compared to $12.4 million in Q2 2021, driven by COVID-19 related lockdowns in China, partly offset by continued strength in Australia.

- o Net sales in the EMEA region increased to $17.8 million in Q2 2022 compared to $11.4 million in Q2 2021, driven by strong Delivery Systems net sales and high conversion of the Company's marketing activations across the region.

*     *     *

- • Adjusted EBITDA is an important profitability measure that the Company uses to manage its business internally. ***In Q2 2022, adjusted EBITDA was $12.6 million compared to adjusted EBITDA of $11.4 million in Q2 2021. Adjusted EBITDA grew due to strong demand for Syndeo,*** strong system sales and marketing conversions in EMEA, and fixed cost leverage, partly offset by the impact of COVID-19 lockdowns in China, supply chain headwinds, particularly shipping costs, increases in planned marketing programs, personnel-related expenses, and sales commissions associated with higher revenue.

22.    On the same day, August 9, 2022, the Company filed its second quarter 2022 financial results on Form 10-Q with the SEC, affirming that net sales "increased primarily due to the strong demand for the Company's new Syndeo delivery system." The report further stated, in relevant part:

Research and development expense for the six months ended June 30, 2022 increased $0.4 million, or 8.8%, compared to the six months ended June 30, 2021. The increase was primarily due to additional personnel-related expense in the research and development department which increased by $1.8 million year-over-year. There were additional investments into our data infrastructure which increased by $0.8 million, ***offset by a $2.4 million decrease in Syndeo research and development expenses***.

23.    On November 8, 2022, the Company announced its third quarter 2022 financial results in a press release, stating in relevant part:

**Third Quarter 2022 Summary**

- Net sales of $88.8 million increased +30.3% in Q3 2022 compared to $68.1 million in Q3 2021, ***driven by strength in Delivery Systems net sales***.

  ○ Delivery Systems net sales increased to $49.1 million in Q3 2022, compared to $36.2 million in Q3 2021. The Company sold 1,860 Delivery Systems during the quarter at an average selling price of $25,947.

  ○ Consumables net sales increased to $39.7 million in Q3 2022, compared to $32.0 million in Q3 2021.

  ○ Net sales in the Americas region increased to $58.4 million in Q3 2022 compared to $45.0 million in Q3 2021, ***driven by solid demand for Syndeo***.

  ○ Net sales in the APAC region increased to $15.1 million in Q3 2022 compared to $10.5 million in Q3 2021, driven by strong performance during windows of re-opening in China, partly offset by foreign currency weakness.

  ○ Net sales in the EMEA region increased to $15.3 million in Q3 2022 compared to $12.6 million in Q3 2021, driven by strength in provider and consumer demand, partly offset by foreign currency weakness and no contribution from Russia in Q3 2022.

*     *     *

- Adjusted EBITDA is a non-GAAP measure that the Company uses to manage its business. ***In Q3 2022, adjusted EBITDA was $16.5 million compared to adjusted EBITDA of $5.8 million in Q3 2021. Adjusted EBITDA grew due to strong demand for Syndeo in the U.S.*** and Elite internationally, fixed cost leverage associated with higher volume and stronger realized delivery systems pricing, partly offset by the impact of FX rates, supply chain headwinds, sales commissions associated with higher revenue and net increases in personnel-related expenses.

24.   Also on November 9, 2022, the Company filed its third quarter 2022 financial results on Form 10-Q with the SEC, affirming previously reported financial results. The report further stated, in relevant part:

Research and development expense for the nine months ended September 30, 2022 increased $0.7 million, or 10.7%, compared to the nine months ended September 30, 2021. The increase was primarily due to additional personnel-related expense which increased by $2.3 million year-over-year. There were additional investments into our data infrastructure which increased by $1.2 million, ***offset by a $3.5 million decrease in Syndeo research and development expenses***.

25.     On February 28, 2023, the Company announced its full year and fourth quarter 2022 financial results in a press release, stating in relevant part:

Beauty Health expects net sales in the range of $450 to $470 million for fiscal 2023, reflecting management's confidence in the business as the Company executes against its growth plan. ***The Company is also reiterating its outlook for fiscal 2023 adjusted EBITDA margin of 18% to 20% and its fiscal 2025 long-range outlook of $600 million to $700 million net sales and 25% to 30% adjusted EBITDA margin*** originally announced at its 2022 Investor Day. ***The Company also expects fiscal 2023 gross margin to exceed fiscal 2022 gross margin, driven by gross margin expansion in the second half of 2023***.

26.     On March 1, 2023, the Company filed its full year and fourth quarter 2022 financial results on Form 10-K with the SEC (the "2022 10-K") and purported to warn, in relevant part:

***Our success depends, in part, on the quality, efficacy and safety of our products.***

***Any loss of confidence on the part of consumers in our products or in the ingredients used in or with our products,*** whether related to product contamination, truthfulness of the claims, product safety or quality failures (actual or perceived), inclusion of unlawful ingredients, or for any other reason, ***could tarnish the image of our brand and could cause consumers to choose other products.*** Allegations regarding any of the above, even if untrue, may require us to expend significant time and resources investigating and responding to such allegations and could, from time to time, result in a recall or market withdrawal of a product from any or all of the markets in which the affected product was distributed. ***Any such issues or recalls could negatively affect our profitability and brand image. Following such recall or market withdrawal, we may decide to voluntarily or regulatory agencies may require us to implement a remedial plan or a set of corrective actions that require a significant investment of resources.*** Such events may result in potential disputes with our customers, vendors, or other third parties, resulting in significant expenditure of related fees and costs, loss of key relationships, and/or damage to our brand value and reputation.

(First emphasis in original.)

27.     On May 10, 2023, the Company announced its first quarter 2023 financial results in a press release, which stated in relevant part:

"I am pleased with the growth we achieved in the first quarter and our strong momentum going into Q2. ***We see sustained consumer demand for Hydrafacial treatments across the globe and palpable excitement for the international launch of Syndeo***," said BeautyHealth President and CEO Andrew Stanleick. "This demand, together with the investments made last year and favorable market trends, particularly in China, give us the confidence to raise our 2023 net sales target and

reconfirm our 2023 adjusted EBITDA margin guidance and long-term 2025 targets."

\*      \*      \*

- ***The Company raised its fiscal year 2023 net sales guidance to a range of $460 to $480 million due to continued strength in consumer demand, strong Syndeo traction globally***, and a re-acceleration in China.

28.     The above statements identified in ¶¶ 20-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Syndeo 1.0 and 2.0 devices had issues leading to "frequent treatment interruptions;" (2) that, as a result, the Company incurred significant costs to develop enhancements; (3) that, despite the enhancements, providers continued to experience issues with the Syndeo devices; (4) that, as a result, the Company would no longer market Syndeo 1.0 and 2.0 devices and incur significant inventory writedowns; (5) that, as a result, the Company's profitability would be adversely impacted; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

29.     The truth began to emerge on August 9, 2023, before the market opened, when the Company reported in a press release (the "Q2 2023 Press Release") that second quarter 2023 gross margin was "unfavorably impacted" by a mix shift "toward lower-margin refurbished devices amidst a tightening credit environment and as U.S. providers awaited Syndeo enhancements in the third quarter 2023 to improve user experience."

30.     Also on August 9, 2023, before the market opened, the Company announced the "involuntary separation without cause" of its CFO, Defendant Woo.

31.     On this news, the Company's stock fell $0.41, or 5.4%, to close at $7.12 per share on August 9, 2023, on unusually heavy trading volume.

32.     The Q2 2023 Press Release further stated that "On the momentum, the Company re-affirms its 2023 net sales and long-term 2025 guidance, and refines its 2023 adjusted EBITDA margin to a more precise 18%-19% range."

33.     On the same day, after the market closed, the Company submitted its second quarter 2023 financial results on Form 10-Q to the SEC, which stated:

> During the third quarter of 2023, *the Company launched a voluntary initiative* to *replacing certain componentry in previously manufactured Syndeo delivery systems* to increase resistance to inadvertent clogging when recommended maintenance is not performed. *This initiative is expected to result in approximately $5 million in expense during the third quarter*.

34.     The above statements identified in ¶¶ 29-30, 32-33 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Syndeo 1.0 and 2.0 devices had issues leading to "frequent treatment interruptions;" (2) that, as a result, the Company incurred significant costs to develop enhancements; (3) that, despite the enhancements, providers continued to experience issues with the Syndeo devices; (4) that, as a result, the Company would no longer market Syndeo 1.0 and 2.0 devices and incur significant inventory writedowns; (5) that, as a result, the Company's profitability would be adversely impacted; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

35.     On November 13, 2023, after the market closed, the Company announced its third quarter 2023 financial results (the "Q3 2023 Press Release"), reporting that the "quarter was overshadowed by lower-than-expected U.S. revenue and $63.1 million in restructuring charges related to device upgrades of early generation Syndeo devices." As a result, Beauty Health reported that "[n]et sales were $97.4 million for the third quarter of 2023, an increase of 10% compared to the prior

year period, with strength in APAC and EMEA offset by challenges in the U.S." and "[g]ross margin was (12.9)% in Q3 2023 compared to 69.1% in Q3 2022 [due to the] $63.1 million associated with the Syndeo Program," among other things. Moreover, "the Company is revising its fiscal year 2023 net sales guidance to a range of $385 to $400 million, its fiscal year adjusted EBITDA margin guidance to a range of 5% to 6% and is suspending its long-term 2025 financial outlook."

36.     The Q3 2023 Press Release detailed that these $63.1 million in restructuring charges included an $18.8 million inventory write-down because the Company designated all Syndeo 1.0 and 2.0 devices as obsolete and will only market and sell Syndeo 3.0 devices. Specifically, the Q3 2023 Press Release stated, as follows:

> • To stand behind its commitment to its customers and protect brand reputation, Management decided that, with respect to Syndeo devices, the Company will only market and sell Syndeo 3.0 devices due to provider experience issues with earlier generation Syndeo devices.
>
> • The Company will provide, at no cost to the customer, the option of (i) a technician upgrade to their Syndeo 1.0 or 2.0 devices to 3.0 standards in the field; or (ii) a replacement Syndeo 3.0 device for their existing device.
>
> • The Company will also extend all Syndeo warranties by one year, as a thank you to providers.
>
> • The Company has designated all Syndeo 1.0 and 2.0 devices on-hand as obsolete, resulting in an inventory write-down in cost of sales of $18.8 million during the three months ended September 30, 2023.
>
> • The Company incurred costs of $12.3 million associated with the Syndeo Program and has accrued an additional $32.1 million for the estimated cost to remediate or upgrade or exchange the remaining Syndeo 1.0 and 2.0 devices.

37.     The Company further disclosed that Defendant Stanleick would depart the Company as President and CEO and relinquish his Board seat, effective November 19, 2023.

38.     On this news, the Company's stock fell $2.51, or 64.36%, to close at $1.39 per share on November 14, 2023, on unusually heavy trading volume.

**CLASS ACTION ALLEGATIONS**

39.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Beauty Health securities between May 10, 2022 and November 13, 2023, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

40.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Beauty Health's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Beauty Health shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Beauty Health or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Beauty Health; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

45.    The market for Beauty Health's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Beauty Health's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Beauty Health's securities relying upon the integrity of the market price of the Company's securities and market information relating to Beauty Health, and have been damaged thereby.

46.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Beauty Health's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Beauty Health's business, operations, and prospects as alleged herein.

47.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Beauty Health's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

48.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

49.   During the Class Period, Plaintiff and the Class purchased Beauty Health's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

50.   As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set

forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Beauty Health, their control over, and/or receipt and/or modification of Beauty Health's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Beauty Health, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

51.     The market for Beauty Health's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Beauty Health's securities traded at artificially inflated prices during the Class Period.  On August 8, 2022, the Company's share price closed at a Class Period high of $15.27 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Beauty Health's securities and market information relating to Beauty Health, and have been damaged thereby.

52.     During the Class Period, the artificial inflation of Beauty Health's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Beauty Health's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Beauty Health and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class

purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

53.     At all relevant times, the market for Beauty Health's securities was an efficient market for the following reasons, among others:

(a)     Beauty Health shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Beauty Health filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Beauty Health regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Beauty Health was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

54.     As a result of the foregoing, the market for Beauty Health's securities promptly digested current information regarding Beauty Health from all publicly available sources and reflected such information in Beauty Health's share price. Under these circumstances, all purchasers of Beauty Health's securities during the Class Period suffered similar injury through their purchase of Beauty Health's securities at artificially inflated prices and a presumption of reliance applies.

55.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's

business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

56. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Beauty Health who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

57. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.   During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Beauty Health's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

59.   Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Beauty Health's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Beauty Health's financial well-being and prospects, as specified herein.

61.   Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Beauty Health's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Beauty Health and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more

particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

62. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

63. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Beauty Health's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately

1   refraining from taking those steps necessary to discover whether those statements
2   were false or misleading.

3         64.    As a result of the dissemination of the materially false and/or misleading
4   information and/or failure to disclose material facts, as set forth above, the market
5   price of Beauty Health's securities was artificially inflated during the Class Period.
6   In ignorance of the fact that market prices of the Company's securities were
7   artificially inflated, and relying directly or indirectly on the false and misleading
8   statements made by Defendants, or upon the integrity of the market in which the
9   securities trades, and/or in the absence of material adverse information that was
10  known to or recklessly disregarded by Defendants, but not disclosed in public
11  statements by Defendants during the Class Period, Plaintiff and the other members of
12  the Class acquired Beauty Health's securities during the Class Period at artificially
13  high prices and were damaged thereby.

14        65.    At the time of said misrepresentations and/or omissions, Plaintiff and
15  other members of the Class were ignorant of their falsity, and believed them to be
16  true.  Had Plaintiff and the other members of the Class and the marketplace known
17  the truth regarding the problems that Beauty Health was experiencing, which were
18  not disclosed by Defendants, Plaintiff and other members of the Class would not have
19  purchased or otherwise acquired their Beauty Health securities, or, if they had
20  acquired such securities during the Class Period, they would not have done so at the
21  artificially inflated prices which they paid.

22        66.    By virtue of the foregoing, Defendants violated Section 10(b) of the
23  Exchange Act and Rule 10b-5 promulgated thereunder.

24        67.    As a direct and proximate result of Defendants' wrongful conduct,
25  Plaintiff and the other members of the Class suffered damages in connection with
26  their respective purchases and sales of the Company's securities during the Class
27  Period.

28

## **SECOND CLAIM**

### **Violation of Section 20(a) of The Exchange Act**

### **Against the Individual Defendants**

68.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69.     Individual Defendants acted as controlling persons of Beauty Health within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71.     As set forth above, Beauty Health and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class

1  suffered damages in connection with their purchases of the Company's securities
2  during the Class Period.

3  **PRAYER FOR RELIEF**

4      WHEREFORE, Plaintiff prays for relief and judgment, as follows:

5      (a)    Determining that this action is a proper class action under Rule 23 of the
6  Federal Rules of Civil Procedure;

7      (b)    Awarding compensatory damages in favor of Plaintiff and the other
8  Class members against all defendants, jointly and severally, for all damages sustained
9  as a result of Defendants' wrongdoing, in an amount to be proven at trial, including
10  interest thereon;

11      (c)    Awarding Plaintiff and the Class their reasonable costs and expenses
12  incurred in this action, including counsel fees and expert fees; and

13      (d)    Such other and further relief as the Court may deem just and proper.

14  **JURY TRIAL DEMANDED**

15      Plaintiff hereby demands a trial by jury.

16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  November 16, 2023

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Pavithra Rajesh*
Robert V. Prongay
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: rdawson@glancylaw.com

*Counsel for Plaintiff Abduladhim A. Alghazwi*

### SWORN CERTIFICATION OF PLAINTIFF
### THE BEAUTY HEALTH COMPANY (SKIN) SECURITIES LITIGATION

I, Abduladhim A. Alghazwi, certify that:

1.      I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.      I did not purchase the The Beauty Health Company securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in The Beauty Health Company securities during the period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

_____                    _____
11/15/2023                                 Abduladhim A. Alghazwi
Date

**Abduladhim A. Alghazwi 's Transactions in**
**The Beauty Health Company (SKIN)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 11/13/2023 | Bought | 3,600 | $3.7800 |