Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiffs*
*Priscilla Dijkgraaf and Martijn Dijkgraaf*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| ABDULADHIM A. ALGHAZWI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK, LIYUAN WOO, and MICHAEL MONAHAN,<br><br>Defendants. | No. 2:23-cv-09733-SGP-MAA<br><br>CLASS ACTION<br><br>**RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>Date:        Wednesday, February 21, 2024<br>Time:        1:30 p.m.<br>Courtroom:  5C<br>Judge:       Hon. Sherilyn Peace Garnett<br><br>ORAL ARGUMENT REQUESTED |

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 3

    A.   The Browns' Unorthodox Trading Subjects Them to Disqualifying Unique Defenses ................................................................ 3

    B.   The Browns Outsized Purchases Immediately After Revelation of the Fraud Further Demonstrates Their Lack of Reliance ............................................................................................... 5

    C.   The Browns' Refusal to Identify Their Post-Class Period Purchases Further Confirms Their Inadequacy ....................................... 6

III.  CONCLUSION ................................................................................................... 7

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ........................................................................3

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ................................................................1, 4

*Galmi v. Teva Pharms. Indus.*,
302 F. Supp. 3d 485 (D. Conn. 2017) ................................................................................5

*Gross v. AT&T Inc.*,
2019 WL 3500496 (S.D.N.Y. July 31, 2019) ....................................................................4

*Hurst v. Enphase Energy, Inc.*,
2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ..................................................................6

*In re Netflix, Inc., Sec. Litig.*,
2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ...................................................................3

*In re Opnext, Inc. Sec. Litig.*,
2008 WL 3285732 (D.N.J. Aug. 7, 2008) ..........................................................................4

*Richardson v. TVIA, Inc.*,
2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ....................................................................7

*Rocco v. Nam Tai Elecs., Inc.*,
245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................................................5

*In re Snap Inc. Sec. Litig.*,
2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) .................................................................2, 5

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
2012 WL 3638629 (D.N.J. Aug. 22, 2012) .......................................................................4

*Stoopler v. Direxion Shares ETF Tr.*,
2010 WL 3199679 (S.D.N.Y. Aug. 12, 2010) ...................................................................5

*Tsirekidze v. Syntax-Brillian Corp.*,
2008 WL 942273 (D. Ariz. Apr. 7, 2008) ......................................................................1, 4

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR
APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................. 1, 3

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................. 1, 3

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS

## I.   INTRODUCTION

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can **only** be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the presumptive "most adequate plaintiff"—i.e., the presumptive Lead Plaintiff—are the Dijkgraafs, having suffered approximately $78,390.85 in aggregated losses in connection with their Class Period purchases of The Beauty Health ("SKIN") shares as a result of the Defendants' alleged fraud (ECF No. 14-4), and having made a *prima facie* demonstration of their adequacy and typicality under Rule 23 (ECF No. 14).

One competing movant, the Browns, purport to have suffered a larger loss than the Dijkgraafs. ECF 18-3. But the Browns' unorthodox, high frequency trading patterns render them atypical and inadequate, and thus ineligible for appointment irrespective of their financial interest in this litigation. *See, e.g., Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (finding high frequency trader atypical because such trading "belies any true reliance on company reports or even on the integrity of the stock price itself").

Unlike typical class members that they seek to represent, the Browns engaged in a frenetic day trading strategy throughout the Class Period—repeatedly purchasing blocks of SKIN shares only to then immediately sell the entire position, sometimes all within a matter of days. *See* ECF Nos. 18-2, 18-3; *see also*, Gilmore Decl., Ex. 1. The volume and frequency of these buy and sell trades demonstrate that the Browns (or a programmed bot investing on their behalf) traded on daily market volatility rather than in reliance upon the Defendants' alleged misrepresentations. *See id.*; *see also, Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (finding high frequency trader atypical from the class "because the class's

damages stem from reliance upon the company's financial statements, not upon daily market volatility").

Indeed, the Browns' prolific trading immediately after the fraud was revealed serves as perfect proof that, given their atypical high frequency trading strategy, the Browns would have made the purchases in SKIN during the Class Period anyway, regardless of the fraud. ECF No. 18-3 at pp. 29, 42, 51. On November 30, 2023, after the market closed and instantly following the Company's corrective disclosure of the concealed issues impacting the Company's Syndeo devices and the adverse financial impact arising therefrom, both Jeff and Kevin Brown made prolific purchases of SKIN shares. *Id*.; *see also*, *In re Snap Inc. Sec. Litig*., 2019 WL 2223800, at \*2 (C.D. Cal. Apr. 1, 2019) (rejecting lead plaintiff movant because of his significant post fraud disclosure purchases "could undermine his ability to assert the fraud-on-the-market presumption of reliance.").

Finally, the Browns' refusal to provide the Dijkgraafs with their post-Class Period purchases of SKIN shares further underscores their inadequacy. In the "Analysis of the Browns' Financial Interest" (ECF No. 18-3) (the "Browns Loss Chart"), the Chart lists numerous post-Class Period sales of shares by the Browns. The Browns' Loss Chart, however, does not identify any post-class period purchases of SKIN shares. Given the Browns' high frequency trading patterns over the Class Period, it is highly likely that the Browns continued to purchased SKIN shares post-Class Period. But despite counsel's request (Gilmore Decl., Ex. 2), the Browns refuse to produce this basic information – providing additional evidence that the Browns are unfit to represent the Class in this case.

The Class deserves better. The Dijkgraafs, who have proven their significant financial interest, adequacy, and typicality, submit that the Court should grant their motion in its entirety and deny the competing motions.

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS

## II.   ARGUMENT

In a PSLRA class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts are to "adopt a presumption" that the most adequate plaintiff is the plaintiff who: (1) has either filed a complaint or moved to be named lead plaintiff, (2) has the largest financial interest in the relief sought by the class, and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Of the competing movants, the Dijkgraafs claim the second-largest loss, but, unlike the movant with purportedly larger losses (the Browns), they have demonstrated their adequacy to represent the class. Accordingly, the Dijkgraafs have the "largest financial interest" of the demonstrably adequate movants to represent SKIN investors.

### A.   The Browns' Unorthodox Trading Subjects Them to Disqualifying Unique Defenses

The PSLRA precludes the appointment of a lead plaintiff who is "subject to unique defenses that render [them] incapable of representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Courts agree that "[t]here is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *See*, *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012).[1]

---

[1] *See also, In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS

Here, the Browns engaged in unorthodox high frequency trading strategies during the Class Period that render them atypical. For example, Jeff Brown alone placed 3,084 buy and sell transactions during the Class Period. ECF Nos. 18-2, 18-3. Far from taking a long view on the Company, the Browns frequently bought shares and sold shares on the same day or within just days of each other during the Class Period. *See* Gilmore Decl., Ex 1. Moreover, Jeff Brown was a serial in-and-out trader of SKIN stock during the Class Period. For example, in Account 1 alone, Jeff Brown had bought and then completely sold out of his SKIN Class Period position twenty separate times. *See id*. The Browns' high frequency, in-and-out, day trading "is not commensurate with the manner in which the typical class member sustained alleged losses." *In re Opnext, Inc. Sec. Litig*., 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) (finding movant atypical because "[d]ay trading is not commensurate with the manner in which the typical class member sustained alleged losses").

If the Court were to appoint the Browns as Lead Plaintiff, then this unusual trading strategy will give the Defendants ample ammunition at the class certification stage of this litigation, when they will, inevitably, argue that the Browns plainly cannot be entitled to rely on the *Basic* presumption of reliance premised upon "fraud-on-the-market." *Tsirekidze*, 2008 WL 942273, at *4; *Eichenholtz*, 2008 WL 3925289, at *1. In particular, the Browns's high frequency trading undercuts their reliance on the

---

defense is likely to succeed."); *Gross v. AT&T Inc*., 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019). ("Before disqualifying a potential lead plaintiff [as subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed. Rather, 'many courts have rejected appointments of lead plaintiffs based on potential risks.'") (quoting *Schaffer v. Horizon Pharma PLC*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016); *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp*., 2012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012), (denying motion by lead plaintiff movants subject to unique defense, "declin[ing] to decide [the issue] at this time," because "[t]o decide the lead plaintiff motions, the Court need only decide whether the issue of standing is a unique defense that is **likely** to become a major focus at litigation") (emphasis added).

- 4 -

Defendants' alleged misstatements in this litigation because it suggests that their trading was driven by a desire to capitalize on relatively short-term fluctuations in the price of SKIN stock—*i.e.*, that they would have engaged in these transactions ***despite the Defendants' positive statements***. *See, e.g.*, *Galmi v. Teva Pharms. Indus.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) ("[G]iven his status as a potential 'day trader,' he may be subject to unique defenses that make him an inappropriate lead plaintiff."); *see also Stoopler v. Direxion Shares ETF Tr.*, 2010 WL 3199679, at *4 (S.D.N.Y. Aug. 12, 2010), as corrected (Aug. 16, 2010) (day traders potentially subject to unique defenses).

**B.     The Browns Outsized Purchases Immediately After Revelation of the Fraud Further Demonstrate Their Lack of Reliance**

Additionally, the Browns made large purchases of SKIN shares on November 13, 2023, after the market closed and immediately following the Company's announcement of its third quarter 2023 financial results that revealed the fraud. ECF No. 18-3 at pp. 29, 42, 51. For example, Jeff Brown bought 157,000 SKIN shares during after-market hours on November 13 immediately following the corrective disclosure. *Id.* Similarly, Kevin Brown bought 36,500 shares (or 47% of all his Class Period purchases) after-market hours on November 13 immediately following the corrective disclosure. *Id.* Courts refuse to appoint lead plaintiffs that made significant purchases after the disclosure of fraud. *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("This court has consistently held that 'a person that increases his holdings in a security after the revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative.'") (quoting *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69 (S.D.N.Y. 2000)); *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) (rejecting lead plaintiff movant because of his significant post fraud disclosure purchases "could undermine his ability to assert the fraud-on-the-market presumption of reliance.")

There can be no genuine dispute that the Browns made their November 13 purchases after the disclosure the alleged fraud, as it is evident from SKIN's price per

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS

share trading range between November 13-14, 2023 and the price at which the Browns acquired their shares on November 13. Gilmore Decl, Ex. 3. During regular market hours on November 13, SKIN shares opened at $3.58 per share and traded at a low-to-high range of $3.58 - $4.01 per share. *Id.* According to *AlphaSense*, at 4:10 pm Eastern on November 13, 2023, immediately after trading hours ended and SKIN shares closed at $3.90 per share, the Company released its 3Q 23 results revealing their prior misrepresentations. ECF No. 1 (Complaint) at ¶¶ 35-38. The Browns then apparently made their November 13 purchases at a price range of $2.27-$2.67 per share (ECF Nos. 18-2, 18-3), when SKIN shares were declining on the alleged corrective disclosures. When trading resumed on November 14, SKIN shares opened at $1.57 per share. Gilmore Decl., Ex. 3.

The Browns' November 13 purchases immediately after the corrective disclosure further demonstrates that they purchased the SKIN shares pursuant to their unusual trading strategy, regardless of the false information Defendants published. Their behavior on November 13 shows they did not rely on Defendants' fraudulent statements while making their trades and would have made the trades anyway, and thus are subject to unique defenses. *See Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085 at *6 (N.D. Cal. Nov. 30, 2020) ("Investors who make share purchases after the disclosure of the fraud may be rendered atypical if the timing of trades makes their behavior unique.") (citing *In re Montage Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *4 (N.D. Cal. 2016)).

## C.   The Browns' Refusal to Identify Their Post-Class Period Purchases Further Confirms Their Inadequacy

In calculating their losses on SKIN transactions during the Class Period, the Browns' Loss Chart lists numerous post-Class Period sales of SKIN shares by the Browns all the way up through December 24, 2023. ECF No. 18-3. The Browns' Loss Chart reflects these post-Class Period transactions as sales of SKIN shares acquired during the Class Period. *Id.* The Browns' Loss Chart, however, does not identify any post-Class Period purchases of SKIN shares. Given the Browns' high frequency trading

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS

pattern during the Class Period, it is highly likely that the Browns continued to purchase SKIN shares after the close of the Class Period. In the event the Browns purchased additional SKIN shares after the Class Period, this may bear on their financial interest. Under the preferred Last-In-First-Out (LIFO) methodology, the Browns would likely have to account for and match their post-Class purchases with the post-Class Period sales. *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (endorsing LIFO loss calculation matching sales with most recent purchase of shares).

More fundamentally, if the Browns continued to engage in the same frenetic purchasing and selling on November 14, 2023 and beyond – after the market had fully digested the fraud – such trading would further undermine their typicality.

Accordingly, on January 25, 2024, the Dijkgrafs' counsel requested that the Browns' counsel identify their post-Class Period purchases by January 29. Gilmore Decl., Ex. 2. To date, however, the Browns have not responded to the Dijkgrafs' request. If appointed lead plaintiff, the Browns will be required to participate in wide-ranging discovery, appear for depositions, and attend trial if necessary. The Browns' refusal to provide basic trade records raises concerns that they will not carry out their obligations if appointed Lead Plaintiff and serves as additional evidence of the Browns' inadequacy.

### III.  CONCLUSION

For the foregoing reasons and the reasons set forth in his motion brief (ECF No. 14), the Dijkgraafs respectfully request that the Court issue an Order granting their motion in all respects and denying the competing motions.

Dated: January 31, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  */s/ Lucas E. Gilmore*
     LUCAS E. GILMORE
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiffs
Priscilla Dijkgraaf and Martijn Dijkgraaf*

RESPONSE IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND OPPOSITION TO COMPETING MOTIONS