Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiffs*
*Priscilla Dijkgraaf and Martijn Dijkgraaf*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| ABDULADHIM A. ALGHAZWI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK, LIYUAN WOO, and MICHAEL MONAHAN,<br><br>Defendants. | No. 2:23-cv-09733-SGP-MAA<br><br>CLASS ACTION<br><br>**REPLY IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>Date:       Wednesday, February 21, 2024<br>Time:       1:30 p.m.<br>Courtroom:  5C<br>Judge:      Hon. Sherilyn Peace Garnett<br><br>ORAL ARGUMENT REQUESTED |

REPLY IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR
APPOINTMENT AS LEAD PLAINTIFFS

## I.    ARGUMENT

After two rounds of briefing, it is evident that the Browns are atypical investors and inadequate representatives and therefore unfit to lead the Class in this important securities fraud class action.

***Strike One – The Browns are high frequency day traders.*** Only a cursory review of the Browns' trade certification – a 78-page document reflecting thousands of trades during the Class Period, wherein the Browns repeatedly purchased large blocks of SKIN shares only to then immediately sell the entire position, sometimes all within a matter of days – confirm they employed an atypical trade strategy. *See* ECF Nos. 18-2, 18-3; *see also*, ECF 25-2. Their high frequency day trading undermines the Browns' ability to assert the fraud-on-the-market presumption of reliance. *See, e.g., Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (finding high frequency trader atypical because such trading "belies any true reliance on company reports or even on the integrity of the stock price itself").

At class certification, Defendants will have a field day in arguing that the Browns (or a programmed bot investing on their behalf) traded on daily market volatility rather than in reliance upon the Defendants' alleged misrepresentations. *See, e.g., Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (finding high frequency trader atypical from the class "because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility").

Without the presumption of reliance, proof of individualized reliance from each member of the putative class would be required—which would effectively preclude class certification. Thus, the Court would be right to deny the Browns lead plaintiff status on this ground alone. *See In re Opnext, Inc. Sec. Litig.*, 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) (finding movant atypical because "[d]ay trading is not commensurate with the manner in which the typical class member sustained alleged losses").

REPLY IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS

***Strike Two - The Browns both purchased significant amounts of their SKIN shares immediately after the fraud was revealed***. As if the Browns' high frequency day trading were not enough, the Browns also purchased large sums of SKIN stock ***immediately after*** the Company's disclosure of problems with the Syndeo devices and the adverse financial impact arising therefrom. ECF No. 18-3 at pp. 29, 42, 51; *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (denying lead plaintiff motion of movant who bought after corrective disclosure).

In particular, after market hours on November 13, 2022, and immediately following the Company's alleged disclosure of the fraud in its 3Q 2023 earnings release, Jeff Brown purchased 154,000 of his net 259,250 SKIN shares acquired during the Class Period, or 62% of his position in SKIN stock. *Id*. For his part, Kevin Brown purchased 37,000 of his net 68,300 SKIN shares acquired during the Class Period, or 54% of his SKIN position, during the same time window. *Id*. The sheer magnitude of the Browns post-disclosure purchases gives additional fodder to (and all but confirms) the claim that the Browns did not rely on the integrity of the market in making their investment decisions; rather, in accordance with their atypical high frequency trading strategy capitalizing on volatility, the Browns would have made the purchases in SKIN during the Class Period anyway, regardless of the fraud. *See*, *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) (rejecting lead plaintiff movant because of his significant post fraud disclosure purchases "could undermine his ability to assert the fraud-on-the-market presumption of reliance."). Thus, the Browns' prolific trading after the fraud was revealed provides yet another ground for denying their motion for lead plaintiff.

***Strike Three - The Browns refuse to disclose their post-Class Period purchases of SKIN shares***. Given the Browns' high frequency trading patterns over the Class Period, it is highly likely that the Browns continued to purchased SKIN shares beyond November 13 and after the market had fully digested Defendants' fraud. Such purchases would serve to further undermine whatever chance the Browns had to invoke the fraud-

REPLY IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR
APPOINTMENT AS LEAD PLAINTIFFS

on-the market presumption. But despite Dijkgraafs' counsel's request well in advance of their deadline to respond (ECF No. 25-3), the Browns refuse to provide this basic, relevant information to either the Court or the competing movants – providing additional evidence to the Court that the Browns should be "called out" and declared unsuitable to represent the Class in this case.

***The Browns provided no retort to the evidence rebutting the presumption that they are an appropriate plaintiff***. Significantly, these three challenges, which the Dijkgraafs raised in their response brief (ECF No. 25), should have come as no surprise to the Browns. The Dijkgraafs' counsel previewed these precise arguments in a January 25, 2024 communication to the Browns' counsel – nearly one week in advance of the January 31, 2024 response brief deadline. ECF No. 25-3. Tellingly, the Browns' response brief provides no answer to this mountain of proof of the Browns' atypicality and inadequacy. ECF No. 24.

***The Dijkgraafs have made the requisite showing and their leadership presents no risk to the Class***. At bottom, the potential risk that the Browns pose to the Class if appointed lead plaintiff cannot be understated. Beyond the idiosyncrasies of their unusual trading strategy creating a distraction to the prosecution of the action, as stated above, Defendants may be able to derail class certification by showing that the Browns are unable to assert the fraud-on-the-market presumption of reliance or are otherwise subject to unique defenses. If Defendants are successful at defeating class certification, the statute of repose on viable claims may expire, barring the putative class members from substituting a new lead plaintiff. *See, e.g., Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *2 (S.D.N.Y. Dec. 16, 2020) (recognizing risk of appointing movant who purchased shares after disclosure of the fraud).

On the other hand, appointment of the Dijkgraafs – who have timely filed their motion, demonstrated their significant financial interest, and made a *prima facie* showing of their adequacy and typicality – present none of potential pitfalls that the Browns' appointment does. Indeed, movant Joseph Jou does not oppose the Dijkgraafs'

REPLY IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS

motion. ECF No. 23. And the Browns assert no challenges to the Dijkgraafs other than saying that they maintain a larger financial interest. ECF No. 24 at p. 3. Accordingly, the Dijkgraafs are the "most adequate plaintiff" and should be appointed lead plaintiff.

## II.    CONCLUSION

For the foregoing reasons and the reasons set forth in their motion and response briefs (ECF Nos. 14 and 25), the Dijkgraafs respectfully request that the Court issue an Order granting their motion in all respects and denying the competing motions.

Dated: February 7, 2024                Respectfully submitted,

                                       HAGENS BERMAN SOBOL SHAPIRO LLP

                                       By:  */s/ Lucas E. Gilmore*
                                              LUCAS E. GILMORE
                                            Reed R. Kathrein (139304)
                                            Lucas E. Gilmore (250893)
                                            715 Hearst Avenue, Suite 202
                                            Berkeley, CA  94710
                                            Telephone: (510) 725-3000
                                            Facsimile:  (510) 725-3001
                                            reed@hbsslaw.com
                                            lucasg@hbsslaw.com

                                            *Attorneys for [Proposed] Lead Plaintiffs*
                                            *Priscilla Dijkgraaf and Martijn Dijkgraaf*

REPLY IN SUPPORT OF MOTION OF PRISCILLA DIJKGRAAF AND MARTIJN DIJKGRAAF FOR APPOINTMENT AS LEAD PLAINTIFFS