Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles Linehan (SBN 307439)
  clinehan@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movants*
*Jeff Brown and Kevin Brown*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULADHIM A. ALGHAZWI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK, LIYUAN WOO, and MICHAEL MONAHAN, <br><br> Defendants. | Case No. 2:23-cv-09733-SPG-MAA <br><br> **JEFF BROWN AND KEVIN BROWN'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL** |

The Browns submit this reply memorandum of law in further support of their motion for appointment as lead plaintiff and approval of co-lead counsel (Dkt. No. 16), and in response to the opposition to their motion filed by the Dijkgraafs (Dkt. No. 25, "Dijkgraaf Opp.").[1]

The Browns undisputedly have the largest financial interest in this matter. In fact, each of the Brown brothers, individually, has a larger loss than both Dijkgraafs combined. As such, the Browns are the presumptively most adequate plaintiff to be appointed as lead plaintiff. The Dijkgraafs argue, however, that the Browns should be disqualified from consideration for appointment as lead plaintiff on the purported bases that the Browns purchased and sold too many shares during the class period, and that the Browns purchased shares after the class period. However, the Dijkgraafs' speculation that the Browns' trading may subject them to unique defenses falls far short of the "proof" required by the PSLRA to rebut the presumption that the Browns are the most adequate plaintiff. Moreover, as demonstrated by the Browns' Joint Declaration, submitted with this Reply as Exhibit 1, the Dijkgraafs' speculation regarding the Brown's trading methodology is flat out incorrect. As such, the Browns' motion should be granted.

## I.   THE BROWNS ARE THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

The Browns satisfy all three requirements to be the presumptively most adequate plaintiff because they filed a timely motion, have the largest financial interest, and made the required preliminary showing of their adequacy and typicality. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Dijkgraaf Opp. at 3 (admitting "the Dijkgraafs claim the second-largest loss"). In fact, each of the Browns, alone, has a larger loss and retained more shares through the end of the class period than both the

---

[1] All capitalized terms herein shall have the same definitions as in the Browns' opposition brief (Dkt. No. 24).

Dijkgraafs, combined. *See* Dkt. No. 24 at 4 (comparison chart).[2] As such, the Browns are the presumptively most adequate plaintiff to be appointed as lead plaintiff.

## II.   THE DIJKGRAAFS HAVE NOT REBUTTED THE PRESUMPTION THAT THE BROWNS ARE THE MOST ADEQUATE PLAINTIFF

The presumption that the Browns are the most adequate plaintiff may be rebutted only upon "proof" that the Browns "will not fairly and adequately protect the interests of the class," or "[are] subject to unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Importantly, the Dijkgraafs must provide "proof"—speculative assertions are insufficient. *See Murdeshwar v. Searchmedia Holdings Ltd.*, No. 10-cv-6794, 2010 WL 11556544, at *1 (C.D. Cal. Dec. 15, 2010) (holding "mere speculation" was insufficient to rebut the most adequate plaintiff presumption); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) ("Speculative assertions [are] insufficient to rebut the lead plaintiff presumption.").

Here, the Dijkgraafs argue that the Browns are inadequate on the bases that the Browns bought and sold too many shares during the class period, and bought shares after the class period. Both attacks fail to rebut the presumption that the Browns are the most adequate plaintiff.

### A.   The Browns' Class Period Trading Is Not Disqualifying

The Dijkgraafs argue that the Browns buying and selling during the class period makes them "day traders" such that their losses "[are] not commensurate with

---

[2] The retained shares figure in the chart includes the Browns' purchases on November 13, 2023, consistent with the class definition. However, even excluding the shares they purchased after the disclosure on November 13, 2023, Jeff and Kevin Brown's retained shares are still 113,350 and 31,800, respectively, totaling 145,150 shares.

the manner in which the typical class member sustained alleged losses." *Dijkgraaf Opp.* at 4 (citing *In re Opnext, Inc. Sec. Litig.*, 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008)). The Dijkgraafs also argue that the Browns' alleged day-trading subjects the Browns to the defense that they are not "entitled to rely on the *Basic* presumption of reliance" because "their trading was driven by a desire to capitalize on relatively short-term fluctuations in the price of [Beauty Health] stock." *Dijkgraaf Opp.* at 4-5.

As an initial matter, **the Dijkgraafs day traded**. *See* Dkt. No. 14-4 at 7. Priscilla Dijkgraaf bought and sold hundreds of shares within the same day on November 18, 2022, November 23, 2022, and August 1, 2023. *Id.* The Dijkgraafs inexplicably fail to offer an explanation as to why their day trading is acceptable.[3] Setting that aside, however, the Dijkgraafs' day trading attack should be rejected.

The Browns suffered losses the same way all class members did—they purchased shares during the class period and held those shares through the corrective disclosures. In fact, the Browns held 145,150 shares through the final corrective disclosure, compared to the Dijkgraafs' total of just 16,674. *See* Dkt. Nos. 14-4, 18-3. Even if losses and gains on the Browns' intra-class period purchases and sales are ignored and only shares held through corrective disclosures are considered, the Browns' loss on those shares alone is $507,252.60. In other words, the Browns' losses and claims arise from holding their shares through the corrective disclosures—just like the claims of all class members—not from intra-class period

---

[3] Counsel for the Browns also represents Plaintiff Alghazwi in this action. If both the Dijkgraafs and the Browns are disqualified on the basis that they are day traders, Plaintiff Alghazwi remains willing and able to serve as lead plaintiff, and he satisfies the requirements of the PSLRA since he filed a complaint, has a financial interest, and is adequate and typical. However, the Browns submit that Dijkgraafs' day trading attack should be rejected for the reasons set forth *infra*.

buying and selling. For this reason, Courts routinely appoint alleged day traders. *See Serafimov v. Netopia*, Inc., No. 04-cv-03364, 2004 WL 7334061, at \*5 (N.D. Cal. Dec. 3, 2004) (recognizing "the Ninth Circuit has held that day traders suffer as do other traders under fraud-on-the-market-theory" and "[m]any district courts that have considered the issue or surveyed case law have largely concluded that day traders may serve as class representatives"); *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007, 2013 WL 257161, at \*2 (N.D. Cal. Jan. 23, 2013) ("[W]hether [movant] is a day trader is inconsequential to his request to be appointed lead plaintiff.").

Moreover, while the Browns bought and sold shares, they also held shares for considerable lengths of time prior to the corrective disclosures. For example, Jeff Brown held a substantial number of shares in his account 2 from June 15, 2023 through the August 9, 2023 corrective disclosure. *See* Dkt. No. 18-3. Jeff Brown also held shares in accounts 1 and 2 from October 3, 2023, through the end of the class period disclosure on November 13, 2023. *Id.* Kevin Brown likewise maintained a positive share count in his account over both disclosures from May 25, 2023, through the end of the class period on November 13, 2023. *See id.* Since they held shares for substantial lengths of time, they are not subject to a "day trader" defense. *See In re Origin Materials, Inc.*, No. 23-cv-01816, 2023 WL 8698363, at \*3-\*4 (E.D. Cal. Dec. 15, 2023) (appointing an alleged day trader as lead plaintiff because he also held shares during the class period and through a corrective disclosure, reasoning he "relied on more than merely daily price fluctuations, and thus would not be subject to the day trader defense").

Further, even if the Browns "trade[d] at higher volume or more frequently" and "could be characterized as [] 'day trader[s]'" that "is not enough to rebut the presumption." *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 410 (D. Del. 2014). To rebut the presumption, the Dijkgraafs "must provide some additional evidence that [the Browns] did not rely on [the] market price of the shares." *Id.* The Dijkgraafs have not provided the required proof. To the contrary, as

evidenced in the Browns' Joint Declaration, Jeff Brown regularly reviewed Company reports, and relied on them in making his investment decisions. Moreover, contrary to the Dijkgraafs' baseless speculation, the Browns did not use a bot or algorithm. *See* Ex. 1, ¶ 4. As such, the Browns' "reliance on public information to build a long term position is sufficient to show [them] to be typical, notwithstanding whether [they] may be labeled a day trader." *In re UTStarcom, Inc. Sec. Litig.*, No. 04-cv-04908, 2010 WL 1945737, at *7 (N.D. Cal. May 12, 2010). Accordingly, the Dijkgraafs have failed to rebut the presumption that the Browns are the most adequate plaintiff based on their class period trading.

### B.     The Browns' Post-Class Period Purchases Are Not Disqualifying

The Dijkgraafs next argue that the Browns "made large purchases of [Beauty Health] shares on November 13, 2023, after the market closed and immediately following the Company's announcement of its third quarter 2023 financial results that revealed the fraud." Dijkgraafs Opp. at 5. The Dijkgraafs claim these purchases show the Browns "did not rely on Defendants' fraudulent statements while making their trades and would have made the trades anyway." *Id.* at 6.

While the Dijkgraafs offer some cases in support of their argument, two of which are out-of-Circuit, the weight of authority in the Ninth Circuit holds that purchases after a corrective disclosure do not render a plaintiff inadequate or atypical. *See Ferreira v. Funko*, Inc., No. 20-cv-02319, 2020 WL 3246328, at *6 (C.D. Cal. June 11, 2020) ("Courts typically find that purchasing securities after a partial, or even full, disclosure of alleged fraud does not disqualify potential lead plaintiffs.") (collecting cases); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. 07-cv-7114, 2010 WL 11507255, at *4 (C.D. Cal. Aug. 27, 2010) ("[P]ost-disclosure purchases do not defeat typicality."); *Hufnagle v. Rino Int'l Corp.*, No. 10-cv-8695, 2011 WL 710704, at *8 (C.D. Cal. Feb. 14, 2011), *adopted*, No. 10-cv-1754, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) ("[P]urchases of stock by the class representatives after negative announcements during the class period or even after

the close of the class period do not destroy typicality.") (citation omitted); *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1061 (N.D. Cal. 2018) ("The weight of authority . . . 'favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement.'") (citation omitted). The same result is warranted here.

In fact, as courts in this District recognize, there are many reasons investors purchase shares following corrective disclosures that have nothing to do with purported non-reliance. For example, "such purchases could be made: (1) as index purchases; (2) in reliance on the issuer's representations that it has corrected prior misrepresentations; (3) on the theory that corrective disclosures are, in fact, corrective; or (4) as an attempt to 'average-down' the price paid for an issuer's securities." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 (C.D. Cal. 2009) (footnotes omitted). Here, "other class members also presumably purchased after" Beauty Health's corrective disclosures. *Id.* As such, the Browns would not be inadequate representatives of the class on this basis, and the Dijkgraafs have again failed to rebut the presumption that the Browns are the most adequate plaintiff.

**C.     Declining To Provide Additional Post-Class Period Transaction Information Is Not Disqualifying**

The Dijkgraafs argue that the Browns should further be disqualified because they declined to provide additional post-class period purchase information. *See* Dijkgraaf Opp. at 6-7. This argument is baseless. The Browns provided their class period transactions as required by the PSLRA, plus those post-class period sales that are matched to class period purchases on a LIFO basis that are necessary to calculate their losses. *See* Dkt. Nos. 18-2 (Certifications); 18-3 (Financial Interest Analysis). The Dijkgraafs demand, however, that the Browns also provide any additional post-class period purchases because they "may bear on [the Browns'] financial interest." Dijkgraaf Opp. at 7. This is nonsensical since only losses and gains on ***class period*** purchases should be included in a movant's loss calculation. The Dijkgraafs did not

offer their post-class period purchase information (and the Browns did not request it) because it is irrelevant. Moreover, as explained above, post-class period buying (and selling) does not render a movant atypical or inadequate. The Browns' refusal to provide extraneous and irrelevant transaction information in response to what appears to be a fishing expedition is not disqualifying. As such, the Dijkgraafs have failed to rebut the PSLRA presumption that the Browns are the most adequate plaintiff.

## III.   CONCLUSION

For the foregoing reasons, the Browns respectfully request that the Court appoint them as lead plaintiff and approve their selection of Glancy Prongay & Murray LLP and Holzer & Holzer, LLC as co-lead counsel for the class.

Dated:  February 7, 2024

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Charles H. Linehan*

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  clinehan@glancylaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer (*pro hac vice forthcoming*)
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Counsel for Lead Plaintiff Movants Jeff Brown and Kevin Brown and Proposed Co-Lead Counsel for the Class*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Jeff Brown and Kevin Brown, certifies that this brief contains 2,104 words, which complies with the word limit of L.R. 11-6.1.

DATED: February 7, 2024            *s/ Charles H. Linehan*
                                   Charles H. Linehan

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On February 7, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 7, 2024, at Los Angeles, California.

*s/ Charles H. Linehan*
Charles H. Linehan