UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULADHIM A. ALGHAZWI, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>   v.<br><br>THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK, LIYUAN WOO, and MICHAEL MONAHAN,<br><br>                Defendants. | Case No. 2:23-cv-09733-SPG-MAA<br><br>**ORDER GRANTING THE DIJKGRAAFS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL AND DENYING THE BROWN AND JOU MOTIONS [ECF NOS. 14, 16, 19]** |

Before the Court are the motions for the appointment of lead plaintiffs and corresponding approval of the selection of lead counsel filed by Priscilla and Martijn Dijkgraaf ("the Dijkgraafs"), (ECF No. 14 (the "Dijkgraaf Motion")); Jeff and Kevin Brown ("the Browns"), (ECF No. 16 (the "Brown Motion")); and Joseph Jou ("Jou"), (ECF No. 19 (the "Jou Motion")). The Dijkgraafs and Browns each filed oppositions to the competing motions, (ECF No. 24 ("Brown Opposition"); ECF No. 25 ("Dijkraaf Opposition")); Jou filed a notice of non-opposition to the competing motions, (ECF No. 23 ("Jou Notice")). The Court has read and considered the matters raised with respect to the Motion and concluded that this matter is suitable for decision without oral argument. *See*

Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  Having considered the parties' submissions, the relevant law, oral arguments, and the record in this case, the Court GRANTS the Dijkgraaf Motion and DENIES the Brown and Jou Motions.

## I. BACKGROUND

Defendant The Beauty Health Company (the "Company") is a company focused on "skin health experiences"; its flagship brand, Hydrafacial, provides goods and services related to the dermatological procedure hyradermabrasion.  (ECF No. 1 ("Compl.") ¶ 2). Hydrafacial's leading product is Syndeo, a machine that performs hyradermabrasion. (*Id.*). Hydrafacial launched Syndeo in the United States in March 2022.  (*Id.*).

The Company's press releases and disclosures for the first three quarters of 2022 expressed a rosy view of Syndeo's launch, touting a purportedly "strong rollout," "exceptional results," "record Delivery Systems net sales," and a "strong demand for the Company's new Syndeo delivery system."  (*Id.* ¶¶ 20–22).  In February 2023, The Company issued a press release "reiterating its outlook" for growth in the 2023 fiscal year. (*Id.* ¶ 25).  The Company subsequently, in March 2023, filed a Form 10-K with the Securities and Exchange Commission including language regarding the importance of customers' confidence in Defendants' products and the ingredients used therein. (*Id.* ¶ 26). In May 2023, the Company issued a press release "reconfirm[ing] [its] 2023 adjusted EBITDA margin guidance and long-term 2025 targets" and advertising, among other predictions, "continued strength in consumer demand" and "strong Syndeo traction globally." (*Id.* ¶ 27).

On August 9, 2023, however, the Company announced that its "second quarter 2023 gross margin was 'unfavorably impacted' by a mix shift 'toward lower-margin refurbished devices'" and United States-based customers' choices to wait for further enhancements to Syndeo.  (*Id.* ¶ 29).  The Company also announced the "involuntary separation without cause" of its Chief Financial Officer ("CFO"), Liyuan Woo ("Woo").  (*Id.* ¶ 30).  On November 13, 2023, the Company disclosed lower-than-expected United States revenue

and the departure of its President, Chief Executive Officer, and Board member Andrew Stanleick ("Stanleick"). (*Id.* ¶ 5).

Plaintiff Abduladhim A. Alghazwi ("Alghazwi") alleges that these disclosures were materially false or misleading. (*Id.* ¶ 7). Specifically, Alghazwi contends "that Syndeo 1.0 and 2.0 devices had issues leading to 'frequent treatment interruptions'"; that "the Company incurred significant costs to develop enhancements," but that "providers continued to experience issues with the Syndeo devices" notwithstanding the enhancements; and "that, as a result, the Company would no longer market Syndeo 1.0 and 2.0 devices," causing it to "incur significant inventory writedowns." (*Id.*). Alghazwi contends that these circumstances rendered positive statements about the Company's prospects misleading and baseless. (*Id.*). Accordingly, on November 16, 2023, Alghazwi filed this class action suit on behalf of himself and a putative class against the Company, Woo, Stanleick, and the Company's current CFO Michael Monahan (collectively, "Defendants") in this Court. *See generally* (*id.*).

On January 16, 2024, the Dijkgraafs, the Browns, and Jou each filed motions seeking appointment as lead plaintiff for the putative class and approval of their selection of lead counsel. (Dijkgraaf Mot.; Brown Mot.; Jou Mot.). On January 31, 2024, the Dijkgraafs and Browns each filed oppositions to the other putative class members' competing motions, (Dijkgraaf Opposition; Brown Opposition), while Jou filed a notice of non-opposition to the same, (Jou Notice). The Dijkgraafs and Browns each filed replies in support of their respective motions on February 7, 2024. (ECF No. 26 ("Dijkgraaf Reply"); ECF No. 27 ("Brown Reply")).

## II. LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA") imposes early notice requirements on plaintiffs:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated

national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

After the plaintiff satisfies the notice requirement, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that "the most adequate plaintiff":

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A competing putative class member may defeat this presumption with evidence "that the presumptively most adequate plaintiff" either "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### III. DISCUSSION

#### A. Alghazwi Satisfied the PSLRA's Notice Requirement

To comply with the PSLRA, a plaintiff must (1) publish notice within 20 days of filing their complaint in (2) " a widely circulated national business-oriented publication or

wire service," advising the putative class of (3) "the pendency of the action, the claims asserted therein, and the purported class period," as well as that (4), not later than 60 days after the notice's publication, any member of the putative class may move to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i).

Here, Alghazwi published notice of this lawsuit on November 16, 2023, the same day he filed suit. *Compare* (ECF No. 18-1 (Exhibit A to Declaration of Charles H. Linehan ("Linehan Ex. A"))) *with* (Compl.). Alghazwi published notice in *Business Wire*, (Linehan Ex. A), a national, widely-circulated, business-oriented wire service, (*see Ferreira v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *4 (C.D. Cal. June 11, 2020)). The notice stated that "Glancy Prongay & Murray LLP . . . has filed a class action lawsuit in the United States District Court for the Central District of California . . . on behalf of persons and entities that purchased or otherwise acquired The Beauty Health Company . . . securities between May 10, 2022 and November 13, 2023," described the claims at issue, and notified investors "that they have 60 days from the date of this notice to move the Court to serve as lead plaintiff in this action." (Linehan Ex. A at 2 (emphasis omitted)). Accordingly, Alghazwi's notice in *Business Wire* satisfies the requirements of the PSLRA.

### B. Selection of Lead Plaintiffs

Although three aspiring lead plaintiffs filed motions in response to Alghazwi's notice, (Dijkgraaf Mot.; Brown Mot.; Jou Mot.), putative class member Joseph Jou ("Jou") subsequently filed a Notice of Non-Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel, recognizing that "Jou does not have the 'largest financial interest' in this litigation within the meaning of the PSLRA," (Jou Notice at 2). The Court accordingly limits its analysis to the two parties who continue to compete to be appointed as lead plaintiffs: the Browns and the Dijkgraafs.

#### 1. The Browns Are Presumptively the Most Adequate Lead Plaintiffs

Under the PSLRA, the presumptively most adequate plaintiff (1) "either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)"; (2) "has

the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As explained above, the Browns and the Dijkgraafs each moved to be appointed as lead counsel in response to Alghazwi's notice. (Dijkgraaf Mot.; Brown Mot.). As a result, the Court must compare each party's "financial interest in the litigation," using accounting methods that are both "rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002).

Courts within the Ninth Circuit generally determine which party has the largest financial stake by reference to one of four metrics: "1) number of shares purchased during the class period; 2) net shares purchased during the class period; 3) net funds expended during the class period; and 4) approximate losses from the alleged fraud." *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 995 (N.D. Cal. 1999). *See also Ferreira*, 2020 WL 3246328, at *5 (same). A comparison of "the financial stakes of the various plaintiffs" reveals that the Browns have "the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d at 730. By every metric—gross or net shares purchased, net funds expended during the class period, or approximate losses—the Browns' financial stake vastly surpasses the Dijkgraafs'.[1] (Brown Opp. at 4).

Once a court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *In re Cavanaugh*, 306 F.3d at 732. The court makes its initial Rule 23 determination as to that plaintiff, based on the information provided by the plaintiff in its pleadings. *Id.* at 730. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

---

[1] Although the Court notes minor discrepancies with regard to Jeff Brown's transactions between the source records filed by the Browns, (ECF No. 18-2), and the summary chart set forth in the Brown Opposition, these differences (amounting to approximately 3,000 fewer net shares purchased) do not change the fact that the Browns purchased over 20 times more net shares and realized approximately losses approximately 4.5 times greater than the Dijkgraafs, *see* (Brown Opp. at 4).

plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). To determine whether a plaintiff meets Rule 23's adequacy requirement, courts "ask two questions: (1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, the Browns allege that, "[l]ike all members of the class, the Browns suffered losses as a result of their Beauty Health transactions during the Class Period" arising from "the artificial inflation of Beauty Health's share price caused by the Defendants' alleged misrepresentations and omissions." (ECF No. 17 at 8). As for adequacy, the Browns highlight the absence of any conflict between them and the class or their lawyers, and further emphasize their experience in investing. (*Id.* at 8–9). Based on these allegations, the Court preliminarily concludes that the Browns meet Rule 23's typicality and adequacy requirements.

### 2. The Dijkgraafs Rebut the Presumption of Adequacy

After a presumptively most adequate lead plaintiff is identified, other plaintiffs have "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d at 730. Here, in opposition, the Dijkgraafs do not challenge the Browns' adequacy as representatives under Rule 23—they do not contend that the Browns have conflicts of interest with the rest of the putative class or that they will otherwise be unable to vigorously prosecute this lawsuit. Instead, the Dijkgraafs contend that the Browns are not 'typical' as required by Rule 23 because their trading activity subjects them to unique defenses. First, the Dijkgraafs contend that the Browns are atypical because they engaged in "unorthodox high frequency trading strategies." (Dijkgraaf Opp. at 8). Specifically, the Browns conducted thousands of trades during the Class Period. (*Id.*). Additionally, on at least twenty occasions over the Class Period, Jeff Brown purchased substantial positions in the Company's stock, then

sold those positions in their entirety. (*Id.*; ECF No. 25-2). Second, the Dijkgraafs challenge "large purchases" of Company shares that the Browns made "on November 13, 2023, after the market closed and immediately following the Company's announcement of its third quarter 2023 financial results that revealed the [purported] fraud." (Dijkgraaf Opp. at 9). The Dijkgraafs contend that these purchases undermine the Browns' reliance on Defendants' purported misrepresentations, subjecting them to "unique defenses." (*Id.* at 10). The Court examines each issue in turn.

There is no *per se* bar against 'in-and-out' or day traders serving as putative class representatives in securities actions. *See, e.g.*, *Welling v. Alexy*, 155 F.R.D. 654, 662 (N.D. Cal. 1994) (recognizing that "[d]istrict courts throughout the Ninth Circuit have . . . certified in/out traders as class members and representatives" and collecting cases); *In re Zynga Inc. Sec. Litig.*, No. C 12-04007 JSW, 2013 WL 257161, at *2 (N.D. Cal. Jan. 23, 2013) (concluding that a plaintiff's status as a "day trader is inconsequential to his request to be appointed lead plaintiff"). Key to the analysis is whether the day trader can prove "a causal connection between the material misrepresentation and the loss" suffered. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Where day traders sell their interest in a company prior to any curative disclosure, for example, they may not be unable to prove any economic loss based on those misrepresentations. *Id. See also In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 594 (N.D. Cal. 2009).

Here, the Complaint alleges one partial disclosure on August 9, 2023, prior to a full corrective disclosure on November 13, 2023. (Compl. ¶¶ 5, 29–30). In response to the Dijkgraafs' arguments, the Browns emphasize that they maintained some number of shares in the Company "over both disclosures from May 25, 2023, through the end of the class period on November 13, 2023." (Brown Reply at 5). Given the Browns' ownership of shares throughout the relevant time periods, the Court declines to disqualify them on their day trading alone. Jeff Brown's habit of fully closing out his position in Company stock, however, raises the risk that he may be subject to unique defenses with regards to his damages, undermining the typicality of his claims. Although it is possible Defendants

might not prevail on this argument, its determination would likely play a large role in this litigation and involve concomitant expense. *See In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) (concluding that "potential problems regarding . . . typicality and adequacy" would likely "play a significant role at trial" and require prospective plaintiff "to devote class resources to defending itself").

The Browns' substantial purchases of Company stock following the Company's November 13, 2023, disclosure are cause for additional concern. The Browns held 145,150 shares through the November 13, 2023, disclosure, (Brown Reply at 3 n.2), before purchasing close to 200,000 additional shares directly following the disclosure, (ECF No. 18-2 at 47, 64, 76, 78–79). This substantial post-disclosure increase in the Browns' position could, as other courts have found in similar circumstances, undermine the Browns' ability to invoke the fraud-on-the-market presumption of reliance. *See, e.g.*, *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2 (concluding plaintiff's post-disclosure purchase of approximately 60% of total stock rendered him subject to unique defenses); *In re Valence Tech. Sec. Litig.*, No. C 95-20459 JW, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996) (finding atypical plaintiff who tripled shares post-disclosure); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 CIV 3658 SAS, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (where plaintiff purchased 87% of stock post-disclosure, concluding there was "no reason to subject the class to this potential defense where" another movant had "purchased the vast majority of its . . . shares before the first corrective disclosure was made").

In reply, the Browns note caselaw from within the Ninth Circuit holding that "that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement." *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1061 (N.D. Cal. 2018) (citation omitted). But the fact that such purchases do not always defeat typicality does not mean they never will. Indeed, courts in this district recognize that "*unusual* post-disclosure trading patterns present typicality problems." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 603 (C.D. Cal. 2009) (collecting cases) (emphasis

in original). Courts evaluate post-disclosure trading activity on a case-by-case basis; there is no bright-line rule delineating what activity is normal and what is expected. Here, based on the Browns' overall trading activity, the Court concludes that they are subject to unique defenses that undermine the typicality of their claims and DENIES their motion for appointment as lead plaintiff.

### 3. The Dijkgraafs Are Presumptively the Next Most Adequate Plaintiff

Where, as here, "the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake." *In re Cavanaugh*, 306 F.3d at 730. With losses of at least $78,390.84, (ECF No. 14-1 at 2), the Dijkgraafs are the moving party with the next largest financial interest in this lawsuit.[2] The Dijkgraafs meet their burden of establishing a preliminary showing of typicality and adequacy. *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (holding that, in appointing a lead plaintiff, "a 'preliminary showing' is all that is necessary" with regards to satisfying typicality and adequacy). Regarding typicality, the Dijkgraafs argue that they "purchased [Company] securities during the designated class period and alleges losses as a result of those transactions" and assert that they "are not subject to any unique or special defenses." (ECF No. 14-1 at 5). The Dijkgraafs also deny having any conflicts of interest with other putative class members, and contend that their "very large financial loss" motivates them to vigorously prosecute this lawsuit. (*Id.* at 6).

### 4. No Party Rebuts the Presumption of the Dijkgraafs' Adequacy

Although the Browns oppose the Dijkgraaf Motion, they do so solely on the grounds that they, and not the Dijkgraafs, should be appointed lead plaintiffs. The Browns note that the Dijkgraafs also engaged in day trading, (Brown Reply at 4), but do not argue that this conduct disqualifies the Dijkgraafs from serving as lead plaintiffs. In any event, and as the Court has already held with regard to the Browns above, Section III.B.2, day trading alone

---

[2] Jou alleges losses of approximately $11,288. (ECF No. 20 at 5).

does not bar a plaintiff from serving as lead plaintiff. *See also Welling*, 155 F.R.D. at 662. "[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job." *Tanne*, 226 F.R.D. at 669 (quoting *In re Cendant Corp. Litigation,* 264 F.3d 201, 268 (3d Cir. 2001)). As no party has done so, and the Dijkgraafs satisfy their burden to show preliminary typicality and adequacy under Rule 23, the Court GRANTS their Motion to be appointed lead plaintiffs.

### C. Selection of Class Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(v). *See also In re Cavanaugh*, 306 F.3d at 733 n.11 ("At a later stage in the proceedings, the district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class."). The Ninth Circuit recognizes "a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Id.* at 734 n.14 (citation omitted). Indeed, "[a] court may disturb the lead plaintiff's choice of counsel only if it appears necessary to 'protect the interests of the class.'" *Tanne*, 226 F.R.D. at 673 (quoting 15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa)).

The Dijkgraafs request the Court approve their selection of the law firm Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as lead counsel. (Dijkgraaf Mot. at 2). In light of the Hagens Berman resume submitted in connection with the Dijkgraaf Motion, demonstrating the firm's experience with and past successes in securities litigation, (ECF No. 14-7), and given the absence of any argument that the Dijkgraafs' "choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff," *In re Cavanaugh*, 306 F.3d at 733, the Court GRANTS the Dijkgraafs' motion to approve their selection of Hagens Berman as lead counsel for the putative class.

## IV. CONCLUSION

For the reasons stated herein, the Court GRANTS the Dijkgraaf Motion and DENIES the Brown Motion and Jou Motion. The Dijkgraafs are hereby appointed lead plaintiffs, and Hagens Berman is hereby appointed lead counsel.

**IT IS SO ORDERED.**

DATED: May 2, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE