James L. Sanders (SBN 126291)
Email: jsanders@reedsmith.com
Charles P. Hyun (SBN 307817)
Email: chyun@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA  90067
Telephone:   (213) 734-5200
Facsimile:   (213) 734-5299

John C. Scalzo (*pro hac vice*)
Email: jscalzo@reedsmith.com
Zachary B. Kaye (*pro hac vice*)
zkaye@reedsmith.com
REED SMITH LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

Brian M. Rostocki (*pro hac vice*)
Email: brostocki@reedsmith.com
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575

*Attorneys for Defendants The Beauty Health Company, Andrew Stanleick, and Liyuan Woo*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ABDULADHIM A. ALGHAZWI, individually and on behalf of all others similarly situated,

                Plaintiff,

    vs.

THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK, and LIYUAN WOO,

                Defendants.

Case No.:   2:23-cv-09733-SPG-MAA

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES**

Hon. Sherilyn Peace Garnett
Date: January 15, 2025
Time: 1:30 p.m.
Location: Courtroom 5C

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 15, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012 in Courtroom 5C, Defendants The Beauty Health Company, Andrew Stanleick, and Liyuan Woo shall and hereby do move this Court to dismiss with prejudice Plaintiffs' Consolidated Class Action Complaint for failure to state a claim upon which relief may be granted pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995.

This Motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, the Declaration of Charles P. Hyun and exhibits attached thereto, and the Request for Judicial Notice in support of the Motion, as well as the papers, pleadings and other documents on file in this action, judicially noticeable materials, and such other and further oral or documentary evidence as may be presented at or before the hearing.

This Motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on September 16, 2024. The parties thoroughly discussed the substance and potential resolution of the filed Motion by videoconference.

DATED: September 30, 2024            REED SMITH LLP

By: */s/ James L. Sanders*
    James L. Sanders (SBN 126291)
    Charles P. Hyun (SBN 307817)
    John C. Scalzo (*pro hac vice*)
    Brian M. Rostocki (*pro hac vice*)
    Zachary B. Kaye (*pro hac vice*)

    *Attorneys for Defendants The Beauty Health Company, Andrew Stanleick, and Liyuan Woo*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................... 3

    A.    The Parties ................................................................................. 3

    B.    BHC's Business .......................................................................... 4

    C.    BHC Announces Syndeo, Its Next-Generation Delivery System ....................................................................................... 4

    D.    Syndeo's Domestic Launch Results In Record Delivery System Sales .............................................................................. 4

    E.    Cosmetic Issues With "Syndeo 1.0" ......................................... 5

    F.    BHC Promptly Commences Remediation Efforts To Address Plugging Issues In Syndeo 1.0 ................................... 5

    G.    BHC's Remediation Efforts Result In "Syndeo 2.0" ............... 6

    H.    BHC Announces Its Financial Results For Q2 2022 ............... 7

    I.    Plugging Issues Re-Emerge Months After Syndeo 2.0's Introduction ............................................................................... 7

    J.    BHC Announces Its Financial Results For Q3 2022 ............... 8

    K.    BHC Announces Its Financial Results For Q4 2022 And $2.4 Million In Costs Associated With Its Syndeo Replacement Program ....................................................................... 8

    L.    BHC Announces Its Financial Results For Q1 2023 ............... 8

    M.    In July 2023, BHC Begins Selling Syndeo 3.0 ........................ 9

    N.    BHC Announces Financial Results For Q2 2023, Flagging Decreased Margins Relating To Syndeo's Teething Issues ................... 9

    O.    BHC Announces Its Financial Results For Q3 2023 ............... 10

    P.    This Action ................................................................................. 11

III.   LEGAL STANDARD ........................................................................... 11

IV.   ARGUMENT ....................................................................................... 13

    A.    Plaintiffs Fail To Plead Particular Facts Giving Rise To A Strong Inference Of Scienter ................................................. 13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

1.  Fraud-By-Hindsight Does Not Support An Inference Of
    Scienter ................................................................................. 14

2.  The Complaint's Allegations Negate Any Inference Of
    Scienter ................................................................................. 18

    a.  The Complete Absence Of Insider Stock Sales Undermines
        An Inference Of Scienter .................................................. 18

    b.  The Complaint's Theory of Scienter Is Nonsensical ....... 19

3.  Plaintiffs' Passing Reference To The Core Operations
    Theory Is Without Merit ......................................................... 20

4.  Plaintiffs' Confidential Witnesses Are Unreliable And
    Their Statements Are Not Indicative Of Scienter ..................... 22

B.  Plaintiffs Fail To Allege Any Falsity Or Material
    Misstatement ............................................................................. 24

    1.  The Complaint Fails to Plead The Falsity Of Any Material
        Fact .................................................................................... 25

        a.  The Challenged Statements Are True .............................. 25

        b.  The Challenged Statements Are Not Misleading Through
            Omission ........................................................................... 26

    2.  The Challenged Statements Are Non-Actionable Puffery ......... 32

    3.  The Challenged Statements Were Known By Market ............... 35

C.  The Complaint Fails To Allege Loss Causation .................................. 36

    1.  BHC's Share Price Did Not Drop Significantly Following
        The August 9, 2023 Disclosure Of The Syndeo Issues ............. 37

    2.  The Stock Drop Following The November 13, 2023
        Disclosure Was Caused By BHC's Poor Financial
        Performance ........................................................................ 39

D.  Plaintiffs Fail to Allege A Violation of Section 20(a) ......................... 40

V.  CONCLUSION ................................................................................. 40

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– ii –

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abdo v. Fitzsimmons*,
   2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ....................................35

*Alfus v. Pyramid Tech. Corp.*,
   764 F. Supp. 598 (N.D. Cal. 1991) .................................................15

*Allison v. Brooktree Corp.*,
   999 F. Supp. 1342 (S.D. Cal. 1998) ...............................................27

*Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*,
   1 F.4th 687 (9th Cir. 2021) ............................................................26

*In re AnaptysBio, Inc. Sec. Litig.*,
   2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ...........................20, 21

*In re Apple Computer, Inc.*,
   127 F. App'x 296 (9th Cir. 2005)....................................................27

*In re Apple Computer, Inc. Sec. Litig.*,
   243 F. Supp. 2d 1012 (N.D. Cal. 2002)..........................................35

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989) .......................................................35

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)................................................................26, 35

*Black v. Snap, Inc.*,
   2023 WL 6812762 (C.D. Cal. Sep. 26, 2023) ............................14, 15

*Bodri v. GoPro, Inc.*,
   252 F. Supp. 3d 912 (N.D. Cal. 2017).............................................33

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020)....................................................35, 40

*Brodsky v. Yahoo! Inc.*,
   592 F. Supp. 2d 1192 (N.D. Cal. 2008)...........................................40

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ................................................................................27

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ......................................................27

*Camp v. Qualcomm Inc.*,
   2020 WL 1157192 (S.D. Cal. Mar. 10, 2020) ......................................................38

*In re CellCyte Genetics Sec. Litig.*,
   2009 WL 3103892 (W.D. Wash. Sept. 24, 2009) ................................................34

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................................17

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................................................21

*In re Convergent Techs. Sec. Litig.*,
   948 F.2d 507 (9th Cir. 1991) ................................................................................35

*In re CornerStone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 ............................................................................................33

*Curry v. Yelp Inc.*,
   875 F.3d 1219 (9th Cir. 2017) ..............................................................................13

*In re Cypress Semiconductor Sec. Litig.*,
   891 F. Supp. 1369 (N.D. Cal. 1995) .....................................................................35

*Daniels Family 2001 Revocable Tr. v. Las Vegas Sands Corp.*,
   709 F. Supp. 3d 1217 (D. Nev. 2024) ...................................................................38

*In re Daou Sys. Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) ..............................................................................14

*In re Downey Sec. Litig.*,
   2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ............................................23, 30

*Eng v. Edison Int'l*,
   2017 WL 1857243 (S.D. Cal. May 5, 2017) .........................................................38

*In re Eventbrite, Inc. Sec. Litig.*
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020 ......................................................35

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– iv –

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

*In re Facebook, Inc. Sec. Litig.*,
    87 F.4th 934 (9th Cir. 2023) ................................................................37

*Farhar v. Ontrak, Inc.*,
    2024 WL 1136128 (C.D. Cal. Feb. 2, 2024) .......................................34

*Glazer Capital Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ..............................................................13

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
    352 F.3d 367 (9th Cir. 2003) ..............................................................32

*Habelt v. iRhythm Techs., Inc.*,
    2022 WL 971580 (N.D. Cal. Mar. 31, 2022) ......................................32

*Hampton v. Aqua Metals, Inc.*,
    2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) ....................................19

*Heliotrope Gen.,Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) ..............................................................35

*In re Herbalife, Ltd. Sec. Litig.*,
    2015 WL 7566616 (C.D. Cal. Nov. 23, 2015) ....................................25

*Howard Gunty Profit Sharing v. Quantum Corp.*,
    1997 WL 514993 (N.D. Cal. Aug. 14, 1997) .....................................35

*In re Impac Mortg. Holdings, Inc.*,
    554 F. Supp. 2d 1083 (C.D. Cal. 2008) ..............................................32

*In re iPhone 4S Consumer Litig.*,
    2013 WL 3829653 (N.D. Cal. July 23, 2013) ....................................33

*Kaplan v. Charlier*,
    426 F. App'x 547 (9th Cir. 2011) .......................................................13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................12

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) .......................................................19, 40

*Lopes v. Fitbit, Inc.*,
    2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) ...................................15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

— v —

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014) ......................................................................20

*Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022) ..............................................................................34

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ...............................................................................................26

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ......................................................................*passim*

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018) ...............................................................................39

*N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*,
   2009 WL 3112574 (C.D. Cal. Sep. 25, 2009) ...............................................15, 30

*Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*,
   2021 WL 6101391 (9th Cir. Dec. 21, 2021) ........................................................24

*Ng v. Berkeley Lights, Inc.*,
   2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ........................................................27

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) .........................................................................12, 18

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ................................................................................13

*Novak v. Kasaks*,
   997 F. Supp. 425 (S.D.N.Y. 1998) ......................................................................17

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) .....................................................16, 17, 21, 24

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ...................................................................37, 39, 40

*In re Peregrine Sys., Inc. Sec. Litig.*,
   2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) .....................................................32

*Philco Inv., Ltd. v. Martin*,
   2011 WL 500694 (N.D. Cal. Feb. 9, 2011) ..........................................................33

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– vi –

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

*Plevy v. Haggerty*,
    38 F. Supp. 2d 816 (C.D. Cal. 1998) ........................................................ 15, 29

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ................................................................ 21, 32

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ................................................................ 13, 20

*Ramos v. Comerica Inc.*,
    2024 WL 2104398 (C.D. Cal. Apr. 12, 2024) ................................................ 38

*In re Read-Rite Corp. Sec. Litig.*,
    2004 WL 2125883 (N.D. Cal. Sept. 22, 2004) ............................................... 28

*In re Read-Rite Corp. Sec. Litig.*,
    335 F.3d 843 (9th Cir. 2003) ...................................................................... 15

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ................................................................ 14, 27

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ................................................................ 12, 19

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ...................................................................... 27

*SEC v. Jammin Java Corp.*,
    2016 WL 6595133 (C.D. Cal. July 18, 2016) ................................................. 14

*In re Sierra Wireless, Inc. Sec. Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007) .......................................................... 33

*In re Silicon Storage Tech.*,
    2006 WL 648683 (N.D. Cal. Mar. 10, 2006) ................................................. 30

*In re Software Toolworks, Inc. Sec. Litig.*,
    789 F. Supp. 1489 (N.D. Cal. 1992) ............................................................ 17

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................. 12, 32, 33

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ...................................................................... 36

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– vii –

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................12, 13, 20

*In re Verifone Sec. Litig.*,
   784 F. Supp. 1471 (N.D. Cal. 1992)..............................................26

*In re Wells Fargo Sec. Litig.*,
   12 F.3d 922 (9th Cir. 1993) ..........................................................18

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ........................................18

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ......................................................25

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ........................................................18

*Wozniak v. Align Tech.*,
   850 F. Supp. 2d 1029 (N.D. Cal. 2012).................................15, 34

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ........................................................14

*Zucco, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................*passim*

**Statutes**

15 U.S.C. § 78p ..................................................................................18

15 U.S.C. § 78u-4(b) .........................................................................12

15 U.S.C. § 78u-4(b)(1)(B) ...............................................................12

15 U.S.C. § 78u-4(b)(2)(A) ...............................................................12

**Regulations**

17 C.F.R. § 240.16a-2 ........................................................................18

17 C.F.R. § 240.16a-3(a) ...................................................................18

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Despite its length, the Complaint, as pled, boils down to a simple—and entirely implausible—claim of fraud supposedly engaged in by The Beauty Health Company ("BHC" or the "Company") and two of its then-senior executives (Andrew Stanleick ("Stanleick") and Liyuan Woo ("Woo")) relating to the Company's flagship product, Syndeo, an FDA-approved facial treatment device that applies customizable serums tailored to each patient's skin. According to Plaintiffs, BHC knowingly sold its customers defective Syndeo devices and concealed costly efforts to resolve the defects before ultimately discontinuing the devices and incurring significant inventory write-downs. BHC allegedly did so at the risk of its customers' satisfaction and, in turn, the repeat sales of its high-margin serums (which account for more than half of the Company's revenue). As the Complaint would have it, Stanleick and Woo pursued this short-sighted and potentially business-destroying strategy without securing for themselves *any* personal benefit.

The Supreme Court has interpreted the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") as an effort by Congress to deter opportunistic securities litigation, and it has stressed the role of the district courts as gatekeepers in dismissing claims that do not meet the PSLRA's exacting standards. Accordingly, courts in the Ninth Circuit routinely dismiss claims that amount to nothing more than "fraud by hindsight"; that is, attempts to second guess business decisions, however imprudent they may turn out to have been in retrospect. Here, the Complaint is an exercise in exactly the kind of Monday-morning quarterbacking that Congress intended to prohibit.

*First*, dismissal is warranted because Plaintiffs are required to, but cannot, allege with particularity facts giving rise to a cogent and compelling inference of scienter. The only cogent and the *far* more compelling inference is an innocuous one: That BHC failed to predict in real time the issues that would arise in different versions

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of Syndeo and mistakenly believed that its remediation efforts (including redesigns tested, approved, and initially proven to work by the Company's operations and engineering teams) would succeed. Nowhere does the Complaint allege facts showing that BHC engaged in intentional wrongdoing or deliberately reckless misconduct.

Nor do Plaintiffs allege any cogent motive for BHC to have committed fraud. For one, neither Stanleick nor Woo are alleged to have sold any shares of BHC's stock during the relevant time period, meaning that far from profiting from any purported fraudulent scheme, they suffered losses along with other shareholders. For another, Plaintiffs cannot allege any plausible set of facts that would explain why, given that BHC's "razor-and-blade" business model relies on a long tail of high-margin serum sales (the "blades"), it would engage in a short-term fraud to increase sales of Syndeo devices (the "razor") that would seriously undermine long-term serum sales. At best, Plaintiffs allege that the three BHC former employees on whose anonymous statements the Complaint is largely premised—and who did not report to or interact with the speakers of the alleged false statements—disagreed with the Company's strategies. But disagreement with a company's business judgment does not support a strong inference of scienter as required by the PSLRA and Ninth Circuit law.

*Second*, Plaintiffs fail to adequately allege any false or misleading statements, despite their attempt to frame virtually everything that BHC said about Syndeo as actionable. Many of the statements that the Complaint claims to be fraudulent are indisputably true. Others are non-actionable puffery. And still others are misconstrued or taken out of context. That leaves the Complaint forced to rely on the idea that BHC should have, but did not, keep the public updated both with the minutia of its evolving understanding of issues with Syndeo and its efforts to resolve those issues. But Ninth Circuit law does not require a business to share every developing issue with a new product. Moreover, nothing in the Complaint suggests that anyone at BHC knew earlier than disclosed that the glitches affecting Syndeo were more serious than originally believed or that the steps taken to address them would

MEMORANDUM AND POINTS OF AUTHORITIES

ultimately prove ineffective.

*Third*, Plaintiffs are required, but have failed, to plead that the subject of the allegedly concealed risk caused the actual loss they allegedly suffered. Plaintiffs' claims rely on two corrective disclosures, one on August 9, 2023, when BHC identified issues with Syndeo as the driver for reduced gross margin performance and projections, and the other on November 13, 2013, when BHC announced that its earnings would be lower than expected, principally due to issues with earlier generation Syndeo devices. But following the first of these two disclosures, BHC's share price declined by only 5.4 percent—a "modest" decline that multiple courts have held cannot support a claim of securities fraud. That means the more significant price decline following the second disclosure could not have been caused by the alleged concealment of Syndeo's issues because those issues had already been disclosed to investors and did not result in a statistically significant drop in BHC's stock price. Thus, Plaintiffs cannot connect any decline in BHC's stock price to the alleged corrective disclosures.

*Finally*, the viability of Plaintiffs' Section 20(a) claim depends on the successful pleading of a primary violation of Section 10(b) or Rule 10b-5. Because Plaintiffs have failed to plead a violation of Section 10(b) and Rule 10b-5, Count II likewise fails to state a claim against the Individual Defendants.

For these reasons, and as discussed in more detail below, the Complaint should be dismissed with prejudice.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. The Parties

BHC is a Delaware corporation headquartered in Long Beach, California.

---

[1] Citations to "Compl. ¶ __" are to the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), filed July 1, 2024. Dkt. 39. Citations to "Ex. __" are to the exhibits attached to the concurrently filed Declaration of Charles P. Hyun. Defendants respectfully request that the Court take judicial notice of these exhibits. *See* Request for Judicial Notice.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MEMORANDUM AND POINTS OF AUTHORITIES

Compl. ¶ 26.  Stanleick and Woo (collectively, "Individual Defendants") are former employees of BHC.  *Id.* ¶¶ 27–28.  Stanleick served as CEO, President, and Director from February 7, 2022, to November 19, 2023.  *Id.* ¶ 27.  Woo served as Executive Vice President and CFO from September 2022 until August 10, 2023.  *Id.* ¶ 28.

### B.    BHC's Business

BHC "is a business-to-business provider of high-end facial machines (the "Delivery System") to spas and beauty parlors internationally," as well as the single use tips, solutions, and serums required for the machines to function (the "Consumables")."  Compl. ¶¶ 2, 3.  BHC's "flagship" brand is HydraFacial, *id.* ¶ 26, a "popular aesthetic treatment that uses a unique technology to cleanse, exfoliate, and hydrate the skin."  *Id.* ¶ 3.  BHC operates as a "razor/razor blade" model, with the expensive, low-margin Delivery System as the "razor" and the lower priced, higher-margin Consumables as the "razor blades."  *Id.* ¶¶ 2, 41.

### C.    BHC Announces Syndeo, Its Next-Generation Delivery System

On May 13, 2021, BHC announced that it would bring to market its "next generation HydraFacial Delivery System called 'Syndeo.'"  Compl. ¶¶ 46, 48.[2]  BHC was optimistic about Syndeo's launch, but cautioned investors that its "new product introductions may not be as successful as [BHC] anticipate[s]" and that BHC's "success depends, in part, on the quality, performance and safety of [its] products."  Ex. 4 at 16, 38 (Form 10-K for FY 2021); *see also* Compl. ¶ 48.  Months after BHC announced Syndeo, Stanleick was appointed on January 20, 2022, as its President, CEO, and a board member, effective February 7, 2022.  Compl. ¶ 50.

### D.    Syndeo's Domestic Launch Results In Record Delivery System Sales

On March 7, 2022, BHC announced Syndeo's launch in the United States, to be followed by an international rollout.  Compl. ¶ 51.  As reflected in its May 20, 2022, press release (the start of the Putative Class Period), BHC sold a record number of

---

[2] The Elite Tower Delivery System was launched back in 2016.  Ex. 4 at 19 (10-K for FY 2021).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MEMORANDUM AND POINTS OF AUTHORITIES

Delivery Systems during the first quarter after Syndeo's launch, driving strong financial results.  *Id.* ¶ 53.  Plaintiffs do not dispute the reported figures.  *See generally id.*  Stanleick described Syndeo's launch as "highly successful."  *Id.* ¶ 53.

**E.    Cosmetic Issues With "Syndeo 1.0"**

"In late April/early May 2022," BHC received reports of "cosmetic issues" with Syndeo 1.0.[3]  Compl. ¶ 7.  The cosmetic issues did not impact Syndeo 1.0's functionality.  *See id.* ¶ 65.  BHC offered to ship replacement machines to any affected customers.  *Id.* ¶ 70.

**F.    BHC Promptly Commences Remediation Efforts To Address Plugging Issues In Syndeo 1.0**

BHC also learned that some Syndeo 1.0 units "clogged up, preventing the customer from being able to use the machine."  Compl. ¶ 72.  The Complaint does not allege that BHC knew about any clogging (or "plugging") issues before Syndeo 1.0's launch; in fact, Plaintiffs allege that the plugging issues only emerged "once providers start[ed] using the Syndeo more and more in the actual commercial setting."  *Id.* ¶ 74.  BHC responded by promptly developing a design fix and holding "regular Tiger Team" meetings until a solution was reached.  *Id.* ¶¶ 81, 89.

As with the cosmetic issues, BHC also shipped replacement machines when requested to any customers that encountered plugging issues, to minimize treatment interruptions and preserve the steady stream of revenue from Consumables.  *Id.* ¶¶ 70, 77, 79.  BHC "deemed it economical to send out an entirely new machine rather than sending a technician to fix the unit on-site."  *Id.* ¶ 78.  At base, the Complaint suggests little more than disagreement with BHC's decision to address Syndeo 1.0's cosmetic and plugging issues on a rolling basis, *id.* ¶ 64, and instead contends that, in retrospect, BHC should have immediately "shelve[d] the product to address the design and manufacturing issues" that emerged post-launch.  *Id.* ¶ 8.

---

[3] The launch version of Syndeo would subsequently be referred to as "Syndeo 1.0," even though "Syndeo 1.0 and 2.0 were the same device."  Compl. ¶ 94.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**G.    BHC's Remediation Efforts Result In "Syndeo 2.0"**

By July 2022, BHC's efforts to address the reported plugging issues led to a "new manifold design and a software fix called an air purge" that would be incorporated into newly manufactured units and retrofitted to already-sold units.[4] Compl. ¶ 94.  BHC started referring to both these new and updated units as "Syndeo 2.0," even though, apart from the redesign, "Syndeo 1.0 and 2.0 were the same device." *Id.* ¶¶ 94, 95.  "[P]roduction did not occur until approximately September 2022," and "technicians were sent out to the field in around October 2022 to implement the Syndeo 2.0 fixes on customers' existing Syndeo devices."  *Id.*

Syndeo 2.0 resulted from an extensive process at BHC, described by FE-1 as including a series of meetings "[b]etween April/May 2022 and July 2022," at which the "operations team demonstrated the new design for Syndeo it thought was going to address the clogging issue," as well as separate meetings "at the engineering level." *Id.* ¶ 89.  As told by FE-1, ultimately, the design "was approved by operations, by the Vice President of Supply Chain, Production and Engineering at the highest level and below him [the] Director of Engineering."  *Id.* ¶ 93.  Yet, approximately two years after the fact, and despite FE-1 and his team having approved the redesign, FE-1 now takes aim at BHC's approval of Syndeo 2.0, claiming "he and the R&D Quality team were of the belief that … [it] wasn't a fix that fixed everything."  *Id.* ¶ 88.[5]

But Plaintiffs acknowledge that for months after BHC introduced Syndeo 2.0 (in other words, months *after* September/October 2022), it was "treated as a success" because it initially "corrected the clogging issue."  *Id.* ¶ 107.  Plaintiffs do not allege

---

[4] Plaintiffs portray the implementation of Syndeo 2.0 as an "undisclosed effort[]" to resolve its issues, Compl. ¶ 283, but fail to explain how the market would be ignorant of software updates and in-field repairs implemented with the full knowledge of the customer.  *Id.* ¶ 166 ("FE-2 learned of the Syndeo issues even before returning to [BHC] in April 2023 because FE-2 was still in the industry.  'I was hearing about it from a lot of my accounts that had the new HydraFacial device . . . .").

[5] *See also infra* Section IV.A.4 (summarizing limited scope of confidential witnesses' personal knowledge).

MEMORANDUM AND POINTS OF AUTHORITIES

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

that Defendants knew at that time that Syndeo 2.0 would not permanently resolve Syndeo's plugging issues, or that it would develop other, unanticipated problems. It was not until months later that "the problem returned." *Id.*

## H.    BHC Announces Its Financial Results For Q2 2022

On August 9, 2022—months before the rollout of Syndeo 2.0, let alone any issues with it—BHC announced its quarterly financial results for Q2 2022. Compl. ¶ 98. Like the prior one, Q2 2022 marked yet another "record" quarter for BHC, driven by strong sales of Syndeo units. *Id.* ¶¶ 98, 100. On an earnings call that same day, Stanleick spoke positively about the "success" of Syndeo's launch and customers' "enthusiasm" for the new system. *Id.* ¶ 100. Stanleick also noted that BHC had received "good feedback" regarding Syndeo's expanded technological capabilities, including its "data connectivity." *Id.* ¶¶ 103, 242. As with BHC's financial results for Q1 2022, Plaintiffs do not contest the accuracy of its financial results for Q2 2022.

Just over a month after BHC disclosed its financial results for Q2 2022, it hosted an "Investor Day conference" with analysts in New York City. *Id.* ¶ 123. There, it described the success of Syndeo's launch, *id.* ¶ 125, about which Stanleick continued to express "enthusiasm." *Id.* ¶ 128. BHC also explained that:

> Syndeo 1.0 is just the beginning … [BHC is] already hard at work enhancing, improving and optimizing Syndeo in collaboration with our early adopter providers. We employ a continuous approach to development, pushing releases over the air with software updates.

Ex. 5 at 185 (Analyst Investor Day – Sept. 15, 2022).[6]

## I.    Plugging Issues Re-Emerge Months After Syndeo 2.0's Introduction

Plugging issues began to re-emerge with Syndeo 2.0 "around late

---

[6] Initially, Plaintiffs erroneously attribute this statement to Stanleick in the Complaint, but later attribute it to Benjamin Baum (BHC's Chief Experience Officer), claiming that Baum's statement "was not corrected by Stanleick, Woo or any other [Company] executive." *Compare* Compl. ¶ 130 *with* ¶ 250.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 7 –

October/November 2022," though at a drastically lower rate than with Syndeo 1.0. Compl. ¶¶ 108, 111. Around the same time, a separate issue also arose with Syndeo 2.0. According to FE-1, the units "wasted too much serum because the internal channel was just too big." *Id.* ¶ 109. There is no allegation that BHC was aware of these issues earlier. As before with Syndeo 1.0, BHC addressed the issues dynamically. *Id.* ¶ 113. Or as FE-1 put it, "[t]he response [to Syndeo 2.0's issues] was ongoing engineering, trying to figure out what it was, how to fix it." *Id.* ¶ 113. To that end, the Tiger Team continued its regular meetings. *Id.* ¶¶ 113–15.

### J.    BHC Announces Its Financial Results For Q3 2022

On November 8, 2022, BHC announced its Q3 2022 financial results in a press release filed with the SEC. Compl. ¶ 140. Quoting Stanleick, the press release stated that, "top line results. . . beat expectations and demonstrate continued strength in consumer demand. . . ." *Id.* ¶ 141. On an earnings call that same day, Stanleick and Woo communicated the same message. *Id.* ¶¶ 143-48.

### K.    BHC Announces Its Financial Results For Q4 2022 And $2.4 Million In Costs Associated With Its Syndeo Replacement Program

On February 28, 2023, BHC "hosted the Company's Q4 2022 Earnings Call" led by Stanleick and Woo. Compl. ¶ 158. There, discussing its Q4 2022 and full-year 2022 financial results, Stanleick noted that BHC had "taken lessons learned from a highly successful US launch last year and look[ed] forward to growing Syndeo's soon to be global footprint." *Id.* Woo then disclosed that the $2.4 million in Syndeo-related costs were the result of BHC's program to replace all Syndeo systems regardless of issue, alerting the market to the fact of significant product exchanges. *Id.* ¶¶ 156, 161; *see also* Ex. 6 at 220 (Ex. 99.1 to Form 8-K, filed February 28, 2023).

### L.    BHC Announces Its Financial Results For Q1 2023

On May 10, 2023, BHC reported its first quarterly financials following Syndeo's international launch, saying it was leveraging processes and software optimizations made since the March 2022 U.S. launch. Compl. ¶ 170; Ex. 10 at 229

MEMORANDUM AND POINTS OF AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(Ex. 99.1 to Form 8-K, dated May 10, 2023).[7]    Although net sales increased as compared to Q1 2022, the Company reported net losses and a negative adjusted EBITDA for Q1 2023.  Ex. 10 at 229 (Ex. 99.1 to Form 8-K, dated May 10, 2023). Management reported "continued strength in consumer demand" for Syndeo and raised its 2023 net sales guidance.  *Id.* at 4.

### M.    In July 2023, BHC Begins Selling Syndeo 3.0

It was no secret in the market that Syndeo 1.0 and 2.0 had faced challenges.  FE-2 learned of issues with Syndeo "before returning to HydraFacial in April 2023 because FE-2 was still in the industry."  Compl. ¶ 166.  Moreover, the Complaint alleges that "[d]uring FE-3's hiring interview, FE-3 learned that [BHC] has had numerous issues with the Syndeo products," belying any notion that BHC was trying to conceal anything.  *Id.* ¶ 177.  Inside of BHC, "the issue of the Syndeo tube clogging in the manifold was openly spoken about."  *Id.* ¶ 178.

To address these issues, BHC "launched Syndeo 3.0 in July 2023."  *Id.* ¶ 283. The plan "was for Syndeo devices to be retrofitted with new tubing" by "deploy[ing] field service engineers to conduct repairs in the field, but if customers complained, Beauty Health management had customers fill out return merchandise authorizations (RMAs) for repairs and send the devices in for repair."  *Id.* ¶ 181.  BHC "hire[d] two outside engineering firms to deploy upgrades to the Syndeo devices."  *Id.* ¶ 180. Ultimately, Syndeo 3.0's "real-world" performance and in-house testing would reveal that it was vastly superior to its predecessors.  *Id.* ¶ 210.

### N.    BHC Announces Financial Results For Q2 2023, Flagging Decreased Margins Relating To Syndeo's Teething Issues

On August 9, 2023, BHC reported mixed Q2 2023 results and outlook. Compl. ¶ 187.  BHC attributed its results to "an increase in sales of lower margin

---

[7] Tellingly, the Complaint omits any reference to the Company's disclosure regarding the "software optimizations made since [Syndeo's] March 2022 U.S. launch."  Ex. 10 at 229; *see also* Compl. ¶ 55.

MEMORANDUM AND POINTS OF AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

refurbished systems. . . as U.S. providers awaited Syndeo enhancements in the third quarter of 2023 . . . ." *Id.* At the same time, BHC announced the "involuntary separation without cause of Woo." *Id.* ¶ 189.

The same day, BHC hosted a Q2 2023 earning call with analysts. *Id.* ¶ 190. A presentation accompanying the call disclosed that "Syndeo teething issues and unfavorable system mix shift create[d] gross margin headwinds." *Id.* And during the call, Stanleick confirmed that "Syndeo teething issues" were one of the "areas in which [BHC] can improve . . . ." *Id.* ¶ 191. Stanleick stated that these issues led to "incremental, unplanned costs," including those relating to the Syndeo exchange program and the development/implementation of both "over-the-air software updates" and "simple component upgrades to enhance the system's durability." *Id.*

**O.    BHC Announces Its Financial Results For Q3 2023**

BHC announced its financial results for Q3 2023 on November 13, 2023. Compl. ¶ 204; *see also* Ex. 13 (Ex. 99.1 to Form 8-K, dated November 13, 2023). BHC stated that its quarterly figures were "overshadowed by lower-than-expected U.S. revenue and $63.1 million in restructuring charges related to device upgrades of early generation Syndeo devices," and management's decision to "only market and sell Syndeo 3.0" devices. Compl. ¶¶ 204, 211. BHC also "revis[ed] its fiscal year 2023 net sales guidance to a range of $385 million to $400 million, its fiscal year adjusted EBITDA margin to a range of 5% to 6% and [decided to suspend] its long-term 2025 financial outlook." *Id.* ¶ 290.

BHC also announced that it would exclusively sell Syndeo 3.0 going forward due to continued issues with the earlier generation 1.0 and 2.0 devices. *Id.* ¶ 206. At the same time, BHC announced that it would provide, at no cost to the customer, the option of (i) a technician upgrade to their Syndeo 1.0 or 2.0 devices to 3.0 standards in the field; or (ii) a replacement Syndeo 3.0 device. Ex. 13 at 240 (Ex. 99.1 to Form 8-K, dated November 13, 2023). Following these disclosures, BHC's stock price declined and its stock was downgraded by "leading securities analysts." Compl. ¶ 214.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM AND POINTS OF AUTHORITIES

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**P.    This Action**

Less than a week after the November 13, 2023, disclosures, this action was commenced.  Dkt. 1.  Plaintiffs filed the operative Complaint on July 1, 2024.  Dkt. 39.  The Complaint asserts claims for violations of Sections 10(b) and 20(a) of the Exchange Act based on allegedly false or misleading statements and/or omissions (collectively, the "Challenged Statements") made between May 10, 2022, and November 13, 2023 (the "Putative Class Period") that fall into four categories:

(i)    Statements regarding BHC's financial performance, including with respect to the high level of Syndeo sales/deliveries;[8]

(ii)    statements regarding the success of Syndeo's launch/rollout;[9]

(iii)    statements regarding Syndeo customer enthusiasm/feedback;[10]

(iv)    statements regarding Syndeo's functionality.[11]

**III.    LEGAL STANDARD**

A complaint alleging fraud under Section 10(b) of the Exchange Act faces heightened pleading requirements.  *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054-55 (9th Cir. 2008).  Before Congress enacted the PSLRA, these

---

[8] *See, e.g.*, Compl. ¶ 237 ("Exceptional results driven by acceleration of Hydrafacial delivery system placements globally."); *id.* ¶ 254 ("[T]he Company reported quarterly net sales of $88.8M, up 30.3% year-over-year and again represented that this increase was 'driven by strength in Delivery System net sales.'").

[9] *See, e.g.*, Compl. ¶ 228 ("highly successful launch of Syndeo"); *id.* ¶ 232 ("amazing job executing on the first phase of the planned rollout"); *id.* ¶ 235 ("flawless global launch of Syndeo").

[10] *See, e.g.*, Compl. ¶ 228 ("We are driving continued strong demand as consumers seek the confidence boosting glow we're famous for."); *id.* ¶ 244 ("strong demand for Syndeo").

[11] *See, e.g.*, Compl. ¶ 242 ("really good feedback on" Syndeo's "data connectivity, the improvements in user interface, the touch screen technology, the LightStim LED"); *id.* ¶ 250 (statements by Baum regarding "Syndeo 1.0 [being] just the beginning" because BHC was "already hard at work enhancing, improving, and optimizing Syndeo … [including by] pushing releases over the year with software updates").

heightened requirements were provided for by Fed. R. Civ. P. 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  In a civil action alleging securities fraud, this means that "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).

The PSLRA was enacted "to curb perceived abuses" in securities cases, including "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (quoting *Tellabs*, 551 U.S. at 320).  "The precedents of the Supreme Court and this court teach that the PSLRA's heightened pleading requirements are meaningful ones, requiring courts carefully to evaluate securities fraud complaints to ensure compliance with the statute's elevated pleading standards." *Id.* at 413.

With the enactment of the PSLRA, a plaintiff bringing a securities fraud claim must proffer even more factual detail to survive a motion to dismiss.  15 U.S.C. § 78u-4(b); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) ("The PSLRA imposes additional specific pleading requirements . . ." beyond Rule 9(b)).  The PSLRA requires plaintiffs to do more than say that a defendant's statements were false and misleading; they must also "make 'specific references to specific facts' as the basis for the falsity allegation." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1072 (N.D. Cal. 2001) (citation omitted).  In particular, they must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).

The PSLRA also establishes a more stringent rule for claims that a defendant acted with a particular state of mind.  *See* 15 U.S.C. § 78u-4(b)(2)(A).  A plaintiff

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MEMORANDUM AND POINTS OF AUTHORITIES

bringing a claim pursuant to Section 10(b) or Rule 10b-5 must allege scienter—*i.e.*, an intent "to deceive, manipulate, or defraud"—under the higher PSLRA standard. *Tellabs*, 551 U.S. at 313, 319 (citation omitted).  Section 78u-4(b)(2)(A) of the PSLRA requires that a plaintiff's complaint "state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]."  A "strong" inference is one that "a reasonable person would deem . . . cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324; *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017).

## IV.   ARGUMENT

### A.   Plaintiffs Fail To Plead Particular Facts Giving Rise To A Strong Inference Of Scienter

"To support a 'strong inference' of scienter under the PSLRA, a complaint must allege that the defendant made false or misleading statements with an 'intent to deceive, manipulate, or defraud,' or with deliberate recklessness." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021) (citation omitted). "Deliberate recklessness is        not        '*mere* recklessness.'        Instead,        it        is an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Id.* (citations and internal quotations omitted). "[P]laintiffs proceeding under the PSLRA can no longer aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008) (citation omitted).  And "[c]orporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." *Kaplan v. Charlier*, 426 F. App'x 547, 549 (9th Cir. 2011) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).  Importantly, where there are multiple defendants, as here, the factual basis for scienter must be pled for each defendant; guilt by

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 13 –

association is impermissible. *See SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *22 (C.D. Cal. July 18, 2016).

### 1. Fraud-By-Hindsight Does Not Support An Inference Of Scienter

Congress intended the PSLRA "to put an end to the practice of pleading 'fraud by hindsight,'" *In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006, 1021 (9th Cir. 2005) (citation omitted), which is precisely what Plaintiffs have pled here. "[T]o be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 693 (9th Cir. 2011) (citation omitted). "An after-the-fact statement does not constitute an admission unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along.'" *Black v. Snap, Inc.*, 2023 WL 6812762, at *13 (C.D. Cal. Sep. 26, 2023) (citation omitted).

For one thing, Plaintiffs nowhere allege that BHC "knew [] all along" that issues with Syndeo would arise. In fact, Plaintiffs describe the opposite, showing that BHC became aware of issues gradually, as they emerged. For example, Plaintiffs admit:

> (1) "[T]he flow issues came to light in April/May 2022 and then got heavier and heavier in later months," (in other words, BHC only learned of these issues *after* the product had already launched and only came to understand the extent of the issues as the months went on) Compl. ¶ 74;
>
> (2) "the 2.0 model corrected the clogging issue initially" and BHC only "started hearing about problems somewhere in late October or November 2022, that it didn't fix the problem completely." *Id*. ¶¶ 107-8; and
>
> (3) "in late 2022 to early 2023," BHC discovered a *new* issue with the Syndeo's computer chip "that caused the machines to not turn on." *Id*. ¶ 151 (emphasis added).

"It is clearly insufficient for plaintiffs to say that [a] later, sobering revelation[] makes [an] earlier, cheerier statement a falsehood." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) (citations omitted). For another, Plaintiffs nowhere allege that BHC "knew [] all along" that its efforts to fix those issues would fall short,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 14 –

or that it would ultimately deem Syndeo 1.0 and 2.0 obsolete. *Lopes v. Fitbit, Inc*., 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020).  For example, Plaintiffs admit:

> (1)  While developing Syndeo 2.0, the "operations team demonstrated the new design for Syndeo it thought was going to address the clogging issue."  Compl. ¶ 89.
>
> (2) The new design "was approved by operations, by the Vice President of Supply Chain, Production and Engineering at the highest level and below him Director of Engineering." *Id.* ¶ 93; and
>
> (3)  When launched, Syndeo 2.0 was "treated as a success" because it initially "corrected the clogging issue." *Id.* ¶ 107.

That those efforts failed does not transform BHC's "'earlier, cheerier' statements" into falsehoods. *Wozniak v. Align Tech.*, 850 F. Supp. 2d 1029, 1045 (N.D. Cal. 2012) (quoting *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003)).

Instead of fraud, Plaintiffs depict a series of reasonable efforts by BHC to respond to gradually emerging problems.  Put differently, BHC "may have simply failed to anticipate the extent to which" the issues with Syndeo 1.0 and the redesigned 2.0 would persist, and its later statements, therefore, "'are not so indicative of fraudulent intent.'" *Black*, 2023 WL 6812762, at *13 (quoting *Metzler*, 540 F.3d at 1069); *see also Plevy v. Haggerty*, 38 F. Supp. 2d 816, 826 (C.D. Cal. 1998) (describing plaintiff's effort to "assume the role of Monday morning quarterback" as "grossly insufficient under Ninth Circuit authority."); *N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, 2009 WL 3112574, at *10 (C.D. Cal. Sep. 25, 2009) ("Moreover, the fact that subsequent disclosures revealed that the remedial measures were not sufficient does not render false the individual Defendants' contemporaneous statements about those measures.").  And BHC's disclosure in February 2023, regarding costs incurred to address issues with Syndeo, undermines the inference of fraud.  That is because "'[i]t is implausible that a person bent on fraud' would provide adverse information to investors." *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 604 (N.D. Cal. 1991) (citations omitted).

Plaintiffs' allegations that BHC knew something of the issues with Syndeo 1.0

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

and 2.0 before disclosing them also does not raise a strong inference of scienter. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014), is on point. In September 2006, certain NVIDIA products began experiencing problems. *Id.* at 1049. After testing, NVIDIA determined the root cause of the problems, and announced nearly two years later in May 2008 both the defect and that it was "'evaluating the potential scope' of the problem." *Id.* at 1050. Then two months later, in July 2008, NVIDIA announced that, as a result, it "would be taking 'a $150 to $200 million charge to cover warranty, repair, return, replacement, and other costs,'" which led NVIDIA's share price to decline by 31 percent. *Id.* at 1050–51. Plaintiffs sued NVIDIA for securities fraud, claiming that NVIDIA knew of the defects in its products but failed to timely disclose them, and knew that it, and not its equipment manufacturers, would be liable for those defects. *Id.* at 1051.

The district court dismissed the complaint, finding that it failed to allege a strong inference of scienter. The Ninth Circuit affirmed, rejecting as unpersuasive after-the-fact reporting that claimed NVIDIA must have known about the product defects and its potential liability, because, as the court explained, those reports "were written in hindsight," and "[s]imply because scientists were able to explain in retrospect the science behind NVIDIA's chip failures . . . does not mean that NVIDIA knew or should have known it would be liable for those failures during the class period . . . ." *Id.* at 1060. The Ninth Circuit held that even though "there is some slight support for an inference that NVIDIA knew it was responsible for the problem before its disclosure, and thus acted with intent to deceive," the "more compelling inference is that NVIDIA did not disclose because it was investigating the extent of the problem, whether it was responsible for it, and if so, whether it would exhaust the reserve" set aside to account for product defects. *Id.* at 1064–65. The Ninth Circuit also rejected plaintiffs' argument that "the departure of some of NVIDIA's executives adds to the inference of scienter[,]" finding that "Plaintiffs fail[ed] to provide any facts to connect these [executives'] departures with the problems at issue in this lawsuit," such that

MEMORANDUM AND POINTS OF AUTHORITIES

"the most reasonable inference is that these departures were benign." *Id.* at 1062-63.

Plaintiffs allege that BHC, like NVIDIA, learned of a defect with a new product; began investigating and developing solutions, without, at first, publicly remarking on those efforts; and had no advanced knowledge of the eventual financial impact of the gradually discovered issues with the new product. Accordingly, under the Ninth Circuit's rationale in *NVIDIA Corp.*, "the complaint's allegations do not give rise to a strong inference of scienter when considered holistically." *Id.* at 1065.

Nor does BHC's business decision to declare Syndeo 1.0 and 2.0 obsolete support an inference of scienter. "[W]hether [] inventory should have been written down [i]s a matter of judgment on which Plaintiffs disagree, not a basis on which to infer scienter." *In re Software Toolworks, Inc. Sec. Litig.*, 789 F. Supp. 1489, 1504 (N.D. Cal. 1992), *aff'd in part, rev'd in part on other grounds*, 50 F.3d 615 (9th Cir. 1994). Accordingly, "disagreement with a company's business judgment does not state a claim under federal securities laws." *Novak v. Kasaks*, 997 F. Supp. 425, 432 (S.D.N.Y. 1998). "To hold otherwise, absent specific factual information as required by Rule 9(b), would be to expose every inventory judgment of a reporting company to the potential burden of litigation." *Id.* at 432–33.

Moreover, neither the timing nor the fact of the Individual Defendants' eventual separations from the Company warrants any inference of scienter. The Ninth Circuit has found that allegations that corporate executives "were terminated concurrent with the disclosure of the truth," Compl. ¶ 281, without more, are insufficient to plead a strong inference of scienter. *See e.g., City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (describing Plaintiff's allegation that the CFO's "resignation was accompanied by the suspicious circumstance of coinciding with [the Company's] announcement" as a "conclusory allegation . . . which without more, cannot support a strong inference of scienter.") (citation and internal quotations omitted)); *Zucco*, 552 F.3d at 1002 ("Where a resignation occurs slightly before or after the defendant corporation issues a

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 17 –

restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of restatement's issuance itself . . . .").

### 2.    The Complaint's Allegations Negate Any Inference Of Scienter

Dismissal is also warranted because the Complaint does not offer any explanation, let alone a plausible one, for why the speakers of the Challenged Statements would lie or commit securities fraud. "Allegations that are implausible do not create a strong inference of scienter," and a complaint should be dismissed when it has "no basis in logic or common experience." *Nguyen*, 962 F.3d at 407, 415. The Complaint's theory of scienter is implausible for two reasons: (a) the Complaint nowhere describes any benefit that Stanleick or Woo could have secured through their purportedly false statements; and (b) the proposed theory of scienter is non-sensical in light of BHC's business model.

### a.    The Complete Absence Of Insider Stock Sales Undermines An Inference Of Scienter

Each Challenged Statement is attributed to Stanleick or Woo, yet Plaintiffs have not pointed to any specific benefit, like insider sales, that inured to either. BHC's Form 4[12] disclosures reveal that neither Stanleick nor Woo sold *any shares* of BHC during the relevant time period. Exs. 1-3, 7-9, 11-12. "[W]hile allegations of insider sales 'are not required' in securities fraud cases, the lack of any tangible, personal benefit here further weighs against the Officer Defendants having scienter." *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1177–78 (C.D. Cal. 2007) (citing *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 931 (9th Cir. 1993), and *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424–25 (9th Cir. 1994)). That Stanleick or Woo are not claimed to—and, in fact, did not—benefit financially from the alleged fraud

---

[12] Form 4 is used to report the securities transactions of directors and officers of the issuer. *See* 17 C.F.R. § 240.16a-2 ("[A]ny director or officer of the issuer of [registered] securities . . . shall be subject to the provisions of section 16 of the Act (15 U.S.C. 78p)"); 17 C.F.R. § 240.16a-3(a) ("Statements of changes in beneficial ownership required by [] section [16(a) of the Act] shall be filed on Form 4.").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  underscores the implausibility of the Complaint. *In re Rigel Pharms., Inc. Sec. Litig.*,

2  697 F.3d 869, 884-85 (9th Cir. 2012) ("[B]ecause none of the defendants sold stock

3  . . . during which they would have benefitted from any allegedly fraudulent statements,

4  the value of the stock and stock options does not support an inference of scienter").

5  Indeed, Stanleick and Woo's decision to retain their shares during the relevant time

6  period is more consistent with the view that they sincerely believed that BHC's

7  remediation efforts would succeed, or already were successful.

8  Unable to point to any personal benefit that Stanleick and Woo hoped to secure,

9  the Complaint can only imply that their alleged dishonesty was motivated by the desire

10  to create the impression that BHC was successful. But "[i]f scienter could be pleaded

11  merely by alleging that officers and directors possess motive and opportunity to

12  enhance a company's business prospects, virtually every company in the United States

13  that experiences a downturn in stock price could be forced to defend securities fraud

14  actions." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (citation

15  and internal quotations omitted). For this reason, "routine business objectives, without

16  more, cannot normally be alleged to be motivations for fraud." *Id.*; *see also Hampton*

17  *v. Aqua Metals, Inc.*, 2020 WL 6710096, at *16 n.8 (N.D. Cal. Nov. 16, 2020)

18  ("However, motives common to most corporate officers, such as the desire for the

19  corporation to appear profitable to keep stock prices high or a need for capital

20  infusions, do not create a sufficient inference of scienter.").

21  **b.    The Complaint's Theory of Scienter Is Nonsensical**

22  Plaintiffs' theory of fraud should also be rejected because it is economically

23  irrational. As Plaintiffs allege, BHC's income is roughly evenly derived from the low-

24  margin Syndeo units (the "razors") and the high-margin Consumables (the "blades.")

25  Compl. ¶ 41. Sale of the latter turns in large measure on sustained customer

26  satisfaction, because if customers who purchase and operate Syndeo units are unhappy

27  with them, there is little reason for those customers to continue making regular

28  purchases of Consumables.

– 19 –

Accepting Plaintiffs' allegations requires believing that BHC shipped knowingly defective Syndeo units to the same customers that it needed to keep happy, at the expense of repeat purchases of Consumables and the consistent stream of high-margin revenue they generate for the Company. Stated differently, any advantage the Defendants could have gained by this shipment of defective Syndeo units would have been overwhelmed by the long-term damage to the Company. That would have been economically senseless and does not present a "cogent and compelling" case of scienter. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 581 (S.D.N.Y. 2014) (quoting *Tellabs*, 551 U.S. at 324); *see also Prodanova*, 993 F.3d at 1107 ("The risk of losing a longtime client and publicly sullying its own reputation in the industry far outweighs the benefit of a slightly higher return on one transaction.").

The far more compelling inference is that the Individual Defendants had every incentive to maintain BHC's long-term health and profitability. *See Tellabs*, 551 U.S. at 324 (rejecting the complaint's theory of scienter because it is not "as compelling as an opposing inference one could draw from the facts alleged"). As the Supreme Court noted in *Tellabs*, "[t]he strength of an inference cannot be decided in a vacuum. The [scienter] inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts?" *Id.* at 323. Here, it is more likely that BHC undertook significant, and what it believed to be effective, remedial measures in response to issues with Syndeo 1.0 and 2.0 that it learned of gradually, before ultimately determining that the right course was to declare existing units obsolete and incur a restructuring charge, which it promptly disclosed.

### 3. Plaintiffs' Passing Reference To The Core Operations Theory Is Without Merit

The Complaint's one-paragraph attempt to plead scienter under the core operations theory likewise fails. *See* Compl. ¶ 286. "This theory applies only in exceedingly rare cases where an event is so prominent that it would be absurd to suggest that key officers lacked knowledge of it." *In re AnaptysBio, Inc. Sec. Litig.*,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 20 –

2021 WL 4267413, at *13 (S.D. Cal. Sept. 20, 2021) (citation and internal quotations omitted).    Accordingly, "[p]roof under [the core operations] theory 'is not easy.'"  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).  Here, the Complaint fails this standard for two reasons.

*First*, courts have rejected arguments that the core operations theory should apply simply because a product facing challenges is of significant importance or the company's sole product.  *See, e.g.*, *NVIDIA Corp.*, 768 F.3d at 1064 (declining to apply the core operations doctrine where the alleged misstatements concerned the company's "flagship product" and "two largest customers"); *In re AnaptysBio*, 2021 WL 4267413, at *14 ("[M]erely emphasizing the importance of [a product] to the [defendant] Company does not show that the core operations theory applies."); *Sneed v. AcelRx Pharms., Inc.*, 2021 WL 4267413, at *14 (N.D. Cal. July 7, 2023) (finding "[a]llegations that a company . . . has only one product are not sufficient to raise a strong inference of scienter").  "At best," the facts here "support a mere inference of the defendants' knowledge of all core operations, not scienter."  *In re AnaptysBio*, 2021 WL 4267413, at *14 (citation and internal quotation marks omitted).

*Second*, the core operations theory does not relieve the Complaint of its requirement to "allege the existence of contemporaneous information within [BHC] that contradicted or undermined Defendants' public statements at the time Defendants made those statements."  *In re AnaptysBio,* 2021 WL 4267413, at *14 (citation and internal quotation marks omitted); *see also City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012) ("Plaintiffs' core operations theory fails to show that Defendants had actual knowledge that their future projections were false at the time they made them and thus fails to establish scienter as required under the PSLRA.").  But as described more fully below, *see infra* Section B, the Complaint fails to do so.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 21 –

MEMORANDUM AND POINTS OF AUTHORITIES

4.      **Plaintiffs' Confidential Witnesses Are Unreliable And Their Statements Are Not Indicative Of Scienter**

The confidential witnesses on whose statements the Complaint relies do little to support its claims.  "[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements."  *Zucco*, *LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge."  *Id.*  "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter."  *Id.*

At the outset, Plaintiffs fail to establish that any of the confidential witnesses were in positions to have personal knowledge of relevant facts.  FE-1 was not at the Company during the development phase or launch of Syndeo, joining in April 2022, and left months before any of the alleged corrective disclosures.  Compl. ¶ 31.  Notably, and as described above, FE-1's team approved the fixes that led to Syndeo 2.0.  *Id.* ¶ 90.  And nothing in the Complaint suggests that FE-1 had any direct interaction with Stanleick or Woo, except in connection with FE-1's "prepar[ation] [of] management review reports around September or October of each year," which reports were allegedly "transmitted to Stanleick and Woo through yearly management review meetings." *Id.* at ¶ 32.  And although the Complaint avers to FE-1's preparation of "reports . . . each year," FE-1's brief tenure of just over a year suggests that FE-1 only participated in a single management review meeting.  *Id.* ¶¶ 31–32.

FE-2 was not with the Company until *over a year* after the launch of Syndeo, and, while there, had nothing to do with any of the remediation efforts relating to Syndeo.  Instead, while at BHC, FE-2 was a "capital sales manager," whose role was to sell Syndeo units to customers, at which point the customer is turned "over to [a] business development manager." *Id.* ¶ 34.

FE-3 was a "Director of Sales" who was only with BHC at the tail-end of the

Putative Class Period, from "June 2023 to November 2023." *Id.* ¶ 35.  Like FE-2, FE-3 had no involvement with BHC's remediation efforts.  *Id.*  As for FE-3's connection to BHC's officers, the Complaint alleges that FE-3 reported to someone who reported to someone who reported to the Chief Revenue Officer and Stanleick.  *Id.* ¶ 35.

Moreover, the supposed statements attributed to these confidential witnesses are unreliable.  For example, the Complaint alleges that "FE-1 said that prior to the Syndeo 1.0 going to the market in or about March 2022[,] it went through limited testing . . . in 2021 and early 2022."  Compl. ¶ 74.  But FE-1 was not at the Company during that supposed testing period and was therefore not in a position to have personal knowledge of what BHC knew or did not know.  The Complaint also alleges that FE-1 stated, "I didn't see them as hiding anything ***unless it was done at the C-level, like reporting to investors***."  *Id.* ¶ 83 (emphasis original).  But there are no allegations that FE-1 had any visibility into investor relations, given that FE-1's role was limited to quality control.  *See id.* ¶¶ 31–32.  Many other of FE-1's statements simply evince disagreement with BHC's management, like when FE-1 claims that "we felt there should have been more done as far as testing."  *Id.* ¶ 90; *see also id.* ¶¶ 65-69.  But "the second-guessing of management decisions by confidential witnesses does not provide a basis for securities fraud."  *In re Downey Sec. Litig.*, 2009 WL 2767670, at *11 (C.D. Cal. Aug. 21, 2009).

FE-2's purported statements contradict the notion that there was a fraud, insofar as it is alleged that FE-2 "learned of the Syndeo issues even before returning to HydraFacial in April 2023 because FE-2 was still in the industry."  Compl. ¶ 166.  In other words, FE-2 admits that the Syndeo issues were *publicly known*.

FE-3's purported statements add nothing beyond recounting gossip, the mundane inner workings of the business, and company-wide meetings where general issues with Syndeo were purportedly discussed.  Compl. ¶¶ 177–186.  And as with FE-1's disagreement with BHC's decisions, so too should FE-3's second-hand second-guessing be rejected, when he states that "it was shared among other sales directors

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 23 –

1  that 'Stanleick should have put a pause and recall on the products, but they continued

2  to ship new ones, which snowballed into a disaster.'"  Compl. ¶ 177.

3       Finally, many of the statements attributed to the confidential witnesses consist

4  of little more than hearsay (and double hearsay).  *See, e.g.*, *id.* ¶ 81 (statement by FE-

5  1 regarding initial Tiger Team meetings based on information purportedly relayed to

6  FE-1 by his supervisor); *id.* ¶ 85 (statements by FE-2 regarding purported statements

7  by Stanleick that "FE-2 heard from friends who still worked at [BHC]"); *id.* ¶ 177

8  (statement by FE-3 that "it was shared among other sales directors that 'Stanleick

9  should have put a pause and recall [on Syndeo 1.0]").  Critically, none of the former

10 employees are alleged to have reported to the speakers of the alleged false statements

11 (*i.e.*, Stanleick or Woo).

12      At bottom, these statements offered by the confidential witnesses are

13 insufficient to support an inference of scienter.  *Zucco*, 552 F.3d at 999-1000 (rejecting

14 statements by confidential witnesses that are "contradictory," "vague," or "not

15 indicative of scienter").  They do little more than describe an internal response to a

16 company's product issues and the unremarkable fact of disagreement with

17 management as to the correct course of action.  These allegations neither suggest that

18 the challenged statements were false nor that BHC knew they were false when made.

19 *See Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391, at *1 (9th

20 Cir. Dec. 21, 2021) ("Without more, National Elevator's allegations about 'serious

21 operational problems' in a new business 'do not meet the level of specificity required

22 by the PSLRA and our caselaw interpreting it.'" (citation and internal quotations

23 omitted)); *NVIDIA*, 768 F.3d at 1061 (rejecting reliance on confidential witnesses

24 whose accounts "are unspecific and speculative").

25 **B.    Plaintiffs Fail To Allege Any Falsity Or Material Misstatement**

26      The Complaint should be dismissed because none of the Challenged Statements

27 are actionable; they are all: (i) true; (ii) not rendered misleading by any non-disclosure;

28 or (iii) puffery.  Furthermore, issues with Syndeo were known to the market.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 24 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1. **The Complaint Fails to Plead The Falsity Of Any Material Fact**

"The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler*, 540 F.3d at 1070. The Complaint should be dismissed because, in addition to relying on puffery, it also fails to allege (i) "an untrue statement of material fact," or (ii) the "failure to state a material fact necessary in order to make the statements made . . . not misleading." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188-89 (9th Cir. 2021) (citation and internal quotations omitted).[13]

a. **The Challenged Statements Are True**

The Complaint does not (and cannot) allege the falsity of statements by BHC describing:

> **Syndeo sales results:** "We achieved record delivery system sales . . ." Compl. ¶ 228; "[W]e are driving continued strong demand . . ." *Id*. ¶ 228; "First month orders exceeded our internal forecasts by nearly threefold . . ." *Id*. ¶ 249; "We've seen actually consistent demand across the quarter in all regions, actually." *Id.* ¶ 257; "One year on from its debut, we have placed nearly 5,000 Syndeo systems across the world . . ." *Id*. ¶ 271.

> **BHC's financial performance:** "As a result of the momentum we're seeing across the business and the strong rollout of Syndeo, I am pleased to announce that we are raising our full-year guidance for net sales . . ." Compl. ¶ 228; "As a result of the early success of Sydneo and the higher than anticipated demand persistent trade-offs, I am pleased to raise our full year net sales outlook to a range of $330 million to $340 million, up from our previous guidance of $320 million to $330 million. *Id.* ¶ 232; Net sales in Q3 2022 increased "primarily due to the strong

---

[13] The materiality of the Challenged Statements is also undercut by the fact that Plaintiffs continued to purchase BHC stock throughout the Putative Class Period, even after BHC's August 9, 2023, disclosures. *See* Dkt. 14-4 at 3 (reflecting purchases from August 10, 2023 through November 10, 2023); *see also In re Herbalife, Ltd. Sec. Litig.*, 2015 WL 7566616, at *2 (C.D. Cal. Nov. 23, 2015) (observing that plaintiffs' purchase of "additional shares well after the alleged corrective disclosures[] further suggest[s] the alleged misstatements were immaterial to investors" in connection with granting motion to dismiss).

1     demand for the Company's new Syndeo delivery system." *Id*. ¶
2     259; "In the Americas, we achieved growth of 76.6, fueled by the
3     launch of Syndeo." *Id*. ¶ 239; "Adjusted EBITDA grew due to
      strong demand for Syndeo." *Id*. ¶ 237.

4
5     **Syndeo's functionality:** Syndeo "bring[s] us from an analog to
      a digital business and provides a number of benefits to both the
6     provider, the consumer and Beauty Health." *Id*. ¶ 234; "We are
      already hard at work enhancing, improving and optimizing
7     Syndeo in collaboration with our early adopter providers." *Id*. ¶
8     250.

9  Plaintiffs do not allege that any of these, or similar statements, are false.

10         **b.**     **The Challenged Statements Are Not Misleading Through**
11             **Omission**

12      BHC is not liable for its alleged failure to describe in real-time the state of play

13 of emerging issues with Syndeo. "Silence, absent a duty to disclose, is not misleading

14 . . . ." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). Section 10(b) and SEC

15 Rule 10b-5(b) "do not create an affirmative duty to disclose any and all material

16 information;" instead disclosure is only required "when necessary to make . . .

17 statements made, in the light of the circumstances under which they were made, not

18 misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (citation

19 and internal quotations omitted).

20      An omission is therefore only actionable "if there is a *substantial* likelihood that

21 it would have been viewed by the reasonable investor as having *significantly* altered

22 the 'total mix' of information made available for the purpose of decision-making by

23 stockholders concerning their investments." *Alphabet Sec. Litig., R.I. v. Alphabet,*

24 *Inc.*, 1 F.4th 687, 699-700 (9th Cir. 2021) (internal quotations omitted; emphasis

25 added). A contrary rule would be unworkable, as it would require businesses to

26 disclose *all* information in their possession, or risk securities litigation. *See, e.g.*, *In*

27 *re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1480 (N.D. Cal. 1992) ("[S]ecurities laws

28 do not require [companies] to disclose every bit of information that has some bearing

MEMORANDUM AND POINTS OF AUTHORITIES

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

on [their] future earnings"); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (finding that "a statement will not mislead even if it is incomplete or does not include all relevant facts"). And, as described above, *see supra* Section IV.A.1, "a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *Reese*, 643 F.3d at 693 (citation and internal quotations omitted).

Here, with slight variations, the Complaint alleges that the Challenged Statements are false owing to a laundry list of purported omissions, all of which boil down to the idea that BHC should have, but failed, to disclose each glitch with Syndeo as it arose. *See, e.g.*, Compl. ¶ 229. But a business is "not required to disclose that its product had experienced defects or recite the specifics of all customer complaints every time it describe[s]" the product. *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *8 (N.D. Cal. Feb. 20, 2024); *see, e.g.*, *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *10 (N.D. Cal. Mar. 24, 2014) (statements that the company had created a process with "industrial-scale production" were not false or misleading even if the company missed its production targets, and limited or failed test runs were not inconsistent with statements that the company "expects to begin" production in May). In fact, as courts in this Circuit have repeatedly recognized, "[i]n bringing any high-tech product to market, problems encountered in the early developmental stages are the norm, not the exception." *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1348 (S.D. Cal. 1998); *see also In re Apple Computer, Inc.*, 127 F. App'x 296, 303 (9th Cir. 2005) ("design, marketing and manufacturing problems are common to business"). Because "[p]roblems and difficulties are the daily work of business people," omissions of the sort alleged in the Complaint are not enough for a securities claim. *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001).

More fundamentally, there was no cause for BHC to disclose issues with Syndeo or its response earlier than it did.

**Initial cosmetic issue**: The first reported issue with Syndeo following its launch

MEMORANDUM AND POINTS OF AUTHORITIES

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

in March 2022 was "cosmetic," and BHC addressed it by that same July either through replacing specific Syndeo units or by applying double-sided tape to correct the issue, seriously undercutting any notion that it rose to the level of material information that needed to be publicly disclosed. Compl. ¶ 66. There is no allegation that remediation of this issue was unsuccessful or materially costly, let alone that BHC believed it would be. *Id*. ¶¶ 65–71. It is not plausible that the fact of a minor cosmetic issue that was quickly remediated through the application of tape would have affected investment decisions.

***Plugging issues with Syndeo 1.0***:  As with the cosmetic issue, when it comes to the plugging issue, the Complaint does not allege that:  (1) BHC had any reason to believe that its fixes would prove to be either inadequate or materially costly; (2) the plugging issue affected customer demand and sales; or (3) the plugging issue and BHC's response affected the company's financial performance other than as disclosed. Quite the opposite, the Complaint admits that "the 2.0 model corrected the clogging issue initially . . . ." Compl. ¶ 107. And, as described above, *see supra* Section IV.A.1, the securities laws do not impose liability on BHC for not having had a crystal ball letting it foresee that that the 2.0 model would eventually encounter its own issues. *See, e.g.*, *In re Read-Rite Corp. Sec. Litig.*, 2004 WL 2125883, at *5 (N.D. Cal. Sept. 22, 2004) ("It is true that these technical problems did continue to plague Read-Rite, even after the company said it expected them to be resolved. However, this logic is nothing more than finding fraud by hindsight."). It follows, then, that BHC was not required to disclose it had identified defects and a corresponding remediation plan (including accepting returns), and that the Challenged Statements are not rendered misleading merely because BHC did not update the public in real-time with the granular details of its efforts to improve a new product.

The Complaint's repeated allegations that BHC omitted in connection with Syndeo 1.0 that it had "incurred significant costs to replace defective machines," are implausible for two reasons.  *Id*. ¶¶ 244, 253, 260, 266.  *First*, the Complaint

– 28 –

MEMORANDUM AND POINTS OF AUTHORITIES

acknowledges BHC *disclosed* that it spent millions of dollars replacing defective Syndeo 1.0 units. *Id.* ¶¶ 156, 161. *Second*, in support of their claims that BHC "incurred significant costs," Plaintiffs cite back to two paragraphs of the Complaint—209 and 211—which do not relate to Syndeo 1.0. Instead, those paragraphs describe BHC's reporting of its financial results *for the third quarter of 2023*, approximately a year and a half after the plugging issue with Syndeo 1.0 arose, approximately a year after BHC's response to that issue (Syndeo 2.0) "corrected the clogging issue initially," *id.* ¶ 107, and accordingly, between four and six quarters *after* BHC incurred whatever costs it did in improving Syndeo 1.0. *Id.* ¶ 209 (describing that BHC "incurred a $63.1 million restructuring charge *this quarter* due to Syndeo provider experience issues") (emphasis added). In other words, Plaintiffs offer nothing relevant to support their allegations, which are, in fact, directly contradicted by the Complaint.

**Plugging issues with Syndeo 2.0**: The Complaint's allegations that BHC omitted material information relating to issues with Syndeo 2.0 fail because BHC publicly described those issues. On August 9, 2023, BHC stated that it was focused on "resolving our Syndeo teething issues by the end of this year." Compl. ¶ 191. It went on to describe "incremental, unplanned costs which have impacted us financially in the short-term," and in a public filing that day, reported that:

> During the third quarter of 2023, the Company launched a voluntary initiative to replacing certain componentry in previously manufactured Syndeo delivery systems to increase resistance to inadvertent clogging when recommended maintenance is not performed. This initiative is expected to result in approximately $5 million in expense during the third quarter.

*Id*. ¶ 196. Because of these disclosures, the Complaint is reduced to claiming that BHC should have disclosed the reported problems earlier than it did.

But that position is without merit because there is no allegation that BHC earlier understood that the issues with Syndeo 2.0 would be material. As a result, those Challenged Statements regarding Syndeo 2.0 made before August 9, 2023, are not rendered misleading under Ninth Circuit law. *See, e.g., Plevy*, 38 F. Supp. 2d at 826

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 29 –

("[T]he fact that WDC ultimately took a write-down for obsolescence does not help Plaintiffs. Plaintiffs seem to point to the bad news that occurred in the fall of 1997, and then assume the role of Monday morning quarterback to explain why all of the statements leading up to the demise were false. This tactic is grossly insufficient under Ninth Circuit authority."); *In re Silicon Storage Tech.*, 2006 WL 648683, at *7 (N.D. Cal. Mar. 10, 2006) (rejecting as fraud by hindsight Plaintiffs' allegation that, "because SST wrote down its inventory in December 2004, the statements about inventory made prior to that time must have been false because the inventory turned out not to be worth what SST had previously said it was worth").

Moreover, the Complaint acknowledges that issues with Syndeo 2.0 occurred less than half as frequently as they did with Syndeo 1.0. Compl. ¶ 111. And the problems before the third quarter of 2023 with Syndeo 2.0 were not sufficiently impactful for BHC to either halt sales or initiate a recall. *Id.* ¶ 112. What's more, the Complaint nowhere alleges that BHC at any point understood that it *should* have taken those steps. In fact, the closest it gets to doing so is by vaguely describing that over half a year after the launch of Syndeo 2.0, FE-3 apparently heard at some unspecified time from unidentified "other sales directors that 'Stanleick should have put a pause and recall on the products.'" *Id.* ¶ 177. But second-hand, anonymous disagreement with BHC's course of conduct does not give rise to a Rule 10b-5 claim. *In re Downey*, 2009 WL 2767670, at *11. And, as with Syndeo 1.0 returns, the Complaint does not allege that the Syndeo 2.0 caused BHC any financial harm. As for the reports of internal discussion of the issues at BHC (for example, at a mid-year global sales meeting, Compl. ¶ 179), there is no allegation that anyone stated those issues would have a material impact on sales or BHC's financials, and none suggest that the proposed remediation would be insufficient.

Further, it is well-established that just because "subsequent disclosures revealed that the remedial measures were not sufficient does not render false the individual Defendants' contemporaneous statements about those measures." *N.Y. State Teachers'*

– 30 –

*Ret. Sys.,* 2009 WL 3112574, at *10.  And the Complaint does not (and could not) allege that BHC knew all along that its fixes to Syndeo 2.0 would fail, would affect demand, and would cost the Company significantly.

***Returned Syndeo units*:**  The Complaint's allegations regarding the purported concealment of returned Syndeo units at a warehouse are unavailing.  Compl. ¶¶ 134–38.  The Complaint alleges that Syndeo moved a number of returned Syndeo units into a new warehouse.  *Id.* ¶ 134.  Without any support whatsoever, the Complaint tries to paint this seemingly pragmatic step as a scheme to conceal the units from an auditor.  But this depiction is undone by Plaintiffs' own allegations.

*First*, the Complaint is self-defeating insofar as it acknowledges that by the time of the supposedly fraudulent relocation, "returned Syndeo systems began to pile up at [BHC's] Long Beach warehouse."  *Id.*  Clearly, those units had to go somewhere, and nothing in the Complaint suggests that BHC's original warehouse had adequate space.  Moreover, FE-1 claimed that "[i]t just looked a mess," providing a business rationale for the move.  *Id.* ¶ 137.  And, endorsing this simple explanation, the Complaint repeats five times that "the Company accumulated so many returned machines that it had to rent a separate warehouse to store them."  *Id.* ¶¶ 260, 266, 269, 273, 275.

*Second*, the insinuation of wrongdoing is premised wholly on FE-1's unsupported conjecture "that the *real* reason for the move was to hide the machines from [the auditor]."  *Id.* ¶ 136 (emphasis added).  The Complaint then alleges that "it was apparent that [BHC] was intentionally hiding the returned units."  *Id.* ¶ 136.  But FE-1's self-serving narrative, absent any well-pled *facts*, cannot support a claim.  *See Zucco*, 552 F.3d at 996 (rejecting reliance on confidential witness statements where they "were simply not positioned to know the information alleged, many report only unreliable hearsay, and others allege conclusory assertions of scienter").  Moreover, there is no allegation of who directed the move, whether management was aware of it, and why the *at least* equally plausible, non-fraudulent reason for the move (described above and repeated in the Complaint), should not be credited.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 31 –
MEMORANDUM AND POINTS OF AUTHORITIES

1    For the reasons described above, the mere fact of returns does not support a

2    securities claim, absent allegations reflecting either that the associated costs were

3    material or any contemporaneously held view that the proposed remediation plan

4    would fail.  The Complaint's attempt to depict as fraudulent the simple moving of

5    returned goods from one warehouse to the next should be rejected.

6        **2.    The Challenged Statements Are Non-Actionable Puffery**

7    Plaintiffs are challenging "generalized, vague and unspecific assertions" that

8    courts have recognized are inactionable "puffery" because investors do not rely on

9    such broad, general statements.  *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d

10    367, 379 (9th Cir. 2003).  "Statements of mere corporate puffery, vague statements of

11    optimism like 'good,' 'well-regarded,' or other feel good monikers, are not actionable

12    because professional investors, and most amateur investors as well, know how to

13    devalue the optimism of corporate executives."  *Police Ret. Sys.*, 759 F.3d at 1060

14    (citation and internal quotations omitted); *see also In re Impac Mortg. Holdings, Inc.*,

15    554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) ("Statements of mere puffing are

16    forward-looking statements of optimism that are not capable of objective verification

17    and lack a standard against which a reasonable investor could expect them to be

18    pegged." (internal quotations and citations omitted)).  Nor can "[h]yperbolic

19    statements assigning reasons for and placing adjectives on past results" be actionable

20    "since they contain no implicit prediction that those events or conditions will continue

21    in the future."  *In re Splash Tech. Holdings*, 160 F. Supp. 2d at 1076 (citation and

22    internal quotations omitted).

23    Moreover, enthusiasm generally is not actionable: "[A]s long as the public

24    statements are consistent with reasonably available data, corporate officials need not

25    present an overly gloomy or cautious picture of current performance and future

26    prospects . . . ."  *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *50 (S.D.

27    Cal. Mar. 30, 2005) (citation and internal quotations omitted); *Habelt v. iRhythm*

28    *Techs., Inc.*, 2022 WL 971580, at *17 (N.D. Cal. Mar. 31, 2022) ("The securities laws

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 32 –

neither require corporate officers to adopt a crabbed, defeatist view of the company's business prospects . . ." (quoting *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 367 (S.D.N.Y. 2007))).

Here, the Complaint seeks to impose liability on the basis of textbook puffery:

> **Regarding Syndeo sales results:** "We are driving continued strong demand as consumers seek the confidence boosting glow we're famous for." Compl. ¶ 228; "Exceptional results driven by acceleration of Hydrafacial delivery system placements globally . . ." *Id.* ¶ 237; "It's been a tremendous success . . . we achieved more sales and system placements than we would've ever dreamed of . . . So it's an incredible journey, which the company's been on in the last couple of years . . ." *Id.* ¶ 274.

Courts consistently reject as non-actionable puffery comparable boasts about sales, including: "'industry leading' growth, growth that 'positions us beautifully,' 'measurable progress,' 'continuing improvements,' 'accomplishments we have achieved,' [and] 'outstanding retail results'. . . ." *In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087–88; *see, e.g.*, *In re Splash Tech. Holdings,* 160 F. Supp. 2d at 1076-77  (holding as puffery: "strong" demand, "better than expected" or "robust" results, "well positioned" company); *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) (statement that company was "'enjoying terrific momentum,'" which was a "'testament to the strength of the GoPro brand,'" was corporate optimism).

> **Regarding the rollout of Syndeo:** "Our sales team did an amazing job executing on the first phase of the planned rollout . . . ." Compl. ¶ 232; "Clearly, it's the flawless global launch of Syndeo." *Id.* ¶ 235; "The Syndeo rollout in the U.S. has been a tremendous success . . . ." *Id.* ¶ 239; "The first phase of our Syndeo rollout in the US was an astounding success . . . ." *Id.* ¶ 241.

Courts in this circuit have found nearly verbatim optimistic statements about a company's performance to be non-actionable puffery. *See Philco Inv., Ltd. v. Martin*, 2011 WL 500694, at *6 (N.D. Cal. Feb. 9, 2011) ("[T]erms like 'strong' and 'spectacular' are not actionable under the securities laws."); *In re iPhone 4S Consumer*

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 33 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   *Litig.*, 2013 WL 3829653, at \*11 (N.D. Cal. July 23, 2013) ("[W]ords like 'amazing'

2   and 'impressive' are . . . mere puffery . . . ." (internal quotations omitted)); *Macomb*

3   *Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098 (9th Cir. 2022) (finding

4   characterizations of company's performance as "tremendous" and "great" constitute

5   non-actionable puffery).

6            **Regarding customer feedback:** "I'm thrilled by the strong early
7            feedback we are receiving from the field . . . ."  Compl. ¶ 230;
8            "Our customers are raving about the connected system and user
              experience . . . .  The positive feedback we have with US
9            customers underscores the remarkable opportunity we see
              globally with Syndeo." *Id.* ¶ 241.

10

11      Courts in the Ninth Circuit treat reports of positive feedback (let alone

12   descriptions of customers "raving" about a product) as insufficient to give rise to a

13   securities claim.  *See, e.g.*, *Wozniak*, 850 F. Supp. 2d at 1036 (statement that "we're

14   getting really great feedback" is puffery); *Farhar v. Ontrak, Inc.*, 2024 WL 1136128,

15   at \*6–7 (C.D. Cal. Feb. 2, 2024) (statement that "feedback has been positive" "not

16   actionable because [it] do[es] not offer any specific details or forecasts regarding the

17   Company's performance").

18            **Regarding Syndeo's functionality:** Syndeo is "a revolutionary
19            system that offers significant improvements and a personalized
              experience for providers and consumers . . . ."  Compl. ¶ 230;
20            "This new system is a leap forward in technology . . . for the
              provider, [it] has a number of really handy functional benefits."
21            *Id.* ¶ 234; "Syndeo is our game-changing, innovative and long-
22            awaited transformation of the treatment experience for providers
              and consumers alike . . . ." *Id.* ¶ 249
23

24      Finally, courts in this Circuit routinely hold that this *exact* language cannot give

25   rise to a securities claim.  For example, the *In re CellCyte Genetics Sec. Litig.* court

26   found the statement that "'regenerative medicine is on the verge of an enormous and

27   historic leap forward' . . . [is] immaterial puffery."  2009 WL 3103892, at \*5 (W.D.

28   Wash. Sept. 24, 2009).  Similarly, the court in *Abdo v. Fitzsimmons*, rejected as

MEMORANDUM AND POINTS OF AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    "inactionable puffery" the statement that a company's technology was a "game-
2    changer."  2017 WL 6994539, at *11 (N.D. Cal. Nov. 3, 2017).  Likewise, the *In re*
3    *Eventbrite, Inc. Sec. Litig.* court found statements "about a product's 'technological
4    leadership,['] 'innovative features,' and 'significant performance advantages' are
5    inactionable puffery."  2020 WL 2042078, at *14 (N.D. Cal. Apr. 28, 2020; *see also*
6    *In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 3d 1012, 1017, 1025 (N.D. Cal.
7    2002) (finding comparable product descriptors "drop dead," "incredibly functional,"
8    and the "whole thing is perfect" to be puffery), *aff'd*, 127 F. App'x 296 (9th Cir. 2005).

### 3.    The Challenged Statements Were Known By Market

10    Issues with Syndeo were public knowledge during the class period and BHC
11    "cannot be held liable for 'failing to educate the public about the potential impact on
12    the company of publicly known facts.'"  *Howard Gunty Profit Sharing v. Quantum*
13    *Corp.*, 1997 WL 514993, at *4 (N.D. Cal. Aug. 14, 1997) (citation and brackets
14    omitted); *see Heliotrope Gen.,Inc. v. Ford Motor Co.*, 189 F.3d 971, 976 (9th Cir.
15    1999) (alleged misstatements non-actionable where truth publicly disclosed as part of
16    "total of information").

17    BHC's "stock is deemed to trade in an efficient market in which all publicly
18    available information about the company, both positive and negative, is quickly
19    incorporated into the stock price."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781,
20    794 (9th Cir. 2020).  Therefore, "an omission is materially misleading *only* if the
21    information has not already entered the market."  *In re Convergent Techs. Sec. Litig.*,
22    948 F.2d 507, 513 (9th Cir. 1991) (emphasis added); *Basic Inc*, 485 U.S. at 249
23    (presumption of fraud rebutted when market has access to accurate information).  On
24    the other hand, if allegedly omitted information has entered the market, it "would
25    already be reflected in the stock's price," and the market "will not be misled."  *In re*
26    *Apple Computer Sec. Litig.*, 886 F.2d 1109, 1114 (9th Cir. 1989); *see, e.g.*, *In re*
27    *Cypress Semiconductor Sec. Litig.*, 891 F. Supp. 1369, 1379 (N.D. Cal. 1995) ("any
28    failure . . . to disclose material information . . . would be excused" where "this

information was made credibly available to the market"). Issues with Syndeo were known to the market during the class period through two independent means.

*First*, the Complaint's "fraud on the market claim is undermined by its own pleaded assertions." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1409–10 (9th Cir. 1996). For one thing, FE-2 "learned of the Syndeo issues even before returning to HydraFacial in April 2023 because FE-2 was still in the industry." Compl. ¶ 166. In other words, the issues with Syndeo were known *outside* BHC. This compels finding "the sort of market awareness that [the Ninth Circuit has] held to defeat claims of fraud on the market." *Anderson,* 89 F.3d at 1409–10. For another, the Complaint alleges that "[d]uring FE-3's hiring interview, FE-3 learned that the Company has had numerous issues with the Syndeo products." Compl. ¶ 177. It is implausible that BHC would deliberately conceal material information from the public, but openly discuss that same information with a job applicant.

*Second*, in February 2023, BHC publicly acknowledged issues with Syndeo, a remediation program, and a $2.4 million charge in connection with replacing units:

> Most first generation IoT products require continuous improvements based upon user experience . . . [W]e implemented a program to replace all systems regardless of issue until October 2022. As a result of this one-time program, we incurred $2.4 million in non-recurring logistics and servicing costs in 2022.

Compl. ¶ 264. As described above, BHC did so again on August 9, 2023, when it reported that it was focused on "resolving our Syndeo teething issues by the end of this year." *Id*. ¶ 191. It went on to describe "incremental, unplanned costs which have impacted us financially in the short-term," and provided more detail in a public filing that day. *Id.* The notion that BHC was concealing from the market issues that it was experiencing with the Syndeo devices is simply not borne out by the facts alleged.

### C.    The Complaint Fails To Allege Loss Causation

The Complaint should be dismissed for a third independent and equally compelling reason; it fails to demonstrate loss causation—that the "share price *fell significantly* after the truth became known"— tied to BHC's alleged non-disclosure of

MEMORANDUM AND POINTS OF AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

issues with Syndeo. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (citation omitted). As explained below, BHC's share price *did not* fall significantly following the corrective disclosure on August 9, 2023, that Plaintiffs contend revealed issues with the Syndeo. That means that the drop in BHC's share price following BHC's later disclosure on November 13, 2023, was caused by something else: presumably BHC's reporting of lower-than-expected revenue. But the law is well-settled that "establishing loss causation requires more than an earnings miss or the market's reaction to a company's poor financial health generally." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 955 (9th Cir. 2023) (citation and internal quotations omitted). Therefore, because the only significant drop in BHC's share price in this case is attributable to the Company's reporting of its poor financial performance, and not issues with Syndeo, Plaintiffs' claim must be dismissed.

### 1. BHC's Share Price Did Not Drop Significantly Following The August 9, 2023 Disclosure Of The Syndeo Issues

While Defendants maintain that the issues with the Syndeo were known to the market early on, *see supra* Section IV.B.3, Plaintiffs' own allegations make clear that BHC fully disclosed "Syndeo's systemic problems" on August 9, 2023 at the latest. Specifically, BHC disclosed:

- The Company was in the midst of "Syndeo teething issues" that it was seeking to resolve by the end of the year. Compl. ¶ 191.

- Because of the "teething issues," the Company instituted a program "to exchange Syndeo devices at the Company's expense, even for the smallest issues" which led to "incremental, unplanned costs." *Id.* ¶ 191.

- The "teething issues" with the Syndeo "hampered [the Company's] ability to meet [its] expected gross margin target for the year" leading the Company to "retract[] its gross margin guidance for 2023." *Id.* ¶ 193.

- Syndeo devices were suffering from "residue buildup and blockage." *Id.* ¶ 194

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM AND POINTS OF AUTHORITIES

- The Company had "been putting the customer first and obviously invested as we've spoken before about replacing every machine. If a customer calls in with a problem, we're very fast to take the machine back and switch it out." *Id.* ¶ 194.

- A "voluntary initiative" at a cost of $5 million "to replac[e] certain componentry in previously manufactured Syndeo delivery systems to increase resistance to inadvertent clogging when recommended maintenance is not performed." *Id.* ¶ 196.

Despite these comprehensive disclosures, BHC's share price fell only by 5.4%, *id.* ¶ 198, which is statistically insignificant and cannot support an inference of loss causation. *See Camp v. Qualcomm Inc.*, 2020 WL 1157192, at *6 (S.D. Cal. Mar. 10, 2020) ("Securities complaints tend to be predicated on double digit declines."); *Metzler* 540 F.3d at 1064 (describing 10% drop in stock price as "modest"). Courts in the Ninth Circuit routinely dismiss securities complaints premised on similarly insignificant price drops following an allegedly corrective disclosure. *See Daniels Family 2001 Revocable Tr. v. Las Vegas Sands Corp.*, 709 F. Supp. 3d 1217, 1237–38 (D. Nev. 2024) (observing that stock drops of 3% and 5% were "at least facially, modest" and finding loss causation insufficiently pled); *Qualcomm*, 2020 WL 1157192, at *6–7 (granting motion to dismiss because 4.02% stock drop over two-days was "minimal"); *Eng v. Edison Int'l*, 2017 WL 1857243, at *4 (S.D. Cal. May 5, 2017) (granting motion to dismiss because "Plaintiffs' SAC does not plausibly alleged that the scanty .79% to 2.71% declines in stock price were 'statistically significant'"); *Ramos v. Comerica Inc.*, 2024 WL 2104398, at *4 (C.D. Cal. Apr. 12, 2024) (finding that "combined price drop of 7.4 percent in two days" was insufficient to support inference of loss causation).

BHC's stock price movement before August 9, 2023, further underscores that Plaintiffs failed to allege loss causation. That is because the 5.4% drop following the disclosure on August 9, 2024, was "unremarkable and well within the typical stock price movement." *Ramos*, 2024 WL 2104398, at *4 (finding price drop

– 38 –

"unremarkable" where "nine other two-day periods—more than a fifth of the two-day trading periods in May and June—had a price change that was greater than the combined two-day drop on which Plaintiffs focus").  Specifically, between April 3, 2023 and July 31, 2023, there were *twelve* separate days where the change in stock price was greater than 5.4%.[14]  July 2023 alone included a drop of 7.36% on July 20, 2023, and an increase of 6.68% on July 10, 2023.

### 2.    The Stock Drop Following The November 13, 2023 Disclosure Was Caused By BHC's Poor Financial Performance

Though statistically significant, Plaintiffs fail to allege that the 64.36% drop in BHC's stock price on November 13, 2023, was connected to the purported fraud alleged in the Complaint.  Nor could they.  To prove loss causation, Plaintiffs would need to establish that "the market learn[ed] of a defendant's fraudulent act or practice, the market react[ed] to the fraudulent act or practice, and a plaintiff suffer[ed] a loss as a result of the market's reaction."  *In re Oracle Corp.*, 627 F.3d at 392.

But by November 13, 2023, issues with Syndeo had been known to the market for, at the very least, the three-months following BHC's disclosures on August 9, 2023 (putting aside the fact of earlier disclosures in February 2023).  As discussed above, the market *did not* react to those earlier disclosures in a statistically significant way.  As a result, the stock drop on November 13, 2023, was necessarily caused by something besides the fact of issues with Syndeo.  Accordingly, Plaintiffs have failed to allege that the purported non-disclosure of the issues with the Syndeo, "'as opposed to some other fact, foreseeably caused the plaintiffs loss.'"  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018).

Because issues with Syndeo were not behind the stock decline after November

---

[14] August 25, 2023 (-7.14%); May 2, 2023 (-5.64%); May 4, 2023 (-5.61%); May 5, 2023 (+5.64%); May 10, 2023 (-6.73%); May 16, 2023 (-8.11%); May 26, 2023 (-13.13%); June 6, 2023 (+5.79%); June 12, 2023 (+6.31%); June 21, 2023 (-8.28%); July 10, 2023 (+6.68%); July 20, 2023 (-7.36%).  *See* Ex. 14.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MEMORANDUM AND POINTS OF AUTHORITIES

13, 2023, all that is left to explain it is BHC's reporting of its poor financial performance and financial fallout from its decision to declare Syndeo 1.0 and 2.0 obsolete.  But the mere disclosure of poor financial performance cannot support an inference of loss causation.  *See Metzler*, 540 F.3d at 1063 (loss causation not established where market is "merely reacting to reports of the defendant's poor financial health generally"); *In re Oracle Corp.*, 627 F.3d at 392 ("Loss causation requires more than an earnings miss."); *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1207 (N.D. Cal. 2008) (holding "Plaintiffs have not adequately plead loss causation because they did not plead that any of Yahoo!'s public statements about the alleged fraud caused a decline in Yahoo!'s stock").  Here, the decline in stock price was "attributable to factors unrelated to the fraud, such as a change in economic circumstances or investor expectations."  *In re BofI Holding*, 977 F.3d at 790.  On those facts, loss causation cannot be established, and dismissal is warranted.

### D. Plaintiffs Fail to Allege A Violation of Section 20(a)

Because Plaintiffs fail to "allege a violation of [Section 10(b)] or Rule 10b," there can be no liability under Section 20(a), either.  *Lipton*, 284 F. 3d at 1035 n. 15; *see also Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section 10(b).").

### V. CONCLUSION

Based on the foregoing reasons, BHC respectfully requests that the Complaint be dismissed with prejudice.

MEMORANDUM AND POINTS OF AUTHORITIES

DATED: September 30, 2024          REED SMITH LLP


By: */s/ James L. Sanders*
    James L. Sanders (SBN 126291)
    Charles P. Hyun (SBN 307817)
    John C. Scalzo (*pro hac vice*)
    Brian M. Rostocki (*pro hac vice*)
    Zachary B. Kaye (*pro hac vice*)

    *Attorneys for Defendants The Beauty Health Company, Andrew Stanleick, and Liyuan Woo*

MEMORANDUM AND POINTS OF AUTHORITIES