Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiffs*
*Priscilla Dijkgraaf and Martijn Dijkgraaf*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULADHIM A. ALGHAZWI, Individually and On Behalf of All Others Similarly Situated,<br><br>                                          Plaintiff,<br><br>        v.<br><br>THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK and LIYUAN WOO,<br><br>                                          Defendants. | No. 2:23-cv-09733-SPG-MAA<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Date:         January 15, 2025<br>Time:         1:30 p.m.<br>Courtroom:  5C<br>Judge:        Hon. Sherilyn Peace Garnett |

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

## I.    INTRODUCTION

Lead Plaintiffs Priscilla Dijkgraaf's and Martijn Dijkgraaf's ("Plaintiffs") oppose Defendants The BeautyHealth Company's ("BeautyHealth" or the "Company"), Andrew Stanleick's, and Liyuan Woo's ("Defendants") request for judicial notice of the fourteen exhibits attached to their Motion to Dismiss the Amended Class Action Complaint ("MTD").  *See* ECF No. 45.  Plaintiffs do not dispute that five of these documents (Exs. 4-6, 10, 13) are referred to in the Amended Complaint and form the basis of Plaintiffs' claims. Plaintiffs also do not contest these documents' authenticity or that some of these documents were publicly available.  But many of these documents are being offered to support the counter-narrative to the well-pled allegations in the Amended Complaint.  This is clearly improper.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).   Defendants' request for judicial notice should be denied.

## II.    ARGUMENT

### A.    Defendants Improperly Rely on Exhibits to Contradict the Amended Complaint Allegations.

Under the doctrines of incorporation by reference and judicial notice, Defendants ask the Court to accept their subjective interpretation of the contents of certain Exhibits as true to undermine Plaintiffs' well-pled factual allegations and support their counter-narrative of events - a tactic the Ninth Circuit has rejected. *See Khoja*, 899 F.3d at 998 (admonishing "a concerning pattern in securities cases like this one: exploiting [judicial notice and incorporation by reference] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage.").

For example, Defendants rely on BeautyHealth's March 1, 2022 Form 10-K (Ex. 4) to contradict the Amended Complaint's well-pled allegations that Defendants failed to disclose that BeautyHealth encountered significant cosmetic and functionality defects with Syndeo during and after its release, and argue that the Company "*cautioned investors* that its 'new product introductions may not be as successful as [BeautyHealth]

- 1 -

anticipate[s]' and that [BeautyHealth's] 'success depends, in part, on the quality, performance and safety of [its] products.'" MTD at 4 (emphasis added).

Defendants raise no PSLRA safe harbor arguments to argue against falsity (MTD at 24-36), meaning that they are plainly offering this document detailing cautionary language for the truth of the matter asserted and to factually dispute Plaintiffs' well-pled allegations, which they are not permitted to do. *See Kipling v. Flex Ltd.*, 2020 WL 7261314, at *7 (N.D. Cal. Dec. 10, 2020). This Court is required at the motion to dismiss stage to assume the truth of Plaintiffs' allegations. Defendants cannot use their self-serving interpretation of this and other documents to "create[] a defense to the well-pled allegations in the complaint[.]" *Khoja*, 899 F.3d at 1002.

As another example, Defendants use a February 28, 2023 press release (Ex. 6) to try to rebut Plaintiffs' allegations that BeautyHealth downplayed, and thus failed to adequately disclose to investors, the costs associated with its replacement of thousands of defective Syndeo machines. The motion to dismiss cites the press release to suggest that "***Woo then disclosed*** that the $2.4 million in Syndeo-related costs were the result of [BeautyHealth's] program to replace all Syndeo systems regardless of issue, ***alerting the market to the fact of significant product exchanges***." MTD at 8 (emphases added). Contrary to these claims, Plaintiffs allege that Defendants vaguely acknowledged the $2.4 million charge but downplayed its cost and return policy by characterizing it as a common occurrence with new product releases and falsely claiming that it was a "one time program." ¶ 161.[1]

Similarly, Defendants use a September 15, 2022 Analyst Day Transcript (Ex. 5) and May 10, 2023 press release (Ex. 10) to try and rebut Plaintiffs' allegations that Defendants' did not disclose systemic Syndeo issues to the public. While Defendants accurately quote a statement from the Analyst Day – including that "[BeautyHealth] was ***hard at work enhancing, improving, and optimizing Syndeo***" – in Exhibit 5, they

---

[1] Citations to "¶ _" are to the Amended Complaint, filed July 1, 2024. ECF No. 39.

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

are using that language to argue that Defendants disclosed addressing issues with Syndeo earlier than Plaintiffs allege. MTD at 7 (emphasis added). Defendants' self-serving interpretation of the cited language directly challenges Plaintiffs' allegations that Defendants failed to disclose that steps were taken to address cosmetic and flow issues. ¶ 130. In turn, Defendants cite to Ex. 10 to show that Defendants disclosed "*software optimizations made since [Syndeo's] March 2022 U.S. launch*." MTD at 9 n.7 (emphasis added). This biased reading, again, attempts to undermine Plaintiffs' well-pled allegations that Defendants failed to disclose the *reasons* for any optimization – systemic cosmetic and functional issues – while at the same time touting "strong Syndeo traction." ¶¶ 169-73.

Finally, Defendants refer to the November 13, 2023 press release (Ex. 13) that Plaintiffs assert is a corrective disclosure revealing the full scope of Syndeo issues across the Class Period. MTD at 10. Defendants rely on the information disclosed in the press release – including that BeautyHealth incurred "*63.1 million in restructuring charges related to device upgrades of early generation Syndeo devices*" and management's decision to "*only market and sell Syndeo 3.0 devices*" – to argue against loss causation. Specifically, Defendants argue that no new material information concerning issues with Syndeo were disclosed on November 13, 2023 in light of Defendants' August 9, 2023 disclosures regarding Syndeo "teething" issues. MTD at 39. Accordingly, per Defendants, the information relating to Syndeo released on November 13, 2023 had nothing to do with the subsequent 64% decline in BeautyHealth common stock. MTD at 39-40; ¶ 217. Defendants' argument fundamentally mischaracterizes the nature and impact of the November 13, 2023 disclosures, as they went well beyond the prior disclosures. ¶¶ 205-207, 211.

In sum, Defendants "repeatedly do what *Khoja* forbids – ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint." *See Rollins v. Dignity Health*, 338 F.Supp.3d 1025, 1031 (N.D. Cal. 2018). Indeed, *Khoja* is directly on point, where the Ninth Circuit found that

the district court improperly judicially noticed an investor call transcript for the purpose of "reveal[ing] what investors already knew[] about the decision to conduct" another study to address heart risks. 899 F.3d at 1000.  Defendants do the same here, requesting judicial notice of documents to argue for what investors understood about the Syndeo issues, a direct "challenge the factual averments in the complaint" *Rollins*, 338 F. Supp. 3d at 1031. The Court should not take judicial notice of these documents for this improper purpose.

**B.    Defendants Rely on Documents not Cited by Plaintiffs For Improper Purposes.**

Eight of Defendants' proffered documents (Exs. 1-3, 7-9, and 11-12) are SEC Form 4s, none of which were cited by Plaintiffs in the Amended Complaint.  Defendants use these exhibits to support their counter-narrative that Stanleick and Woo "believed that [BeautyHealth's] remediation efforts would succeed, or already were successful" and therefore they retained their shares. Setting aside the merits of this scienter challenge, Defendants cannot use extrinsic evidence to negate Plaintiffs' scienter allegations and establish Defendants' purportedly innocent mindset at the pleading stage. *See Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010) (declining to take judicial notice of Form 4s offered by Defendants at the pleading stage as evidence of scienter).

In addition, Defendants cite Ex. 14, a table reflecting BeautyHealth's common stock closing price and trading volume from April 3, 2023 through November 30, 2023. MTD at 39 n. 4.  Defendants cite this data to challenge Plaintiffs' loss causation allegations. *Id.* As explained in the Opposition ("Opp.") (pp. 36-38), such challenges relying on stock trade data are premature at this stage and are typically raised during expert discovery. *See, e.g., In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (noting it is "normally inappropriate to rule on loss causation at the pleading stage"). Again, Defendants cannot use this extrinsic evidence to counter loss causation at the pleading stage.

## C.   Defendants Do Not Lay a Proper Foundation.

Apart from offering these documents for purposes of assuming the factual truth of Defendants' interpretation of their contents, Defendants have also failed to lay the proper foundation for their request for judicial notice. While Defendants have excerpted portions of the documents or highlighted parts of their text, Defendants do not identify which facts within the lengthy exhibits they ask the Court to judicially notice nor do they explain why the Court can judicially notice those facts. *DalPoggetto v. Wirecard AG*, 2020 WL 2374948, at *2 (C.D. Cal. Apr. 15, 2020). The Court should therefore decline to take judicial notice of the documents at issue.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request for judicial notice.

Dated: November 22, 2024          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  */s/ Lucas E. Gilmore*
　　　　　LUCAS E. GILMORE
　　　Reed R. Kathrein (139304)
　　　Lucas E. Gilmore (250893)
　　　715 Hearst Avenue, Suite 202
　　　Berkeley, CA  94710
　　　Telephone: (510) 725-3000
　　　Facsimile:  (510) 725-3001
　　　reed@hbsslaw.com
　　　lucasg@hbsslaw.com

　　　*Attorneys for Lead Plaintiffs*
　　　*Priscilla Dijkgraaf and Martijn Dijkgraaf*

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

## L.R. 11-6.1 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiffs Priscilla Dijkgraaf and Martijn Dijkgraaf, certifies that this brief contains 1,422 words, which complies with the word limit of L.R. 11-6.1.

/s/ Lucas E. Gilmore

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE