Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiffs*
*Priscilla Dijkgraaf and Martijn Dijkgraaf*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULADHIM A. ALGHAZWI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK and LIYUAN WOO, <br><br> Defendants. | No. 2:23-cv-09733-SPG-MAA <br><br> CLASS ACTION <br><br> **LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> Date: September 17, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 5C <br> Judge: Hon. Sherilyn Peace Garnett |

## I.    INTRODUCTION

Lead Plaintiffs Priscilla Dijkgraaf and Martijn Dijkgraaf ("Plaintiffs") oppose Defendants The BeautyHealth Company's ("BeautyHealth" or the "Company"), Andrew Stanleick's, and Liyuan Woo's ("Defendants") request for judicial notice of the sixteen exhibits attached to their Motion to Dismiss the Consolidated Second Amended Class Action Complaint ("MTD").  *See* ECF No. 67.  Plaintiffs do not dispute that seven of these documents (Exs. 4-6, 10, 13, 15-16) are referred to in the Second Amended Complaint (the "SAC"). Plaintiffs also do not contest these documents' authenticity or that some of these documents were publicly available. But many of these documents are being offered to support the counter-narrative to the well-pled allegations in the SAC. This is clearly improper. *See Khoja v. Orexigen Therapeutics*, *Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Defendants' request for judicial notice should be denied.

## II.    ARGUMENT

As a preliminary matter, Plaintiffs note that the only exhibits explicitly cited in the MTD are Exhibits 15-16. Defendants' request for judicial notice otherwise concerns Exhibits 1-14 that were cited and attached to Defendants' September 2024 motion to dismiss. *See* ECF Nos. 45 and 45-16. Nonetheless, to the extent the Court considers judicial notice of exhibits not specifically cited in the MTD, Plaintiffs oppose Defendants' request for the following reasons.

### A.    Defendants Improperly Rely on Exhibits to Contradict the SAC's Allegations.

Under the doctrines of incorporation by reference and judicial notice, Defendants ask the Court to accept their subjective interpretation of the contents of certain Exhibits as true to undermine Plaintiffs' well-pled factual allegations and support their counter-narrative of events. The Ninth Circuit has rejected such a tactic. *See Khoja*, 899 F.3d at 998 (admonishing "a concerning pattern in securities cases like this one: exploiting [judicial notice and incorporation by reference] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage").

For example, Defendants rely on BeautyHealth's March 1, 2022 Form 10-K (Ex. 4) to contradict the SAC's well-pled allegations that Defendants failed to disclose that BeautyHealth encountered significant cosmetic and functionality defects with Syndeo during and after its release. Specifically, Defendants' argue that the Company "***cautioned the public*** that '[i]f our products are found to be, or perceived to be, defective or unsafe, or if they otherwise fail to meet our consumers' expectations . . . we may need to recall some products . . .'" MTD at 28 (emphasis added).

Defendants refer to Ex. 4 in support of their "bespeaks caution" argument. MTD at 28-29. But as explained in the Opposition ("Opp."), Plaintiffs do not allege that any "forward-looking" statements from Defendants were false or misleading. Opp. at 31. Thus, Defendants are plainly offering this document detailing cautionary language for the truth of the matter asserted and to factually dispute Plaintiffs' well-pled allegations, which they are not permitted to do. *See Kipling v. Flex Ltd.*, 2020 WL 7261314, at *7 (N.D. Cal. Dec. 10, 2020). This Court is required at the motion to dismiss stage to assume the truth of Plaintiffs' allegations. Defendants cannot use their self-serving interpretation of this and other documents to "create[] a defense to the well-pled allegations in the complaint[.]" *Khoja*, 899 F.3d at 1002.

As another example, Defendants use a February 28, 2023 press release (Ex. 6) to try to rebut Plaintiffs' allegations that BeautyHealth downplayed, and thus failed to adequately disclose to investors, the costs associated with its replacement of thousands of defective Syndeo machines. The motion to dismiss refers to the press release to argue that the truth of Syndeo's issues were known to the public, as "BHC publicly acknowledged issues with Syndeo, a remediation program, and a $2.4 million charge in connection with replacing units." MTD at 10, 26.[1] Contrary to these claims, Plaintiffs

---

[1] Plaintiffs note that the press release attached as Exhibit 6 is not the February 28, 2023 press release concerning the 4Q 2022 and FY 2022 financial results, but rather a separate February 28, 2023 press release concerning BeautyHealth's acquisition of SkinStylus. *See* ECF No. 67-1 at p. 257.

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

allege that Defendants vaguely acknowledged the $2.4 million charge but downplayed its cost and return policy by characterizing it as a common occurrence with new product releases and falsely claiming that it was a "one time program." ¶ 330.[2]

Similarly, Defendants use a September 15, 2022 Analyst Day Transcript (Ex. 5) to try and rebut Plaintiffs' allegations that Defendants' did not disclose systemic Syndeo issues to the public. While Defendants paraphrase a statement from the Analyst Day transcript regarding BeautyHealth's "ongoing efforts to **enhance, improve, and optimize Syndeo**," they use this language to argue that Defendants disclosed addressing issues with Syndeo earlier than Plaintiffs allege. MTD at 7 (emphasis added). Defendants' self-serving interpretation of the cited language directly challenges Plaintiffs' allegations that Defendants failed to disclose that steps were taken to address cosmetic and flow issues. ¶ 152-61.

In turn, its unclear why Defendants attached Ex. 10 to their motion, as they only discussed the financial results for 1Q 2023 in summary fashion. MTD at 10-11. But any attempt to rely on Defendants' disclosure in Ex. 10 of "**software optimizations made since [Syndeo's] March 2022 U.S. launch**" would be improper. *See* ECF No. 67-1 at 276 (emphasis added).  This biased reading, again, attempts to undermine Plaintiffs' well-pled allegations that Defendants failed to disclose the *reasons* for any optimization – systemic cosmetic and functional issues – while at the same time touting "strong Syndeo traction." ¶¶ 341-46.

Defendants further refer to the November 13, 2023 press release (Ex. 13) that Plaintiffs assert is a corrective disclosure revealing the full scope of Syndeo issues across the Class Period. MTD at 13. Defendants rely on the information disclosed in the press release – including that BeautyHealth incurred "**$63.1 million in restructuring charges related to device upgrades of early generation Syndeo devices**" and

---

[2] Citations to "¶ _" are to the Second Amended Complaint, filed May 5, 2025. ECF No. 57.

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

management's decision to "*only market and sell Syndeo 3.0 devices*" – to argue against loss causation. ECF NO. 67-1 at 280-281. Specifically, Defendants argue that no new material information concerning issues with Syndeo were disclosed on November 13, 2023 in light of Defendants' August 9, 2023 disclosures regarding Syndeo "teething" issues. MTD at 34. Accordingly, per Defendants, the information relating to Syndeo released on November 13, 2023 had nothing to do with the subsequent 64% decline in BeautyHealth common stock. MTD at 34-35; ¶¶ 256-63. Defendants' argument fundamentally mischaracterizes the nature and impact of the November 13, 2023 disclosures, as they went well beyond the prior disclosures. ¶¶ 256-63, 369-73.

Finally, Defendants cite Exhibit 15 (September 15, 2022 Canaccord Genuity analyst report) and Exhibit 16 (August 9, 2023 Canaccord Genuity Report), to argue that "analyst reports confirm market awareness of issues with Syndeo." MTD at 27. The September 15, 2022 report, however, makes no reference to the cosmetic and functional issues, including plugging, that Plaintiffs alleged plagued the Syndeo 1.0 in the months after its March 2022 release. ¶¶ 83-128, 139-51. As Plaintiffs note in the Opposition, the language cited by Defendants comes from a paragraph in the report discussing BeautyHealth's "untapped potential from a marketing perspective." Opp. at 37. As for the August 9, 2023 report, Defendants omit that the analyst stated that BeautyHealth's disclosures "generated more questions than answers," consistent with Plaintiffs allegations that the August 9, 2023 disclosure of "teething" issues did not give the market the full scope of Syndeo's problems. ¶¶ 249-50; Opp. at 38. Like with the other Exhibits, Defendants offer a mischaracterized and biased reading of these analyst reports.

In sum, Defendants "repeatedly do what *Khoja* forbids – ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint." *See Rollins v. Dignity Health*, 338 F.Supp.3d 1025, 1031 (N.D. Cal. 2018). Indeed, *Khoja* is directly on point, where the Ninth Circuit found that the district court improperly judicially noticed an investor call transcript for the purpose

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

of "reveal[ing] what investors already knew[] about the decision to conduct" another study to address heart risks. 899 F.3d at 1000.  Defendants do the same here, requesting judicial notice of documents to argue for what investors understood about the Syndeo issues, a direct "challenge the factual averments in the complaint" *Rollins*, 338 F. Supp. 3d at 1031. The Court should not take judicial notice of these documents for this improper purpose.

**B.** **Defendants Rely on Documents not Cited by Plaintiffs for Improper Purposes.**

Eight of Defendants' proffered documents (Exs. 1-3, 7-9, and 11-12) are SEC Form 4s, none of which were cited by Plaintiffs in the SAC. Defendants themselves do not even cite the Form 4s in their opposition brief. Presumably, like they did in the initial motion to dismiss, Defendants seek to use these exhibits to support their counter-narrative that Stanleick and Woo "***believed that [BeautyHealth's] remediation efforts would be, or already were, successful***" and therefore they retained their shares. MTD at 19-20 (emphasis added). Setting aside the merits of this scienter challenge, Defendants cannot use extrinsic evidence to negate Plaintiffs' scienter allegations and establish Defendants' purportedly innocent mindset at the pleading stage. *See Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010) (declining to take judicial notice of Form 4s offered by Defendants at the pleading stage as evidence of scienter).

In addition, Defendants ask the Court to recognize Ex. 14, a table reflecting BeautyHealth's common stock closing price and trading volume from April 3, 2023 through November 30, 2023. Defendants' previously cited this data in the initial motion to dismiss to challenge Plaintiffs' loss causation allegations. ECF No. 45 at 49 n.14. But Plaintiffs no longer allege August 9, 2023 as a disclosure date. ¶¶ 369-73. And to the extent Defendants seek to use stock trade data to contest loss causation, such challenges are premature at this stage and are typically raised during expert discovery. *See, e.g., In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (noting it is "normally inappropriate to rule on loss causation at the pleading stage"). Again, Defendants cannot

use this extrinsic evidence to counter loss causation at the pleading stage.

## C. Defendants Do Not Lay a Proper Foundation.

Apart from offering these documents for purposes of assuming the factual truth of Defendants' interpretation of their contents, Defendants have also failed to lay the proper foundation for their request for judicial notice. As noted above, aside from Exhibits 15 and 16, Defendants do not explicitly cite the Exhibits in their opposition. In other cases, Defendants have highlighted parts of a document's text. Defendants, however, do not identify which facts within the lengthy exhibits they ask the Court to judicially notice nor do they explain why the Court can judicially notice those facts. *DalPoggetto v. Wirecard AG*, 2020 WL 2374948, at *2 (C.D. Cal. Apr. 15, 2020). The Court should therefore decline to take judicial notice of the documents at issue.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request for judicial notice.

Dated: August 11, 2025

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  */s/ Lucas E. Gilmore*
    LUCAS E. GILMORE
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
301 N. Lake Ave., Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Facsimile:  (213) 330-7152
christopherp@hbsslaw.com

Peter A. Shaeffer (*pro hac vice*)
petersh@hbsslaw.com
455 North Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950
petersh@hbsslaw.com

*Attorneys for Lead Plaintiffs*
*Priscilla Dijkgraaf and Martijn Dijkgraaf*

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

## L.R. 11-6.1 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiffs Priscilla Dijkgraaf and Martijn Dijkgraaf, certifies that this brief contains 1,831 words, which complies with the word limit of L.R. 11-6.1.


                    */s/ Lucas E. Gilmore*

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE