**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABDULADHIM A. ALGHAZWI, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>THE BEAUTY HEALTH COMPANY, ANDREW STANLEICK, AND LIYUAN WOO,<br>Defendants. | Case No. 2:23-cv-09733-SPG-MAA<br>**ORDER GRANTING LEAD PLAINTIFFS' NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF NOTICE TO THE SETTLEMENT CLASS; AND SCHEDULING OF FAIRNESS HEARING [ECF NO. 134]** |

Before the Court is the unopposed Motion for Preliminary Approval of Proposed Class Action Settlement; Certification of the Settlement Class; Approval of Notice to the Settlement Class; and Scheduling of Fairness Hearing, (ECF No. 134 ("Motion")), and concurrently filed Memorandum in Support, (ECF No. 134-1 ("Memo")), filed by Lead Plaintiffs Priscilla Dijkgraaf and Martijn Dijkgraaf ("Lead Plaintiffs"). The Court has read and considered the Motion and determined that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

## I. BACKGROUND

In this unopposed Motion, Lead Plaintiffs request the Court: (1) preliminarily approve the proposed settlement set forth in the Stipulation and Agreement of Settlement, (ECF No. 134-5 ("Stipulation of Settlement")); (2) preliminary certify a Settlement Class, as defined in the Stipulation of Settlement; (3) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; (4) schedule a hearing for the Court to determine whether the proposed Settlement, the proposed Plan of Allocation, and counsel's motion for an award of attorneys' fees and litigation expenses, including Awards to Lead Plaintiffs, should be approved; and (5) provide such other relief as deemed just and proper. *See* (Mot. at 2).

Defendants Andrew Stanleick ("Stanleick"), Liyuan Woo ("Woo," or together with Stanleick, the "Individual Defendants"), and The Beauty Health Company ("BeautyHealth" or the "Company"; together with Stanleick and Woo, "Defendants") have not opposed or otherwise presented objections to the Motion. *See* (ECF No. 135) (Lead Plaintiffs' Notice of Absence of Objection to Motion for (I) Preliminary Approval of Proposed Class Action Settlement; (II) Certification of the Settlement Class; (III) Approval of Notice to the Settlement Class; and (IV) Scheduling of Fairness Hearing).

### A. Factual Background

The Court previously summarized the factual background of this case in its September 23, 2025, Order Denying Defendants' Motion to Dismiss Lead Plaintiffs' Second Amended Complaint. (ECF No. 78 ("SAC Order")). In brief, Lead Plaintiffs allege that Defendants materially misled investors about the success of a product launched in 2022 called "Syndeo." *See* (ECF No. 57 ("Second Amended Complaint" or "SAC") ¶ 5). Syndeo was a machine developed to provide personalized skincare treatment through software that tracked client history and preferences. (*Id.*). Though Defendants allegedly had knowledge that the Syndeo machines suffered from cosmetic, design, and functionality issues, the Company made repeated public representations about the product's success throughout 2022 and 2023. *E.g.* (*id.* ¶ 282). On November 13, 2023, the Company issued

a press release reporting a sharp decline in gross margin and gave a presentation that specifically identified the Syndeo machines as the source for the reduced gross margin. (*Id.* ¶¶ 256, 260–62). After issuance of the November 13, 2023, press release, the Company's share price fell by 64.3%, from $3.90 to close at $1.39 per share on November 14, 2023. (*Id.* ¶ 269).

**B. Procedural History**

On November 16, 2023, Plaintiff Abduladhim A. Alghazwi commenced a putative class action case, on behalf of himself and others similarly situated, for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5. *See* (ECF No. 1 ("Complaint")). In addition to Defendants, Plaintiff Alghazwi named Michael Monahan as a defendant. (*Id.* ¶ 7). Upon review of competing motions for appointment of lead plaintiffs and corresponding approval of selection of lead counsel, on May 2, 2024, the Court appointed Priscilla Dijkgraaf and Martijn Dijkgraaf as lead plaintiffs, and appointed Hagens Berman Sobol Shapiro LLP as Lead Counsel in the case. *See* (ECF No. 31 ("Order Appointing Lead Plaintiffs")). On July 1, 2024, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws, in which Michael Monahan was dropped as a named Defendant. (ECF No. 39 ("First Amended Complaint")). On September 30, 2024, Defendants filed a motion to dismiss the First Amended Complaint, and the motion was withdrawn on stipulation by the parties on January 17, 2025, so that the parties could pursue private mediation. (ECF Nos. 45, 54).

On March 27, 2025, the parties participated in a mediation session before a third-party mediator named Greg Danilow of Phillips ADR Enterprises, P.C. (ECF No. 134-4 ("Gilmore Decl.") ¶¶ 16, 17). The parties did not reach a resolution during this first mediation session. (*Id.*). The parties stipulated to Lead Plaintiffs' filing a Second Amended Complaint, (ECF No. 55), which Lead Plaintiffs filed on May 5, 2025, (SAC). In the SAC, Lead Plaintiffs alleged violations of Section 10(b) and 20(a) of the Exchange Act and of SEC Rule 10b-5. (SAC). On July 11, 2025, Defendants filed a motion to

dismiss the Second Amended Complaint, which the Court denied on September 23, 2025, concluding that Lead Plaintiffs had plausibly alleged a Section 10(b) claim. (SAC Order). Defendants each filed an Answer to the Second Amended Complaint on November 24, 2025, and subsequently engaged in discovery. *See* (ECF Nos. 95, 96, 97); (Memo at 12).

On May 20, 2026, Lead Plaintiffs and the Company participated in a second mediation session with Mr. Danilow and reached an agreement on the key terms of the settlement. (Gilmore Decl. ¶¶ 25, 26).

Lead Plaintiffs filed this Motion and supporting memorandum on June 17, 2026. (Mot.); (Memo). The Motion is supported by a number of exhibits, including (1) a proposed schedule of settlement events, (ECF No. 134-2); (2) the Stipulation of Settlement; (3) the firm resumé of Hagens Berman Sobol Shapiro LLP (ECF No. 134-6); (4) the declaration of Lucas Gilmore, Lead Counsel for Lead Plaintiffs, (Gilmore Decl.); and (5) the declaration of Justin Hughes, a director of Stretto, Inc. the provider proposed to be charged with administration of the settlement, (ECF No. 134-7 ("Hughes Decl.")).

### C. Stipulation of Settlement

The key terms of the Stipulation of Settlement are described as follows.

#### 1. <u>Class Definition</u>

The Stipulation of Settlement defines the proposed Settlement Class as:

> [A]ll Persons or entities which, between May 10, 2022 and November 13, 2023, inclusive, purchased or otherwise acquired BeautyHealth Common Stock or BeautyHealth Call Options, or sold or otherwise disposed of BeautyHealth Put Options, and were damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Families, or any individual trust or family trust, of any Defendant who is an individual; (iii) any person who is or was an officer or director of BeautyHealth at all relevant times; (iv) any firm or entity in which Defendants have or had a majority ownership interest; (v) BeautyHealth's liability insurance carriers; (vi) any affiliates, parents, or subsidiaries of BeautyHealth; (vii) all BeautyHealth plans that are covered by ERISA; and (viii) the legal

> representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any excluded Person or entity, in their respective capacity as such. Also excluded from the Settlement Class are any Persons or entities who properly excluded themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court.

(Stipulation of Settlement at 15–16) (defining "Settlement Class").

Settlement Class Members are defined as "any Person who falls within the definition of 'Settlement Class,'" and the Settlement Class Period is defined as the "period between May 10, 2022, and November 13, 2023, inclusive." (*Id.* at 16). An Authorized Claimant is "a Settlement Class Member who submits a timely and valid Proof of Claim to the Claims Administrator." (*Id.* at 8).

2. <u>Consideration and Release</u>

Under the Stipulation of Settlement, BeautyHealth is to pay the Settlement Amount in the sum of $18,000,000.00, to an escrow account established for the benefit of the Settlement Class (the "Settlement Fund"). (*Id.* at 19). The Settlement Fund shall be used to pay "(i) Taxes and Tax Expenses; (ii) the Notice and Administration Expenses as authorized by this Stipulation; (iii) Attorneys' Fees and Expenses authorized by the Court; (iv) any Awards to Lead Plaintiffs authorized by the Court; and (v) any other fees and expenses authorized by the Court. (*Id.* at 20). The remaining funds will be distributed to the Authorized Claimants as provided in the Stipulation of Settlement. (*Id.*).

In exchange for the $18 million Settlement Amount, upon entry of this Order, Lead Plaintiffs and each Settlement Class member "shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever compromised, settled, released, waived, resolved, relinquished and discharged, and dismissed each and every one of the Released Claims against each and every one of the Defendants and shall forever be barred and enjoined from prosecuting, or maintaining, any and all Released Claims against each Released Defendant Person, whether or not Lead Plaintiffs or any Settlement Class Member executes and delivers a Proof of Claim or shares in the Settlement Fund." (*Id.* at 22).

3. Notice

The Stipulation of Settlement provides that Lead Counsel selected Stretto, Inc., as the Claims Administrator of the Settlement and charged to administer the settlement and disseminate notice to the Settlement Class. (*Id.* at 9). Within fifteen (15) days of the filing of the Motion, the Company was to serve, or cause to be served, notice of the Stipulation of Settlement in conformance with the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* (*Id.* at 24). The Company would also provide transfer records information concerning the identity of Settlement Class Members to Lead Counsel or the Claims Administrator. (*Id.*). Each Settlement Class Member wishing to participate in the Settlement is required to submit a Proof of Claim, as provided in the form set forth in Exhibit A-2, to the Claims Administrator in the time frame provided for by the Court. (*Id.* at 24–25). The Claims Administrator will timely notify claimants whether the presented Proofs of Claim will be rejected in whole or in part, and the claimants will have an opportunity to contest the rejection. (*Id.* at 26).

4. Allocation of Net Settlement Fund and Fees

The Stipulation of Settlement defines the "Net Settlement Fund" as the Settlement fund less (i) Taxes and Tax Expenses; (ii) the Notice and Administration Expenses as authorized by this Stipulation; (iii) Attorneys' Fees and Expenses authorized by the Court; (iv) any Awards to Lead Plaintiffs authorized by the Court; and (v) any other fees and expenses authorized by the Court." (*Id.* at 12). Lead Counsel shall submit an application to the Court for attorneys' fees and costs incurred in connection with prosecution of the action, plus interest, and for awards to Lead Plaintiffs, to be awarded "within the sole discretion of the Court." (*Id.* at 31–32). The remaining Net Settlement Fund will be distributed to Authorized Claimants of the Settlement Class. (*Id.* at 30–31). The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the Plan of Allocation attached to the Stipulation of Settlement as Exhibit A-1. (*Id.*); *see* (ECF No. 134-5, Exhibit A-1, at 92–104).

## II. LEGAL STANDARD

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Id.* Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In the Ninth Circuit, there is a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *Syncor ERISA Litig.*, 516 F.3d at 1101).

Court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *See* Manual for Complex Litigation (Fourth) § 21.632 (2004). However, the "settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

## III. DISCUSSION

### A. Rule 23(e): Preliminary Approval of Class Action Settlement

The Court first addresses whether it will preliminarily approve the proposed Stipulation of Settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) requires courts to determine whether the proposed settlement is "fair, reasonable, and adequate" based on consideration of whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the 2018 revisions to Rule 23(e), the Ninth Circuit had developed its own list of eight factors to be considered in assessing the fairness and adequacy of a proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Ninth Circuit has not directly spoken to how the 2018 amendments fit with this list of factors, though as one court has noted, the prior factors "correlate with the new language of the rule." *Gagnier v. Siteone Landscape Supply LLC*, No. SACV 21-01834-CJC (DFMx), 2023 WL 8116831, at *6 (C.D. Cal. June 6, 2023). The revised Rule 23(e) "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns," and explains that the goal of the amendment was "to focus the

[district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. Accordingly, the Court will examine the fairness of the proposed settlement agreement in light of the amended 23(e) factors, but will consider the pre-2018 factors "to the extent that they shed light on the inquiry mandated by the amended Rule 23(e)." *Gagnier*, 2023 WL 8116831, at *6.

1. <u>Adequacy of Representation by Class Representatives and Class Counsel</u>

The first factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). To determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *see also Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel must have sufficient "zeal and competence" to protect class interests).

In its Order Appointing Lead Plaintiffs, the Court previously recognized that the record does not indicate that Lead Plaintiffs and Lead Counsel have any conflicts of interest with other proposed class members. *See* (Order Appointing Lead Plaintiffs at 10). This remains true; the record reflects that Lead Plaintiffs and Lead Counsel do not have interests antagonistic to other Class Settlement Members. *See* (Memo at 17). Lead Counsel has also demonstrated that they prosecuted the action vigorously to date. Lead Counsel have investigated the factual bases for Lead Plaintiffs' claims, contested Defendants' motion to dismiss the SAC, and engaged in substantial discovery. (*Id.*); (Gilmore Decl. ¶¶ 47, 88). The Court concludes that Lead Plaintiffs are likely adequate class representatives and Lead Counsel fairly and adequately protected the interests of the class. *See Musgrove v. Jackson Nurse Profs., LLC*, No. CV 17-6565 FMO (SSx), 2022 WL 18231364, at *4 (C.D. Cal.

June 24, 2022) (concluding first Rule 23(e)(2) factor was met where parties engaged in substantial discovery and motion practice).

2. Arm's Length Negotiations

The second factor requires that the proposed settlement has been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Some such "subtle signs" of collusion include (1) when the agreement awards counsel a disproportionate share of the settlement; (2) when the parties agree to a "clear sailing" arrangement through which the defendants do not object to fee requests by class counsel; and (3) when the agreement reverts unclaimed funds to the defendant rather than to the class fund. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, the parties participated in two mediation sessions before Mr. Danilow, who Lead Plaintiffs represent is an "experienced mediator" with "expertise in the field of federal securities law." *See* (Memo at 17). During these sessions, the parties presented mediation statements that addressed the merits of Lead Plaintiffs' allegations and the scope of Defendants' liability in light of the evidence obtained during discovery. (*Id.* at 17–18). That the parties participated in mediation with an experienced mediator strongly suggests that the settlement is non-collusive. *See Zuniga v. House Foods Am. Corp.*, No. 8:22-CV-00372-JWH-JDEX, 2025 WL 3145881, at *5 (C.D. Cal. July 8, 2025) (citing cases). In addition, the allocation of funds in the Stipulation of Settlement does not contain a clear sailing agreement or reversion of unclaimed funds to Defendants as to suggest collusive efforts between counsel. The Stipulation of Settlement provides that Lead Counsel for Lead Plaintiffs will submit an application to the Court for an award of Attorneys' Fees and Expenses payable from the Gross Settlement Fund, which will be awarded at the sole discretion of the Court. (Stipulation of Settlement at 31–32). In addition, any unclaimed

funds shall be contributed to "non-sectarian, non-for-profit organization(s)" proposed by Lead Plaintiffs to the Court for final determination. (*Id.* at 28). The Court therefore concludes that the proposed Stipulation of Settlement is a product of arm's length negotiations. *See Baron v. HyreCar Inc.*, No. 2:21-CV-06918-FWS-JC, 2024 WL 3504234, at *5–*6 (C.D. Cal. July 19, 2024) (use of a neutral mediator and provision of an application to the court regarding the attorneys' fees award indicate that the settlement was not collusive).

3. <u>Adequacy of Relief</u>

The third factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The Court considers these factors in turn.

*a) Costs, Risks, and Delay of Trial and Appeal*

To assess the costs, risks, and delay of trial and appeal, this factor, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "The amount offered in settlement is generally considered to be the most important consideration of any class settlement." *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1075 (C.D. Cal. 2023) (citation omitted). In determining whether the amount offered in settlement is fair, courts should "compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." *Litty v. Merrill Lynch & Co., Inc.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (internal quotation marks and citation omitted).

Lead Plaintiffs represent that their expert damages consultant estimated that the maximum recoverable damages amount would have been $125 million. (Gilmore Decl. ¶ 45). The settlement amount of $18 million represents 14.4% of the total estimated

maximum damages. This percentage of recovery is in line with other securities class action settlements in this District. *E.g. Crews v. Rivian Auto., Inc.*, No. 2:22-CV-01524-JLS-E, 2025 WL 4743373, at *6 (C.D. Cal. Dec. 18, 2025) (granting preliminary approval for securities settlement with recovery of 12.3% to 13.4% of maximum damages); *In Re Snap Inc. Sec. Litig.*, No. 2:17-CV-03679-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8%" of maximum damages).

In comparison to the assured recovery provided for in the Stipulation of Settlement, Lead Plaintiffs represent that continuing to litigate the case presents significant costs, risks, and delays. (Memo at 19–20). Lead Plaintiffs represent that Defendants contest nearly all aspects of their case, including falsity, scienter, loss causation, and damages. (*Id.* at 20). Key motions for the case have also yet to be briefed or adjudicated, including a motion for class certification and any motion for summary judgment, both of which would delay and could terminate relief for the class members. (*Id.*). Moreover, Lead Plaintiffs contend that the Company's market capitalization has declined significantly, from $408.24 million on December 29, 2023, around the time this case was commenced, to $90 million as of the date of filing of this Motion. (*Id.* at 21). Based on this decline in market valuation, Lead Plaintiffs assert that they are reasonably concerned that the Company would be able to satisfy any judgment entered against it. (*Id.*). As the Settlement Amount represents a percentage of recovery similar or greater to comparable securities class action settlements, and in light of the costs, risks, and delays associated with continued litigation, this factor favors preliminary approval.

*b) Effectiveness of Proposed Method of Relief Distribution*

The Court next considers the method for processing claims to ensure the proposed method facilitates filing legitimate claims. Lead Plaintiffs submit the declaration of Justin Hughes, which describes the proposed notice plan for distributing relief by Stretto, Inc., the Claims Administrator. *See* (Memo at 22); (Hughes Decl. ¶¶ 1, 2). The Claims Administrator will send individual copies of the Notice by direct mail, supplemented by a print notice placement in *Investor's Business Daily* and a distribution of a press release

over the *PR Newswire*. (Hughes Decl. ¶ 5); (Gilmore Decl. ¶¶ 71, 72). The Claims Administrator will also establish a settlement website, toll-free phone number, and dedicated email address for Class Members to learn about the proposed Stipulation of Settlement and file claims. (Hughes Decl. ¶ 5). Similar procedures have previously been recognized to be "effective" in securities class actions. *See In re ImmunityBio, Inc. Sec. Litig.*, No. 3:23-CV-01216-GPC-VET, 2025 WL 834767, at *10 (S.D. Cal. Mar. 17, 2025) (citing cases).

Lead Counsel also attests that Plan of Allocation for distributing the Settlement Fund provides that, "an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the sum of all Authorized Claimants' Recognized Claims, multiplied by the total amount of the Net Settlement Fund." (Gilmore Decl. ¶ 62). Specifically, the Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula. Lead Counsel describes the proposed Plan of Allocation as follows:

> [A]n Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the sum of all Authorized Claimants' Recognized Claims, multiplied by the total amount of the Net Settlement Fund.
> The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula. An individual Claimant's recovery under the Plan of Allocation will depend upon a number of factors, including, *inter alia*, the timing of the purchase and sale of any BeautyHealth Security, the types of BeautyHealth Securities purchased and sold, the declines that occurred in the price of BeautyHealth Common Stock and Call Options (or in the case of BeautyHealth Put Options, the increase in price) following the alleged corrective disclosure, and the number and value of claims submitted by Claimants. Settlement Class Members will provide information on their transactions in the Claim Form.

(*Id.* ¶¶ 62, 63) (internal citations omitted).

Based on these representations, the Court concludes that Lead Plaintiffs' proposed method of relief distribution is reasonable and practicable. This method of distribution based on a "recognized loss" formula has been previously approved of as fair, reasonable, and adequate. *See In re Lyft, Inc. Sec. Litig.*, No. 19-CV-02690-HSG, 2022 WL 17740302, at *7 (N.D. Cal. Dec. 16, 2022).

*c) Attorneys' Fees*

The Court next considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). At the preliminary approval stage, "the court should assess the reasonableness of the attorney's fee award because an inordinate fee may be the sign that counsel sold out the class's claims at a low value in return for the high fee." *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2019 WL 7048791, at *8 (E.D. Cal. Dec. 23, 2019) (internal quotation marks and citation omitted). As discussed above, in considering the proposed award of attorneys' fees, the Court must scrutinize the Settlement for "subtle signs" that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseno v. Henderson*, 998 F.3d 1014, 1022–23 (9th Cir. 2021) (internal quotation marks and alterations omitted).

As discussed above, the Stipulation of Settlement does not contain subtle signs that suggest collusion. The Stipulation of Settlement establishes that the Court has sole discretion to award Lead Plaintiffs' anticipated application for an award of Attorneys' Fees and Expenses payable from the Gross Settlement Fund. (Stipulation of Settlement at 31–32). The Stipulation of Settlement does not otherwise indicate that Defendants have agreed not to challenge this anticipated application. In addition, the Stipulation of Settlement provides that "[t]he approval, finality and effectiveness of the Settlement shall not be contingent on an award of Attorneys' Fees and Expenses." (*Id.* at 33). Further, any

unclaimed funds shall be contributed to "non-sectarian, non-for-profit organization(s)" proposed by Lead Plaintiffs to the Court for final determination. (*Id.* at 28). Based on these representations, the terms of the proposed award does not contain a reverter clause or clear sailing arrangement that indicates that the Stipulation of Settlement is collusive.

Lead Counsel represents that it will seek an award of attorneys' fees of about 30% of the Settlement Fund, or $5,400,000. (Memo at 22). This amount is based on a lodestar of approximately $2.42 million with a multiplier of approximately 2.2. (*Id.* at 24); (Gilmore Decl. ¶ 86). Lead Counsel's request exceeds the 25% benchmark that courts in the Ninth Circuit generally conclude are reasonable. *Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). Nevertheless, as this requested award is not present before the Court, and the Stipulation of Settlement provides that the award will be granted at the Court's discretion, the Court concludes that this 30% fee request is not indicative of collusive efforts to reach a settlement. *See* (Stipulation of Settlement at 31–32). "Upon final approval, Class Counsel will have to submit a formal motion for attorneys' fees along with evidence of time spent on the case and a lodestar calculation before the Court can approve a specific amount in attorneys' fees." *Aquino v. 99 Cents Only Stores LLC*, No. 2:22-CV-01966-SPG-AFM, 2023 WL 8696362, at *7 (C.D. Cal. July 11, 2023) (internal quotation marks and citation omitted). The Court will therefore scrutinize the final amount at the final approval stage. *Id.* At the preliminary approval stage, however, Lead Counsel's requested fees do not appear to be unreasonable. *See also Campos v. Converse, Inc.*, No. EDCV201576JGBSPX, 2022 WL 1843223, at *9–*10 (C.D. Cal. Apr. 21, 2022) (concluding that an attorneys' fee request for one-third of the settlement amount reasonable at the preliminary approval stage, subject to further scrutiny at the final approval stage).

*d) Agreements Required to Be Identified Under Rule 23(e)(3)*

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Lead Plaintiffs represent that they and BeautyHealth have entered into a confidential Supplemental Agreement

regarding requests for exclusion from the Settlement Class, which "establishes certain conditions under which BeautyHealth may terminate the Settlement if the opt-outs received exceed an agreed-upon threshold." (Memo at 25). The existence of a termination option triggered by a certain number of class members opting-out does not itself render the settlement affair. *See Schneider v. Champignon Brands Inc.*, No. CV21-3120 JVS (KESX), 2023 WL 11944374, at *10 (C.D. Cal. Feb. 28, 2023); *Longo v. OSI Sys., Inc.*, No. CV 17-8841 FMO (SKX), 2022 WL 22995096, at *6 (C.D. Cal. Aug. 31, 2022). This factor weighs against the adequacy of relief, but only slightly so.

Based on the four factors identified under Rule 23(e)(2)(C), the Court concludes that the adequacy of the relief proposed in the Stipulation of Settlement weighs in favor of preliminary approval.

4. <u>Equitable Treatment Among Class Members</u>

Rule 23(e) also requires examination of whether a proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*, 2018 Advisory Committee Notes.

Here, the Plan of Allocation indicates that no Settlement Class Member will be subject to preferential treatment. *See* (Memo at 25–26). The Plan of Allocation does not provide a preferential formula for distribution for Lead Plaintiffs. At most, Lead Counsel intend to seek an award of up to $5,000 for each Lead Plaintiff, pursuant to 15 U.S.C. § 78u-4(a)(4), for reimbursement of their costs and expenses related to their representation of the Settlement Class. *See* (Exhibit A-1 at 70).

Weighing all of the factors discussed above, the Court concludes that it is "likely" that it would be able to conclude for purposes of final approval that the Stipulation of Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B), (2).

**B. Rule 23(a): Class Certification**

The Court next addresses Lead Plaintiffs' request to conditionally certify the Settlement Class pursuant to Rule 23(a). For the reasons discussed below, the Court concludes that the parties' Settlement likely satisfies Rule 23's requirements of numerosity, commonality, typicality, and adequacy of representation for purposes of preliminary certification. *See* Fed. R. Civ. P. 23(a)(1)–(4).

1. <u>Numerosity</u>

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. *Hanlon*, 150 F.3d at 1019. To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012). "The numerosity requirement is not tied to any fixed numerical threshold," *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010), but courts generally find that it is met "in securities fraud suits involving nationally traded stocks, *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 226 (C.D. Cal. 2019). Here, Lead Plaintiffs represent, and Defendants do not dispute, that the Company was traded on the NASDAQ stock exchange with approximately 49.5 million damaged shares during the Settlement Class Period. (Gilmore Decl. ¶ 81). Numerosity is generally presumed for "securities fraud suits involving nationally traded stocks." *Milbeck v. TrueCar, Inc.*, No. 218CV02612SVWAGR, 2019 WL 2353010, at *1 (C.D. Cal. May 24, 2019) (citing cases). Lead Plaintiffs have thus met their burden to show that the number of putative class members is sufficiently numerous that joinder would be impracticable.

2. <u>Commonality</u>

Claims meet the commonality requirement when they "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014)

(internal quotation marks and citation omitted). Courts have previously concluded that commonality is satisfied in securities fraud cases where a lead plaintiff raises allegations that investors were defrauded by the same misleading periods over the same period of time, and subsequently suffered similar losses. *E.g. In re Snap Inc. Sec. Litig.*, 334 F.R.D. at 226; *Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 WL 4865559, at *2 (N.D. Cal. Oct. 27, 2017).

Lead Plaintiffs have identified a number of common questions of law and fact, including whether Defendants misrepresented or omitted material facts, whether Defendants acted with scienter, whether the prices of the Company's securities were artificially inflated or maintained during the class period, and whether Defendants' misrepresentations and omissions caused class members to suffer economic losses. (Memo at 28–29). Based on these representations, Lead Plaintiffs have satisfied the commonality requirement.

3. <u>Typicality</u>

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is to "ensure[] that the interest of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Representative claims are "typical" if they are "reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Courts have held that typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of typicality. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Wehner v. Syntext Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

As discussed above, the Court previously found that Lead Plaintiffs established a preliminary showing of typicality because they purchased securities of the Company during the Settlement Class Period and alleged losses as a result of those transactions, and are not subject to any unique or special defenses. (Order Appointing Lead Plaintiffs at 10). Defendants do not argue that Lead Plaintiffs are not typical of the Class. Nor does the Court find at this stage a lack of typicality. Thus, the Court concludes that Lead Plaintiffs' claims are typical of the class.

4. <u>Adequacy of the Representation</u>

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. Class representatives are adequate if they have no conflicts of interest with the potential class and will prosecute the action vigorously on behalf of the class. *Id.* As described above, Lead Plaintiffs have no apparent conflicts of interest with other class members. *See* (Memo at 17). Lead Counsel has also demonstrated that they have expended significant efforts prosecuting the action on behalf of the class, such as by investigating the factual bases for Lead Plaintiffs' claims, contesting dispositive motions, and engaging in substantial discovery. (*Id.*); (Gilmore Decl. ¶¶ 47, 88). Therefore, the Court finds that Lead Plaintiffs and Lead Counsel will adequately represent the interests of the class for the purpose of settlement.

Accordingly, the Court concludes that Lead Plaintiffs have satisfied the four requirements of Rule 23(a) for the purposes of preliminary approval of the class action settlement.

**C. Rule 23(b): Predominance and Superiority**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Lead Plaintiffs seek to certify the proposed class under

Rule 23(b)(3). (Memo at 29–30). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)) (internal quotation marks and alterations omitted).

Additionally, the Court must find that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227, 1234 (9th Cir. 1996). The Rule lists four non-exclusive factors "pertinent" to the inquiry: (A) the interest of class members in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of other litigation concerning the controversy; (C) the desirability of concentrating litigation in the particular forum; and (D) the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3). However, for settlement-only classes, "'a district court need not inquire whether the case, if tried, would present intractable management problems.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (quoting *Amchem*, 521 U.S. at 620).

The Court concludes that this settlement-only class action is the superior method to adjudicate this dispute. In this securities class action, "the elements of falsity, materiality, scienter, and loss causation present questions common to the class because they all depend on Defendants' actions, and not those of any individual class member." *In re ImmunityBio,*

*Inc. Sec. Litig.*, 2025 WL 834767, at *6. Lead Plaintiffs' claims, and claims of Settlement Class Members, recognize no individualized issues of reliance; instead, the misrepresentations alleged in the SAC are applicable to all proposed Settlement Class Members. *See* (SAC). In addition, as Lead Plaintiffs represent, the class membership is large and geographically dispersed, consisting of all individuals who traded on the NASDAQ at a particular point in time. *See* (Memo at 30). Thus, adjudicating these common questions through a class action is likely to "reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234; *see also Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 624 (C.D. Cal. 2015) (approving class action where individualization "would result in thousands of trials re-litigating the same legal and factual questions"). Though the individual damages calculations may differ among the class members, the class-wide damages have been negotiated for the purposes of settlement. (Memo at 18–19). In addition, no party has raised the issue of whether concentrating the litigation in this district is more desirable than any other forum, and the Court is not aware of other litigation based on the allegations in the SAC. Based on all of the above, the Court preliminarily concludes that a class action would be the superior vehicle for adjudication of these claims.

**D. Rule 23(c)(2)(B): Sufficiency of Notice**

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state, (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.* Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the

agreement. Fed. R. Civ. P. 23(e)(1). Notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, 361 F.3d at 575 (internal quotation marks and citation omitted). Under the PSLRA, notice must include: (1) "[t]he amount of the settlement . . . determined in the aggregate and on an average per share basis," (2) "the average amount of [the] potential damages per share," (3) a statement of any fees or costs that counsel intends to seek from the settlement fund, (4) class counsel's contact information, and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7).

The Court has reviewed the proposed class notice and concludes that it meets the requirements of Rule 23(c)(2)(B) and the PSLRA. *See* (ECF No. 134-5, Exhibit A-1). The Proposed Notice describes, in a question and answer format, an overview of the case and settlement, a description of the class and how to determine if the recipient of the notice is a member of the class, how to seek exclusion from the class, and the effect of the proposed settlement on class members. *See* (*id.* at 77–90). The Proposed Notice also discloses that the Settlement Amount is $18,000,000.00 in cash, with an estimated 30% being paid for attorney's fees, reimbursement for costs, and specific awards for Lead Plaintiffs not to exceed $5,000. (*Id.* at 69–70). Therefore, the estimated total net recovery is $12,015,000. (*Id.*). The Proposed Notice further includes Lead Counsel's contact information and how to learn more information about the Stipulation of Settlement through the established website. (*Id.* at 89–90). Accordingly, the Court concludes the Proposed Notice provides sufficient information about the case and conforms with due process requirements provided for in Rule 23 and the requirements set forth under the PSLRA.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion and ORDERS as follows:

1. The parties' settlement, as set forth in the Stipulation and Agreement of Settlement, (ECF No. 134-5), is preliminarily approved;

2. The Class as defined in the Stipulation of Settlement is preliminarily certified for purposes of settlement;

3. For settlement purposes only, the Court hereby appoints Stretto, Inc. as the third-party Settlement Administrator;

4. The proposed form and method of giving Class Members notice of the action is approved. Class Notices must be disseminated to the proposed Settlement Class as set forth in the Stipulation of Settlement. Defendants must provide notice to the relevant state and federal officials, as required under 28 U.S.C. § 1715, and file a notice of compliance on the docket promptly;

5. The Final Approval Hearing shall be held on December 9, 2026, at 1:30 p.m. in the Felicitas and Gonzalo Mendez Courthouse, United States District Court, Central District of California, Courtroom 5C, located at 350 W. 1st Street, Los Angeles, California, 90012; and

6. The Court sets a briefing schedule as follows:

a. Lead Plaintiffs' motion for final approval of the settlement, as well as any motion for attorneys' fees, costs, and a class representative service payment, shall be filed at least twenty-eight (28) days before the Final Approval Hearing;

b. The parties shall file their reply briefs, if any, at least fourteen (14) days before the Final Approval Hearing; and

c. Counsel for Defendants shall file with the Court a declaration attesting to service of CAFA notice pursuant to 28 U.S.C. § 1715 and indicating

the position of any State or Federal officials at least fourteen (14) days before the Final Approval Hearing.

**IT IS SO ORDERED.**

DATED: October 6, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE